APPEAL,CONSOL,JURY,TYPE–L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:21–cv–00400–APM</u>

LEE et al v. TRUMP et al
Assigned to: Judge Amit P. Mehta
Member cases:

  1:21–cv–00586–APM

  1:21–cv–02265–APM

  1:21–cv–00858–APM

  1:23–cv–00038–APM

  1:22–cv–00011–APM

  1:22–cv–00010–APM

  1:22–cv–00034–APM

 Cases:  1:21–cv–02265–APM

        1:21–cv–00586–APM

        1:21–cv–00858–APM

        1:22–cv–00010–APM

        1:22–cv–00034–APM

        1:22–cv–00011–APM

 Case in other court:  Superior Court of the District of Columbia,
                  2025– CAB–000356

                  22–07031

                  USCA, 26–07049

                  USCA, 26–07052

                  USCA, 26–07123

Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 02/16/2021
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**BENNIE G. THOMPSON**
*Hon., in his personal capacity*
*TERMINATED: 02/23/2024*

represented by **Joseph M. Sellers**
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W.
Suite 800
Washington, DC 20005
202–408–4600
Email: jsellers@cohenmilstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
COHEN MILSTEIN SELLERS & TOLL
1100 New York Avenue, NW
Ste 800 West
Washington, DC 20005
202–408–4600

Email: adeich@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave NW
Suite 800
Washington, DC 20005
202–408–4600
Email: bcorman@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BONNIE WATSON COLEMAN**                    represented by   **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave NW
Suite 800
Washington, DC 20005
202–408–4600
Email: njaffegeffner@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**KAREN R. BASS**                    represented by   **Joseph M. Sellers**
*TERMINATED: 04/02/2026*
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

                                              **Nina Jaffe−Geffner**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**PRAMILA JAYAPAL**         represented by   **Joseph M. Sellers**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Alison Sarah Deich**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

                                              **Brian Christopher Corman**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

                                              **Nina Jaffe−Geffner**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MAXINE WATERS**           represented by   **Joseph M. Sellers**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Alison Sarah Deich**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

                                              **Brian Christopher Corman**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

                                              **Nina Jaffe−Geffner**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JERROLD NADLER**          represented by   **Joseph M. Sellers**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Alison Sarah Deich**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

                                              **Brian Christopher Corman**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HENRY C. JOHNSON**                    represented by   **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**STEPHEN I COHEN**                    represented by   **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BARBARA J. LEE**                    represented by   **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**VERONICA ESCOBAR**                    represented by    **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARCIA KAPTUR**                    represented by    **Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison Sarah Deich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Jaffe–Geffner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALL PLAINTIFFS**                    represented by    **Edward G. Caspar**
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW

Suite 900
Washington, DC 20005
202−662−8390
Email: ecaspar@lawyerscommittee.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Sellers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Kathryn Barnes Barry**
KALIJARVI, CHUZI, NEWMAN, &
FITCH, P.C.
818 Connecticut Ave NW
Suite 1000
Washington, DC 20006
202−331−9260
Email: akbarry@kcnlaw.com
*TERMINATED: 07/17/2024*
*ATTORNEY TO BE NOTICED*

**Brian Christopher Corman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW
Suite 900
Washington, DC 20005
202−662−8318
Email: mepstein@lawyerscommittee.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GOVERNOR LATSON**                    represented by    **Babak Ghafarzade**
*21cv2265*                                                SELENDY GAY PLLC
                                                          1290 Avenue of the Americas
                                                          New York, NY 10104
                                                          212−390−9085
                                                          Email: bghafarzade@selendygay.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Edward G. Caspar**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

6

**Elizabeth Snow**
BENESCH, FRIEDLANDER, COPLAN,
AND ARONOFF LLP
1155 Avenue of the Americas
Floor 26
New York, NY 10036
646–593–7050
Email: ESnow@beneschlaw.com
*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
SELENDY GAY PLLC
1290 6th Avenue
New York, NY 10104
201–314–8337
Email: eness@morrisoncohen.com
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
SELENDY GAY PLLC
1290 Avenue of the Americas
17th Floor
New York, NY 10104
212–390–9000
Fax: 212–390–9399
Email: fgay@selendygay.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
212–390–9000
Email: jmargolin@selendygay.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

represented by

7

**DANNY MCELROY**
*21cv2265*

**Babak Ghafarzade**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward G. Caspar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Snow**
(See above for address)
*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
(See above for address)
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MELISSA MARSHALL**
*21cv2265*

represented by **Babak Ghafarzade**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward G. Caspar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Snow**
(See above for address)
*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
(See above for address)
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MICHAEL FORTUNE**                    represented by    **Babak Ghafarzade**
*21cv2265*                                               (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Edward G. Caspar**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Elizabeth Snow**
                                                         (See above for address)
                                                         *TERMINATED: 05/05/2025*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*

                                                         **Esther D. Ness**
                                                         (See above for address)
                                                         *TERMINATED: 03/26/2025*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JASON DEROCHE**                    represented by    **Babak Ghafarzade**
*21cv2265*                                              (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Edward G. Caspar**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Elizabeth Snow**
                                                        (See above for address)
                                                        *TERMINATED: 05/05/2025*
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*

                                                        **Esther D. Ness**
                                                        (See above for address)
                                                        *TERMINATED: 03/26/2025*
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Faith E. Gay**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Joshua S. Margolin**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*

10

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **REGINALD CLEVELAND**<br>*21cv2265* | represented by | **Babak Ghafarzade**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Edward G. Caspar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Snow**
(See above for address)
*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
(See above for address)
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **BYRON EVANS**<br>*22cv2265* | represented by | **Babak Ghafarzade**<br>(See above for address) |

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward G. Caspar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Snow**
(See above for address)
*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
(See above for address)
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CONRAD SMITH**                    represented by  **Babak Ghafarzade**
*21cv2265*                                          (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Edward G. Caspar**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Elizabeth Snow**
                                                    (See above for address)

*TERMINATED: 05/05/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Esther D. Ness**
(See above for address)
*TERMINATED: 03/26/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Faith E. Gay**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua S. Margolin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc P. Epstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JAMES BLASSINGAME**                    represented by    **Daniel C. Scialpi**
*21cv858*                                                  PATRICK MALONE & ASSOCIATES,
                                                           P.C.
                                                           1310 L St. NW
                                                           Suite 800
                                                           Washington, DC 20005
                                                           202−742−1500
                                                           Email: dscialpi@patrickmalonelaw.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Patrick A. Malone**
                                                           PATRICK MALONE & ASSOCIATES,
                                                           P.C.
                                                           1310 L Street, NW
                                                           Suite 800
                                                           Washington, DC 20005
                                                           202−742−1500
                                                           Fax: 202−742−1515
                                                           Email: pmalone@patrickmalonelaw.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**SIDNEY HEMBY**
*21cv858*

represented by **Daniel C. Scialpi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick A. Malone**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SANDRA GARZA**
*Individually and as the personal*
*representative of the Estate of Brian*
*Sicknick, 23cv38*

represented by **Mark Steven Zaid**
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
202–498–0011
Email: Mark@MarkZaid.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*solely in his personal capacity*

represented by **David Alan Warrington**
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue
Suite 608
Alexandria, VA 22314
703–574–1206
Fax: 703–574–1206
Email: DWarrington@dhillonlaw.com
*TERMINATED: 01/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse R Binnall**
BINNALL LAW GROUP
717 King Street
Suite 200
Alexandria, VA 22314
703–888–1943
Email: jesse@binnall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Ward**
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
734–497–7767

Email: award@jd21.law.harvard.edu
*ATTORNEY TO BE NOTICED*

**Caryn G. Schechtman**
DLA PIPER LLP US
1251 Avenue of the Americas
Ste 27th Floor
New York, NY 10020–1104
212–335–4593
Fax: 212–884–8593
Email: caryn.schechtman@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gary Lawkowski**
DHILLON LAW GROUP, INC..
2121 Eisenhower Avenue
Suite 608
Alexandria, VA 22314
703–574–1654
Email: gary.lawkowski@gmail.com
*TERMINATED: 01/17/2025*
*ATTORNEY TO BE NOTICED*

**Gerald A. Urbanek , Jr**
BINNALL LAW GROUP
717 King Street
Suite 200
Alexandria, VA 22314
703–888–1943
Email: gerald@binnall.com
*ATTORNEY TO BE NOTICED*

**Jonathan Mark Shaw**
DHILLON LAW GROUP
2121 Eisenhower Avenue
Suite 608
Alexandria, VA 22314
240–383–8758
Email: jshaw@dhillonlaw.com
*ATTORNEY TO BE NOTICED*

**Joshua Halpern**
JH LEGAL PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
610–405–5531
Email: jhalpern@jhlegalpllc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Walsh , Jr.**
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
202–799–4824
Fax: 202–863–7824
Email: mike.walsh@us.dlapiper.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUDOLPH W. GIULIANI**                    represented by    **Joseph D. Sibley , IV**
*TERMINATED: 02/18/2022*                                     CAMARA & SIBLEY LLP
                                                            1108 Lavaca St
                                                            Suite 110263
                                                            Austin, TX 78701
                                                            713–966–6789
                                                            Fax: 713–583–1131
                                                            Email: sibley@camarasibley.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**PROUD BOYS INTERNATIONAL,
L.L.C.**

**Defendant**

**OATH KEEPERS**                           represented by    **OATH KEEPERS**
                                                            c/o Stewart Rhodes
                                                            1030 E. Hwy 377
                                                            Suite 110–285
                                                            Granbury, TX 76048
                                                            PRO SE

                                                            **Jonathon Alden Moseley**
                                                            JONATHON MOSELEY ATTORNEY AT
                                                            LAW
                                                            601 Baffie Avenue
                                                            Winter Park, FL 32789
                                                            703–656–1230
                                                            Email: contact@jonmoseley.com
                                                            *TERMINATED: 07/14/2022*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Kerry Lee Morgan**
                                                            CONSUMER LAW GROUP, P.C.
                                                            20601 Sumner
                                                            Redford, MI 48240–1064
                                                            (313) 477–0180
                                                            Fax: (734) 281–2524
                                                            Email: kmorganesq@aol.com

16

*TERMINATED: 11/19/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**WARBOYS LLC**

**Defendant**

**ENRIQUE TARRIO**                    represented by   **John Daniel Hull , IV**
                                                      HULL MCGUIRE PC
                                                      1420 N Street, NW
                                                      Washington, DC 20005
                                                      202–429–6520
                                                      Fax: 412–261–2627
                                                      Email: jdhull@hullmcguire.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Ronald D. Coleman**
                                                      COLEMAN LAW FIRM, PC
                                                      50 Park Place
                                                      Ste 1105
                                                      Newark, NJ 07102
                                                      973–264–9611
                                                      Email: rcoleman@colemanlaw–pc.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**DANIEL J. SCAVINO, JR.**              represented by   **Mark Paul Nobile , I**
                                                      SCHULMAN BHATTACHARYA
                                                      6116 Executive Boulevard
                                                      Suite Unit 425
                                                      Washington, MD 20852
                                                      240–356–8557
                                                      Email: mark@brandwoodwardlaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stanley Edmund Woodward , Jr.**
                                                      BRAND WOODWARD LAW, LP
                                                      400 Fifth Street, Northwest
                                                      Washington, DC 20001
                                                      202–996–7447
                                                      Fax: 202–996–0113
                                                      Email: stanley@brandwoodwardlaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Movant**

**EVAN H. CAMINKER**                    represented by   **Brianne Jenna Gorod**
                                                          CONSTITUTIONAL
                                                          ACCOUNTABILITY CENTER
                                                          1730 Rhode Island Ave. NW
                                                          Suite 1200
                                                          Washington, DC 20005
                                                          202–296–6889
                                                          Email: brianne@theusconstitution.org
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**ANDREW KENT**                         represented by   **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**SHELDON NAHMOD**                      represented by   **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**DAPHNA RENAN**                        represented by   **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**PETER M. SHANE**                      represented by   **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**FLOYD ABRAMS**                        represented by   **Nicholas D. Marais**
                                                          KEKER, VAN NEST & PETERS LLP
                                                          633 Battery Street
                                                          San Franisco, CA 94111
                                                          4153915400
                                                          Email: nmarais@keker.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**ERWIN CHEMERINSKY**                   represented by   **Nicholas D. Marais**
UNIVERSITY OF SOUTHERN                                   (See above for address)

CALIFORNIA                                          *LEAD ATTORNEY*
University Park                                      *ATTORNEY TO BE NOTICED*
Los Angeles, CA 90089–0071

**Movant**

**MARTHA MINOW**                 represented by  **Nicholas D. Marais**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**LAURENCE H. TRIBE**            represented by  **Nicholas D. Marais**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**JARED HOLT**                   represented by  **Alexander Franklin Atkins**
                                                 States United Democracy Center
                                                 1101 17th St NW, Suite 250
                                                 Washington, DC 20036
                                                 914–318–2256
                                                 Email: alex@statesuniteddemocracy.org
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Jonathan Lentine Williams**
                                                 STATES UNITED DEMOCRACY
                                                 CENTER
                                                 1101 17th Street NW
                                                 Suite 250
                                                 Washington, DC 20036
                                                 850–706–0940
                                                 Email: jonathan.williams@lw.com
                                                 *TERMINATED: 10/04/2024*
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**ANTHONY SCOCOZZO**             represented by  **ANTHONY SCOCOZZO**
*TERMINATED: 05/11/2026*                          22000475
                                                 BAKER COUNTY DETENTION
                                                 CENTER
                                                 One Sheriff's Office Drive
                                                 Macclenny, FL 32063
                                                 PRO SE

**Amicus**

**CAMPAIGN LEGAL CENTER**        represented by  **Adav Noti**
**ACTION**                                        CAMPAIGN LEGAL CENTER

1101 14th Street, NW
Suite 400
Washington, DC 20005
(202) 736–2203
Fax: (202) 736–2222
Email: anoti@campaignlegalcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark P. Gaber**
CAMPAIGN LEGAL CENTER
1101 14th Street, NW
Suite 400
Washington, DC 20005
(202) 736–2202
Fax: (202) 736–2222
Email: mgaber@campaignlegalcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul March Smith**
CAMPAIGN LEGAL CENTER
1101 14th Street, NW
Suite 400
Washington, DC 20005
(202) 736–2200
Fax: (202) 736–2222
Email: psmith@campaignlegalcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hayden Johnson**
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW
Ste 163
Washington, DC 20006
202–870–3210
Email: hayden.johnson@protectdemocracy.org
*TERMINATED: 02/13/2024*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Non–Party Petitioner**

**UNITED STATES OF AMERICA**    represented by    **John BlairFishwick Martin**
U.S. DEPARTMENT OF JUSTICE
175 N Street, NE
Ste 7112
Washington, DC 20002
202–616–4492

Email: john.b.martin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor John Hackert**
DEPARTMENT OF JUSTICE
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, DC 20044
202−616−4332
Email: connor.hackert@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jonathan Myers**
DOJ−Civ
175 N Street NE
Washington DC, DC 20002
202−305−8049
Email: jonathan.r.myers@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Non−Party Respondent**

**EVENT STRATAGIES INCORPORATED**

represented by **Edward D. Greim**
GRAVES BARTLE MARCUS & GARRETT LLC
1100 Main Street
Suite 2700
Kansas City, MO 64105
(816) 256−3181
Fax: (816) 817−0863
Email: edgreim@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Eugene Brothers**
GRAVES GARRETT GREIM
1100 Main Street
Suite 2700
Kansas City, MO 64105
816−256−3181
Email: pbrothers@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Non−Party Respondent**

**MEGAN POWERS**

represented by **Edward D. Greim**
(See above for address)
*LEAD ATTORNEY*

21

*ATTORNEY TO BE NOTICED*

**Paul Eugene Brothers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/16/2021 | 1 | COMPLAINT against All Defendants with Jury Demand ( Filing fee $ 402 receipt number ADCDC−8202743) filed by BENNIE G. THOMPSON. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons)(Sellers, Joseph) (Entered: 02/16/2021) |
| 02/16/2021 | 2 | ERRATA *(Corrected Civil Cover Sheet)* by BENNIE G. THOMPSON re 1 Complaint, filed by BENNIE G. THOMPSON. (Sellers, Joseph) (Entered: 02/16/2021) |
| 02/16/2021 | 3 | NOTICE of Appearance by Brian Christopher Corman on behalf of All Plaintiffs (Corman, Brian) (Entered: 02/16/2021) |
| 02/16/2021 | | Case Assigned to Judge Amit P. Mehta. (zsb) (Entered: 02/16/2021) |
| 02/16/2021 | 4 | SUMMONS (5) Issued Electronically as to RUDOLPH W. GIULIANI, OATH KEEPERS, PROUD BOYS INTERNATIONAL, L.L.C., DONALD J. TRUMP. (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 02/16/2021) |
| 02/16/2021 | | ENTERED IN ERROR.....NOTICE OF ERROR re 1 Complaint; emailed to mbekesha@judicialwatch.org, cc'd −1 associated attorneys −− The PDF file you docketed contained errors: 1. Blank or missing coversheet. Please use the cover sheet at https://www.dcd.uscourts.gov/new−case−forms & file using the event Civil Cover Sheet., 2. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (adh, ) Modified to enter in error on 2/17/2021; filed in wrong case. (adh, ). (Entered: 02/16/2021) |
| 03/01/2021 | 5 | WAIVER OF SERVICE. RUDOLPH W. GIULIANI waiver sent on 2/25/2021, answer due 4/26/2021. (Corman, Brian) (Entered: 03/01/2021) |
| 03/03/2021 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD J. TRUMP served on 2/23/2021, answer due 3/16/2021 (Corman, Brian) (Entered: 03/03/2021) |
| 03/05/2021 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. OATH KEEPERS served on 3/2/2021, answer due 3/23/2021 (Corman, Brian) (Entered: 03/05/2021) |
| 03/11/2021 | 8 | NOTICE of Appearance by Jesse R Binnall on behalf of DONALD J. TRUMP (Binnall, Jesse) (Entered: 03/11/2021) |
| 03/15/2021 | 9 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, *or Otherwise Plead* by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Binnall, Jesse) (Entered: 03/15/2021) |
| 03/16/2021 | | MINUTE ORDER granting 9 Consent Motion for an Extension of Time. Mr. Trump shall file his answer or otherwise respond to the Complaint by no later than April 26, |

| | | |
|---|---|---|
| | | 2021. Signed by Amit P. Mehta on 3/16/2021. (lcapm3) (Entered: 03/16/2021) |
| 03/23/2021 | 10 | Consent MOTION for Extesntion of Time to Answer *or Otherwise Plead to the Complaint* by OATH KEEPERS. (Attachments: # 1 Text of Proposed Order)(Morgan, Kerry) Modified event title on 3/25/2021 (znmw). (Entered: 03/23/2021) |
| 03/23/2021 | | MINUTE ORDER granting 10 Consent Motion for an Extension of Time. Defendant Oathkeepers shall file its answer or otherwise respond to the Complaint by no later than April 26, 2021. Signed by Amit P. Mehta on 3/23/2021. (lcapm3) (Entered: 03/23/2021) |
| 04/07/2021 | 11 | MOTION for Leave to File *Amended Complaint* by BENNIE G. THOMPSON. (Attachments: # 1 Exhibit Amended Complaint, # 2 Text of Proposed Order)(Sellers, Joseph) (Entered: 04/07/2021) |
| 04/07/2021 | | MINUTE ORDER granting Plaintiff's 11 Motion for Leave to File Amended Complaint. Federal Rule of Civil Procedure 15(a)(1)(B) permits a plaintiff to amend his pleading once as a matter of right up to 21 days after a defendant has served a responsive pleading or motion under Rule 12(b), (e), or (f). No defendant has yet filed a responsive pleading or motion. Accordingly, Plaintiff timely seeks to amend his pleading as a matter of right. The Amended Complaint therefore will be the operative pleading in this case. Defendants shall answer or otherwise respond to the Amended Complaint by May 26, 2021. Signed by Judge Amit P. Mehta on 4/7/2021. (lcapm3) (Entered: 04/07/2021) |
| 04/09/2021 | 12 | REQUEST FOR SUMMONS TO ISSUE filed by BENNIE G. THOMPSON, BONNIE WATSON COLEMAN, KAREN R. BASS, PRAMILA JAYAPAL, MAXINE WATERS, JERROLD NADLER, HENRY C. JOHNSON, STEPHEN I COHEN, BARBARA J. LEE, VERONICA ESCOBAR, MARCIA KAPTUR.(Sellers, Joseph) (Entered: 04/09/2021) |
| 04/16/2021 | 13 | SUMMONS (5) Issued Electronically as to ENRIQUE TARRIO, WARBOYS LLC. (eg) (Entered: 04/16/2021) |
| 04/21/2021 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WARBOYS LLC served on 4/19/2021, answer due 5/10/2021 (Sellers, Joseph) (Entered: 04/21/2021) |
| 04/27/2021 | 15 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert B. McDuff, Filing fee $ 100, receipt number ADCDC–8401537. Fee Status: Fee Paid. by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, BENNIE G. THOMPSON, MAXINE WATERS. (Attachments: # 1 Declaration of Robert B. McDuff)(Sellers, Joseph) (Entered: 04/27/2021) |
| 05/05/2021 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WARBOYS LLC served on 4/23/2021, answer due 5/14/2021 (Corman, Brian) (Entered: 05/05/2021) |
| 05/05/2021 | 17 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ENRIQUE TARRIO served on 4/23/2021, answer due 5/14/2021 (Corman, Brian) (Entered: 05/05/2021) |
| 05/05/2021 | 18 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ENRIQUE TARRIO served on 5/1/2021, answer due 5/22/2021 (Corman, Brian) |

23

| | | (Entered: 05/05/2021) |
|---|---|---|
| 05/05/2021 | 19 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WARBOYS LLC served on 5/1/2021, answer due 5/22/2021 (Corman, Brian) (Entered: 05/05/2021) |
| 05/10/2021 | | MINUTE ORDER granting 15 Motion for Leave to Appear Pro Hac Vice. Attorney Robert B. McDuff is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions.** Signed by Judge Amit P. Mehta on 5/10/2021. (lcapm3) (Entered: 05/10/2021) |
| 05/26/2021 | 20 | MOTION to Dismiss by OATH KEEPERS. (Morgan, Kerry) (Entered: 05/26/2021) |
| 05/26/2021 | 21 | MOTION to Dismiss *pursuant to Fed. R. Civ. P. 12(b)(6)* by RUDOLPH W. GIULIANI. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Sibley, Joseph) (Entered: 05/26/2021) |
| 05/26/2021 | 22 | MOTION to Dismiss *for lack of jurisdiction and failure to state a claim* by DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Binnall, Jesse) (Entered: 05/26/2021) |
| 05/27/2021 | 23 | NOTICE of Proposed Order by OATH KEEPERS re 20 MOTION to Dismiss (Morgan, Kerry) (Entered: 05/27/2021) |
| 06/02/2021 | 24 | MOTION for Extension of Time to File Answer *to Motions to Dismiss* by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, BENNIE G. THOMPSON, MAXINE WATERS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 06/02/2021) |
| 06/03/2021 | 25 | ORDER granting 24 Motion for Extension of Time to Respond to Motion to Dismiss. Plaintiffs may file their response to the pending motions to dismiss on or before July 1, 2021. Defendants may submit any reply briefs on or before July 19, 2021. See attached Order for further details. Signed by Judge Amit P. Mehta on 6/3/2021. (lcapm3) (Entered: 06/03/2021) |
| 06/04/2021 | 26 | RESPONSE re 22 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim* filed by OATH KEEPERS. (Morgan, Kerry) (Entered: 06/04/2021) |
| 06/07/2021 | 27 | NOTICE of Appearance by Alison Sarah Deich on behalf of All Plaintiffs (Deich, Alison) (Entered: 06/07/2021) |
| 06/09/2021 | 28 | ERRATA re 19 Summons Returned Executed by All Plaintiffs (Attachments: # 1 Affidavit Amended Affidavits)(Corman, Brian) Modified docket event/text on 6/10/2021 (eg). (Entered: 06/09/2021) |
| 07/01/2021 | 29 | Memorandum in opposition to re 21 MOTION to Dismiss *pursuant to Fed. R. Civ. P. 12(b)(6)*, 22 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim*, 20 MOTION to Dismiss filed by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, BENNIE G. THOMPSON, MAXINE WATERS. (Attachments: # 1 Appendix, # 2 Appendix)(Sellers, Joseph) (Entered: 07/01/2021) |

| 07/08/2021 | 30 | MOTION for Leave to File *Amici Curiae Brief in Support of Plaintiffs* by Evan H. Caminker, Andrew Kent, Sheldon Nahmod, Daphna Renan, PETER M. SHANE. (Attachments: # 1 Exhibit Brief of Law Professors as Amici Curiae in Support of Plaintiffs, # 2 Text of Proposed Order Proposed Order)(Gorod, Brianne) (Entered: 07/08/2021) |
|---|---|---|
| 07/08/2021 | 31 | MOTION for Leave to File *Brief of Amici Curiae In Support of Plaintiffs* by Floyd Abrams, ERWIN CHEMERINSKY, MARTHA MINOW, LAURENCE H. TRIBE. (Attachments: # 1 Brief of Amici Curiae, # 2 Text of Proposed Order [Proposed] Order Granting Motion For Leave To File Brief of Amici Curiae)(Marais, Nicholas) (Entered: 07/08/2021) |
| 07/08/2021 | 32 | NOTICE of Appearance by Paul March Smith on behalf of Campaign Legal Center Action (Smith, Paul) (Entered: 07/08/2021) |
| 07/08/2021 | 33 | NOTICE of Appearance by Mark P. Gaber on behalf of Campaign Legal Center Action (Gaber, Mark) (Entered: 07/08/2021) |
| 07/08/2021 | 34 | MOTION for Leave to File *Amicus Brief* by Campaign Legal Center Action. (Attachments: # 1 Proposed Order, # 2 Proposed Amicus Brief, # 3 Appendix A, # 4 Appendix B)(Smith, Paul) (Entered: 07/08/2021) |
| 07/08/2021 | 35 | NOTICE of Appearance by Adav Noti on behalf of Campaign Legal Center Action (Noti, Adav) (Entered: 07/08/2021) |
| 07/12/2021 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Hayden S. Johnson, Filing fee $ 100, receipt number ADCDC−8593354. Fee Status: Fee Paid. by CAMPAIGN LEGAL CENTER ACTION. (Attachments: # 1 Declaration)(Smith, Paul) (Entered: 07/12/2021) |
| 07/13/2021 | | MINUTE ORDER granting 36 Motion for Leave to Appear Pro Hac Vice. Attorney Hayden S. Johnson is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 7/13/2021. (lcapm3) (Entered: 07/13/2021) |
| 07/17/2021 | 37 | Unopposed MOTION for Extension of Time to File Response/Reply as to 21 MOTION to Dismiss *pursuant to Fed. R. Civ. P. 12(b)(6)*, 22 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim (Joint Motion with Defendant Trump)* by RUDOLPH W. GIULIANI. (Attachments: # 1 Text of Proposed Order)(Sibley, Joseph) (Entered: 07/17/2021) |
| 07/18/2021 | | MINUTE ORDER granting in part and denying in part 37 Motion to to Set Briefing Schedule. Defendants may file their reply briefs up to and until August 16, 2021. Those reply briefs may also incorporate replies to amicus briefs. However, the replies shall not to exceed 35 pages in length. Signed by Judge Amit P. Mehta on 7/18/2021. (lcapm3) (Entered: 07/18/2021) |
| 07/19/2021 | 38 | REPLY to opposition to motion re 20 MOTION to Dismiss filed by OATH KEEPERS. (Morgan, Kerry) (Entered: 07/19/2021) |
| 07/20/2021 | 39 | NOTICE of Voluntary Dismissal re Bennie G. Thompson *with Prejudice Pursuant to Fed. Civ. P. 41(a)(1)(i)* (Sellers, Joseph) (Entered: 07/20/2021) |
| 07/28/2021 | 40 | MOTION for Leave to File *an Amicus Curiae Brief in Support of the Plaintiffs* by JARED HOLT. (Attachments: # 1 Proposed Amicus Curiae Brief, # 2 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Williams, Jonathan) (Entered: 07/28/2021) |
| 07/28/2021 | | MINUTE ORDER granting 30 Motion for Leave to File Amici Curiae Brief in Support of Plaintiffs. Signed by Judge Amit P. Mehta on 7/28/2021. (lcapm3) (Entered: 07/28/2021) |
| 07/28/2021 | | MINUTE ORDER granting 31 Motion for Leave to File Brief of Amici Curiae In Support of Plaintiffs. Signed by Judge Amit P. Mehta on 7/28/2021. (lcapm3) (Entered: 07/28/2021) |
| 07/28/2021 | | MINUTE ORDER granting 34 Motion for Leave to File Amicus Brief by Campaign Legal Center Action. Signed by Amit P. Mehta on 7/28/2021. (lcapm3) (Entered: 07/28/2021) |
| 07/30/2021 | 41 | NOTICE of Appearance by Hayden Johnson on behalf of CAMPAIGN LEGAL CENTER ACTION (Johnson, Hayden) (Entered: 07/30/2021) |
| 08/16/2021 | 42 | REPLY to opposition to motion re 21 MOTION to Dismiss *pursuant to Fed. R. Civ. P. 12(b)(6)* filed by RUDOLPH W. GIULIANI. (Sibley, Joseph) (Entered: 08/16/2021) |
| 08/16/2021 | 43 | REPLY to opposition to motion re 22 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim* filed by DONALD J. TRUMP. (Binnall, Jesse) (Entered: 08/16/2021) |
| 09/20/2021 | 44 | AFFIDAVIT FOR DEFAULT *on Enrique Tarrio* by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, MAXINE WATERS. (Attachments: # 1 Affidavit, # 2 Affidavit Military Affidavit, # 3 Certificate of Service)(Sellers, Joseph) Modified docket event/text on 9/22/2021 (eg). (Entered: 09/20/2021) |
| 09/20/2021 | 45 | AFFIDAVIT FOR DEFAULT *on Warboys LLC* by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, MAXINE WATERS. (Attachments: # 1 Affidavit, # 2 Certificate of Service)(Sellers, Joseph) Modified docket event/text on 9/22/2021 (zeg). (Entered: 09/20/2021) |
| 09/20/2021 | 46 | MILITARY AFFIDAVIT re 44 AFFIDAVIT FOR DEFAULT by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, MAXINE WATERS. (eg) (Entered: 09/22/2021) |
| 09/22/2021 | 47 | Clerk's ENTRY OF DEFAULT as to ENRIQUE TARRIO, WARBOYS LLC (eg) (Entered: 09/22/2021) |
| 10/11/2021 | | MINUTE ORDER granting Jared Holt's Motion for Leave to File an Amicus Curiae Brief in Support of the Plaintiffs. As no Defendant opposes the motion, Mr. Holt's Motion is granted. Signed by Judge Amit P. Mehta on 10/09/2021. (lcapm3) (Entered: 10/11/2021) |
| 10/29/2021 | 48 | MOTION for Default Judgment as to *Defendants Warboys LLC and Enrique Tarrio* by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, MAXINE WATERS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 10/29/2021) |

| | | |
|---|---|---|
| 11/01/2021 | | MINUTE ORDER granting in part Plaintiffs' 48 Motion for Default Judgment Against Defendants Warboys LLC and Enrique Tarrio. The Clerk of Court shall enter a default (not a default judgment) against Defendants Warboys LLC and Enrique Tarrio pursuant to Federal Rule of Civil Procedure 55(a). The court will defer entry of a default judgment, including any final determination as to an amount of damages, until a future date. Signed by Judge Amit P. Mehta on 11/01/2021. (lcapm3) (Entered: 11/01/2021) |
| 11/11/2021 | 49 | MOTION to Withdraw as Attorney by OATH KEEPERS. (Morgan, Kerry) (Entered: 11/11/2021) |
| 11/11/2021 | 50 | NOTICE of Proposed Order by OATH KEEPERS re 49 MOTION to Withdraw as Attorney (Morgan, Kerry) (Entered: 11/11/2021) |
| 11/19/2021 | | MINUTE ORDER granting 49 Motion to Withdraw as Counsel for Oath Keepers, Only. Having heard no objection from Defendant Oath Keepers as to counsels Motion to Withdraw, that motion is granted and Pentiuk, Couvreur & Kobiljak, P.C. and Kerry L. Morgan are hereby withdrawn as counsel of record. Signed by Judge Amit P. Mehta on 11/19/2021. (lcapm3) (Entered: 11/19/2021) |
| 12/16/2021 | | NOTICE of Hearing: Oral Argument set for 1/10/2022 at 1:00 PM in Courtroom 10 before Judge Amit P. Mehta. Members of the public or media may also access this hearing by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747.(zjd) (Entered: 12/16/2021) |
| 12/20/2021 | 51 | NOTICE of Appearance by John Daniel Hull, IV on behalf of ENRIQUE TARRIO (Hull, John) (Entered: 12/20/2021) |
| 01/04/2022 | | NOTICE of Hearing: The Oral Argument set for 1/10/2022 at 1:00 PM before Judge Amit P. Mehta will proceed via videoconference. The courtroom deputy will circulate connection information to counsel. Members of the public or media may access this hearing by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747. (zjd) (Entered: 01/04/2022) |
| 01/05/2022 | 52 | ORDER establishing schedule for the oral argument for pending motions to dismiss on January 10, 2022. The time designations noted within are collective across all three cases (to the extent applicable), not per party per case. The court encourages each side, where appropriate, to designate a lead counsel on a particular topic. Please see attached Order for further details. Signed by Judge Amit P. Mehta on 01/05/2022. (lcapm3) (Main Document 52 replaced on 1/6/2022) (zjd). (Entered: 01/05/2022) |
| 01/08/2022 | 53 | NOTICE of Appearance by Jonathon Alden Moseley on behalf of OATH KEEPERS (Moseley, Jonathon) (Entered: 01/08/2022) |
| 01/08/2022 | 54 | MOTION to Clarify re 52 Order, *Defendant Oath Keepers Motion To Clarify Or Modify Order On Scheduled Argument For Motions To Dismiss* filed by OATH KEEPERS. (Moseley, Jonathon) Modified on 1/12/2022 (zeg). (Entered: 01/08/2022) |
| 01/09/2022 | 55 | MOTION to Set Aside Default by ENRIQUE TARRIO. (Hull, John) (Entered: 01/09/2022) |
| 01/10/2022 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Oral Argument held via videoconference on 1/10/2022. Arguments heard and taken under advisement. (Court Reporter: William Zaremba) (zjd) (Entered: 01/10/2022) |
| 01/11/2022 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER. Plaintiffs shall advise the court by January 14, 2022, whether they oppose Defendant Henry Tarrio's Motion to Set Aside Entry of Default, ECF No. 55 . Signed by Judge Amit P. Mehta on 1/11/2022. (lcapm3) (Entered: 01/11/2022) |
| 01/11/2022 | 56 | SUPPLEMENTAL MEMORANDUM to re 20 MOTION to Dismiss *demanding filing of complete documents embodying conversations and speech relied upon by the Amended Complaint to attempt to show a conspiracy that might include the OATH KEEPERS pursuant to FedREvidence 106 and McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2nd Cir. 2007)* filed by OATH KEEPERS. (Attachments: # 1 Supplement Supplemental Exhibit of Documents (message posts and speech transcript) relied upon in the Amended Complaint to allege a conspiracy, # 2 Exhibit Transcript of Donald Trump's January 6, 2021, speech proving that there was no conspiracy offered, proposed, suggested or entered into involving the Oath Keepers)(Moseley, Jonathon) (Entered: 01/11/2022) |
| 01/12/2022 | 57 | SUPPLEMENTAL MEMORANDUM to re 20 MOTION to Dismiss *demanding filing of complete documents embodying conversations and speech relied upon by the Amended Complaint to attempt to show a conspiracy that might include the OATH KEEPERS pursuant to FedREvidence 106 and McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2nd Cir. 2007) –– AMENDED* filed by OATH KEEPERS. (Attachments: # 1 Supplement xhibit of Documents (message posts and speech transcript) relied upon in the Amended Complaint to allege a conspiracy,, # 2 Exhibit Transcript of Donald Trump's January 6, 2021, speech proving that there was no conspiracy offered, proposed, suggested or entered into involving the Oath Keepers)(Moseley, Jonathon) (Entered: 01/12/2022) |
| 01/14/2022 | 58 | RESPONSE re 55 MOTION to Set Aside Default filed by ALL Plaintiffs. (Sellers, Joseph) (Entered: 01/14/2022) |
| 01/14/2022 | 59 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALL Plaintiffs (Sellers, Joseph) (Entered: 01/14/2022) |
| 01/18/2022 | | MINUTE ORDER granting Defendant Henry Tarrio's Motion to Set Aside Entry of Default. The clerk's entry of default against Defendant Tarrio, ECF No. 47 , is hereby vacated. Defendant Tarrio shall advise the court by January 25, 2022, whether he intends to join the pending motions to dismiss or otherwise supplement them in any way. The parties shall propose a schedule for further proceedings as to Defendant Tarrio by Joint Status Report filed by January 25, 2022. Signed by Judge Amit P. Mehta on 01/18/2022. (lcapm3) (Entered: 01/18/2022) |
| 01/18/2022 | 60 | NOTICE of Appearance by Anna Kathryn Barnes on behalf of All Plaintiffs (Barnes, Anna) (Entered: 01/18/2022) |
| 01/24/2022 | 61 | LEAVE TO FILE DENIED– Request This document is unavailable as the Court denied its filing. "Leave to file is denied. The court does not have an "audio form" of the January 10th hearing. A written transcript may be ordered from the court reporter". Signed by Judge Amit P. Mehta on 1/24/2022. (zeg) (Entered: 01/24/2022) |
| 01/24/2022 | 62 | LEAVE TO FILE DENIED– Request This document is unavailable as the Court denied its filing. "Leave to file is denied. The court does not have an "audio form" of the January 10th hearing. A written transcript may be ordered from the court reporter". Signed by Judge Amit P. Mehta on 1/24/2022. (zeg) (Entered: 01/24/2022) |
| 01/25/2022 | 63 | TRANSCRIPT OF ORAL ARGUMENT VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on January 10, 2022; Page Numbers: 1–236. Date of Issuance: |

|  |  | January 25, 2022. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased f rom the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/15/2022. Redacted Transcript Deadline set for 2/25/2022. Release of Transcript Restriction set for 4/25/2022.(wz) (Entered: 01/25/2022) |
|---|---|---|
| 01/25/2022 | 64 | NOTICE *OF INTENTION TO JOIN PENDING MOTIONS TO DISMISS* by ENRIQUE TARRIO re 21 MOTION to Dismiss *pursuant to Fed. R. Civ. P. 12(b)(6)*, 22 MOTION to Dismiss *for lack of jurisdiction and failure to state a claim* (Hull, John) (Entered: 01/25/2022) |
| 01/26/2022 |  | MINUTE ORDER. The court treats Defendant Enrique Tarrio as having joined in the motions filed at ECF Nos. 21 and 22 , insofar as they are applicable to him. Signed by Judge Amit P. Mehta on 01/26/2022. (lcapm3) (Entered: 01/26/2022) |
| 02/09/2022 | 65 | LEAVE TO FILE DENIED– Intervener's Motion This document is unavailable as the Court denied its filing. "Leave to file is denied. Putative intervenor has established neither standing nor grounds under Rule 24 for mandatory or permissive intervention". Signed by Judge Amit P. Mehta on 2/9/2022. (zeg) (Entered: 02/09/2022) |
| 02/18/2022 | 66 | MEMORANDUM OPINION AND ORDER (1) denying Defendant Oath Keepers' 20 Motion to Dismiss; (2) granting Defendant Giuliani's 21 Motion to Dismiss; and (3) denying Defendant President Trump's 22 Motion to Dismiss. Further, with respect to Defendant Tarrio's 64 Notice of Intention to Join Motions to Dismiss, dismissal is also denied as to him. Please see attached Memorandum Opinion and Order for further details. Signed by Judge Amit P. Mehta on 02/18/2022. (lcapm3) Modified on 2/20/2022 (lcapm3). (Entered: 02/18/2022) |
| 03/07/2022 | 67 | LEAVE TO FILE DENIED– Letter This document is unavailable as the Court denied its filing. "Leave to file is denied. The filer has no standings to seek a stay of proceeding". Signed by Judge Amit P. Mehta on 3/7/2022. (zeg) (Entered: 03/07/2022) |
| 03/07/2022 | 68 | LEAVE TO FILE DENIED– George E. McDermott; Motion. This document is unavailable as the Court denied its filing. "Leave to file is denied". Signed by Judge Amit P. Mehta on 3/7/2022. (zeg) (Entered: 03/08/2022) |
| 03/18/2022 | 69 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 66 Order on Motion to Dismiss,,,,,,,,, by DONALD J. TRUMP. Filing fee $ 505, receipt number ADCDC–9113347. Fee Status: Fee Paid. Parties have been notified. (Binnall, Jesse) |

| | | (Entered: 03/18/2022) |
|---|---|---|
| 03/21/2022 | 70 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 69 Notice of Appeal to DC Circuit Court. (zeg) (Entered: 03/21/2022) |
| 03/24/2022 | 71 | NOTICE of Appearance by Brian Christopher Corman on behalf of All Plaintiffs (Corman, Brian) (Entered: 03/24/2022) |
| 03/24/2022 | | USCA Case Number 22–7031 for 69 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP. (zeg) (Entered: 03/25/2022) |
| 07/13/2022 | 72 | MOTION to Withdraw as Attorney *of Jonathon Moseley* by OATH KEEPERS. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Moseley, Jonathon) (Entered: 07/13/2022) |
| 07/14/2022 | | MINUTE ORDER granting 72 Motion of Withdrawal of Jonathon Moseley from Representing Defendant Oath Keepers, LLC. Given Mr. Moseley's bar status, his motion to withdraw is granted. Mr. Moseley shall in writing notify the Board of Directors or any responsible managing agent of Oath Keepers, LLC that the failure to retain new counsel in this matter may result in entry of default judgment. Mr. Moseley shall file such written correspondence by July 20, 2022. Signed by Judge Amit P. Mehta on 07/13/2022. (lcapm3) (Entered: 07/14/2022) |
| 08/02/2022 | 74 | LEAVE TO FILE DENIED – Peter Navarro; Introduction of New Discovery Evidence. This document is unavailable as the Court denied its filing. "Leave to file denied. Filer lacks standing." Signed by Judge Amit P. Mehta on 8/2/2022. (zjd) (Entered: 09/20/2022) |
| 09/01/2022 | 73 | Consent MOTION to Withdraw as Attorney *MOTION TO WITHDRAW APPEARANCE (TARRIO) 400* by ENRIQUE TARRIO. (Hull, John) (Entered: 09/01/2022) |
| 09/02/2022 | | MINUTE ORDER denying without prejudice 73 Motion to Withdraw Appearance. Although the court understands counsel's difficulty in communicating with Mr. Tarrio, there is no exception to Local Civil Rule 83.6(c)'s requirement to notify the client of the motion to withdraw. Should counsel not know of Mr. Tarrio's detention facility, he may contact chambers to inquire. Signed by Judge Amit P. Mehta on 09/02/2022. (lcapm3) (Entered: 09/02/2022) |
| 03/16/2023 | 75 | ORDER of USCA. USCA Case Number 23–7010; 22–5069. (zed) (Entered: 03/21/2023) |
| 02/13/2024 | 76 | NOTICE OF WITHDRAWAL OF APPEARANCE as to CAMPAIGN LEGAL CENTER ACTION. Attorney Hayden Johnson terminated. (Johnson, Hayden) (Entered: 02/13/2024) |
| 02/16/2024 | 77 | MANDATE of USCA as to 69 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP ; USCA Case Number 22–7031. (Attachments: # 1 USCA Judgment 12/1/2023)(znmw) (Entered: 02/16/2024) |
| 02/16/2024 | 78 | ORDER. These matters have returned to this court following a remand from the D.C. Circuit. The D.C. Circuit has ordered that, if Defendant Donald J. Trump wishes to have the "opportunity to dispute the plaintiffs' allegations bearing on the immunity question or to introduce his own facts pertaining to the issue," he "must be afforded an opportunity to resolve this immunity claim before merits discovery." Blassingame v. |

| | | |
|---|---|---|
| | | Trump, 87 F.4th 1, 29 (D.C. Cir. 2023). That opportunity could include "discovery bearing on the immunity question." Id. To discuss further proceedings in these cases, the parties shall appear for a status conference on February 23, 2024, at 1:30 p.m. in Courtroom 10. A public line shall be connected for this proceeding. The parties shall file a Joint Status Report on or before February 22, 2024, which addresses (1) whether Defendant should file answers at this time; (2) whether the parties wish to pursue discovery as to the immunity question before merits discovery; (3) assuming the parties will first seek immunity–related discovery, the expected parameters of such discovery; (4) a timeline for immunity–related discovery; and (5) any anticipated complex discovery issues that are likely to arise in this matter. In addition, the court sua sponte consolidates these matters for purposes of immunity–related discovery, resolution of the immunity issue on summary judgment, and merits discovery, if necessary. Unless ordered otherwise, all future filings in these matters shall be in the first–filed case, Thompson v. Trump, Case No. 21–cv–00400 (APM). See attached Order for additional details. Signed by Judge Amit P. Mehta on 02/16/2024. (lcapm1) (Main Document 78 replaced on 2/16/2024) (zsmc). (Entered: 02/16/2024) |
| 02/16/2024 | | Cases Consolidated: The following cases have been consolidated with this case: 21cv2265, 21cv586, 21cv858. pursuant to 78 Order. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (mg) (Entered: 02/26/2024) |
| 02/20/2024 | | NOTICE of Hearing: Status Conference set for 2/23/2024 at 1:30 PM in Courtroom 10 before Judge Amit P. Mehta. Members of the public or media may access this hearing by dialing the court's toll–free public access line: (877) 848–7030, access code 321–8747. (smc) (Entered: 02/20/2024) |
| 02/22/2024 | 79 | NOTICE of Appearance by David Alan Warrington on behalf of DONALD J. TRUMP (Warrington, David) (Entered: 02/22/2024) |
| 02/22/2024 | 80 | NOTICE of Appearance by Jonathan Mark Shaw on behalf of DONALD J. TRUMP (Shaw, Jonathan) (Entered: 02/22/2024) |
| 02/22/2024 | 81 | NOTICE of Appearance by Gary Lawkowski on behalf of DONALD J. TRUMP (Lawkowski, Gary) (Entered: 02/22/2024) |
| 02/22/2024 | 82 | Joint STATUS REPORT *pursuant to Court's February 16, 2024 Order,* by DONALD J. TRUMP. (Binnall, Jesse) (Entered: 02/22/2024) |
| 02/23/2024 | 83 | MOTION to Change Caption by ALL Plaintiffs. (Sellers, Joseph) (Entered: 02/23/2024) |
| 02/23/2024 | | MINUTE ORDER granting Plaintiffs' 83 Motion to Change Caption. The clerk's office is directed to change the case caption to *Barbara J. Lee, et al v. Donald Trump, et al* . Signed by Judge Amit P. Mehta on 2/23/2024. (lcapm3) (Entered: 02/23/2024) |
| 02/23/2024 | | MINUTE ORDER. The parties shall appear for a status conference on March 12, 2024, at 2:30 pm in Courtroom 10. In advance of that conference, by March 8, 2024, the parties shall meet and confer and set forth in a Joint Status Report a summary of their discussions as to potential stipulations, disputed facts, and the scope of discovery. Signed by Judge Amit P. Mehta on 02/23/2024. (lcapm1) (Entered: 02/23/2024) |
| 02/23/2024 | | |

| | | |
|---|---|---|
| | | Set/Reset Deadlines: Joint Status Report due by 3/8/2024. (smc) (Entered: 02/23/2024) |
| 02/23/2024 | | NOTICE of Hearing: Status Conference set for 3/12/2024 at 2:30 PM in Courtroom 10 before Judge Amit P. Mehta. Members of the public or media may access this hearing by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747. (smc) (Entered: 02/23/2024) |
| 02/23/2024 | | Minute Entry for Status Conference held on 2/23/2024 before Judge Amit P. Mehta. Status Report due by 3/8/2024, Status Conference set for 3/12/2024 at 2:30 PM in Courtroom 10− In Person before Judge Amit P. Mehta. Court Reporter William Zaremba. (zjch, ) (Entered: 02/23/2024) |
| 02/29/2024 | 84 | NOTICE of Appearance by Edward G. Caspar on behalf of GOVERNOR LATSON, DANNY MCELROY, MELISSA MARSHALL, MICHAEL FORTUNE, JASON DEROCHE, Reginald Cleveland, BYRON EVANS, CONRAD SMITH (Caspar, Edward) (Entered: 02/29/2024) |
| 02/29/2024 | 85 | Joint STATUS REPORT *by RUSSELL TAYLOR and* by Reginald Cleveland, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. (Caspar, Edward) (Entered: 02/29/2024) |
| 03/05/2024 | 86 | TRANSCRIPT OF JOINT STATUS CONFERENCE PROCEEDINGS before Judge Amit P. Mehta held on February 23, 2024; Page Numbers: 1−54. Date of Issuance: March 5, 2024. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354−3249. Transcripts may be ordered by submitting the Transcript Order Form  For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.  **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.  Redaction Request due 3/26/2024. Redacted Transcript Deadline set for 4/5/2024. Release of Transcript Restriction set for 6/3/2024.(Zaremba, William) (Entered: 03/05/2024) |
| 03/05/2024 | | Cases Consolidated: The following cases have been consolidated with this case: 23cv38. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (mg) (Entered: 04/03/2025) |
| 03/08/2024 | 87 | Joint STATUS REPORT by ALL PLAINTIFFS. (Attachments: # 1 Exhibit)Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM(Sellers, Joseph) (Entered: 03/08/2024) |
| 03/12/2024 | | Minute Entry for (Hybrid) proceedings held before Judge Amit P. Mehta: Status Conference held on 3/12/2024. The court addresses the status of this matter, and the |

| | | |
|---|---|---|
| | | stay issue remains to be resolved. The court sets the following deadlines: Defendants memorandum to be submitted by 3/19/2024, Plaintiffs opposition to be submitted by 3/26/2024, and defendants reply to be submitted by 4/2/2024. (Court Reporter: William Zaremba.) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:23–cv–00038–APM(ztj) (Entered: 03/12/2024) |
| 03/13/2024 | 88 | TRANSCRIPT OF JOINT STATUS CONFERENCE PROCEEDINGS before Judge Amit P. Mehta held on March 12, 2024; Page Numbers: 1–27. Date of Issuance: March 13, 2024. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/3/2024. Redacted Transcript Deadline set for 4/13/2024. Release of Transcript Restriction set for 6/11/2024.(Zaremba, William) (Entered: 03/13/2024) |
| 03/16/2024 | 89 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Babak Ghafarzade, Filing fee $ 100, receipt number ADCDC–10759968. Fee Status: Fee Paid. by Reginald Cleveland, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. (Attachments: # 1 Declaration Ghafarzade Declaration, # 2 Exhibit Ghafarzade Certificate)(Caspar, Edward) (Entered: 03/16/2024) |
| 03/19/2024 | 90 | MOTION to Stay by DONALD J. TRUMP. (Attachments: # 1 Statement of Facts Statement of Points and Authorities, # 2 Text of Proposed Order)(Warrington, David) (Entered: 03/19/2024) |
| 03/20/2024 | | MINUTE ORDER granting 89 Motion for Leave to Appear Pro Hac Vice. Attorney Babak Ghafarzadeis hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 03/20/2023. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–02265–APM Modified on 3/20/2024 (zcdw). (Entered: 03/20/2024) |
| 03/20/2024 | 91 | MOTION for Joinder re 90 MOTION to Stay by ENRIQUE TARRIO. (Hull, John) (Entered: 03/20/2024) |
| 03/26/2024 | 92 | NOTICE of Appearance by Marc Philip Epstein on behalf of Reginald Cleveland, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Epstein, Marc) (Entered: 03/26/2024) |

| 03/26/2024 | 93 | Memorandum in opposition to re 90 Motion to Stay filed by ALL PLAINTIFFS. (Attachments: # 1 Declaration of Marc P. Epstein, # 2 Epstein Decl. Ex. 1 – Transcript Excerpt, # 3 Epstein Decl. Ex. 2 – Transcript Excerpt, # 4 Text of Proposed Order)(Epstein, Marc) (Entered: 03/26/2024) |
|---|---|---|
| 03/29/2024 | 94 | NOTICE of Appearance by Faith E. Gay on behalf of REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Gay, Faith) (Entered: 03/29/2024) |
| 03/29/2024 | 95 | NOTICE of Appearance by Joshua S. Margolin on behalf of REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Margolin, Joshua) (Entered: 03/29/2024) |
| 03/29/2024 | 96 | NOTICE of Appearance by Elizabeth Snow on behalf of REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Snow, Elizabeth) (Entered: 03/29/2024) |
| 03/29/2024 | 97 | NOTICE of Appearance by Esther D. Ness on behalf of REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Ness, Esther) (Entered: 03/29/2024) |
| 03/29/2024 | 98 | Joint STATUS REPORT by REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. (Margolin, Joshua) (Entered: 03/29/2024) |
| 04/02/2024 | 99 | NOTICE of Appearance by Babak Ghafarzade on behalf of REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH (Ghafarzade, Babak) (Entered: 04/02/2024) |
| 04/02/2024 | 100 | REPLY to opposition to motion re 90 MOTION to Stay filed by DONALD J. TRUMP. (Lawkowski, Gary) (Entered: 04/02/2024) |
| 04/03/2024 | 101 | Memorandum in opposition to re 91 Motion for Joinder filed by KAREN R. BASS, REGINALD CLEVELAND, STEPHEN I COHEN, BONNIE WATSON COLEMAN, JASON DEROCHE, VERONICA ESCOBAR, BYRON EVANS, MICHAEL FORTUNE, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, GOVERNOR LATSON, BARBARA J. LEE, MELISSA MARSHALL, DANNY MCELROY, JERROLD NADLER, CONRAD SMITH, MAXINE WATERS. (Attachments: # 1 Text of Proposed Order)(Epstein, Marc) (Entered: 04/03/2024) |
| 04/04/2024 | 102 | NOTICE of Appearance by Patrick A. Malone on behalf of JAMES BLASSINGAME, SIDNEY HEMBY Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:23–cv–00038–APM(Malone, Patrick) (Entered: 04/04/2024) |
| 04/04/2024 | 103 | NOTICE of Appearance by Daniel C. Scialpi on behalf of JAMES BLASSINGAME, SIDNEY HEMBY Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:23–cv–00038–APM(Scialpi, |

| | | |
|---|---|---|
| | | Daniel) (Entered: 04/04/2024) |
| 04/10/2024 | 104 | REPLY to opposition to motion re 91 MOTION for Joinder re 90 MOTION to Stay filed by ENRIQUE TARRIO. (Hull, John) (Entered: 04/10/2024) |
| 04/11/2024 | 105 | Joint STATUS REPORT *by RUSSELL TAYLOR and* by REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. (Epstein, Marc) (Entered: 04/11/2024) |
| 04/12/2024 | | MINUTE ORDER. Defendant Russell Taylor and Plaintiffs in *Smith v. Trump*, 21−cv−2265 (APM), shall file an additional Joint Status Report by May 10, 2024, concerning the status of settlement, unless a stipulation of dismissal is filed on or before that date. Signed by Judge Amit P. Mehta on 04/12/2024. (lcapm3) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−02265−APM (Entered: 04/12/2024) |
| 04/15/2024 | | Set/Reset Deadlines: Joint Status Report due by 5/10/2024 (Associated Cases: 1:21−cv−00400−APM and 1:21−cv−02265−APM) (lsj) (Entered: 04/15/2024) |
| 04/17/2024 | | Cases Consolidated: The following cases have been consolidated with this case: 22cv10, 22cv11, and 22cv34. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (mg) (Entered: 04/29/2024) |
| 04/18/2024 | 106 | MEMORANDUM OPINION AND ORDER denying Defendant Trump's 90 Motion for Stay and denying as moot Defendant Tarrio's 91 Motion to Join Defendant Trump's Motion for Stay. See the attached Memorandum Opinion and Order for additional details. Signed by Judge Amit P. Mehta on 04/18/2024. (lcapm3) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:23−cv−00038−APM (Entered: 04/18/2024) |
| 04/22/2024 | 107 | Unopposed MOTION for Extension of Time to *File Proposed Protective Order and Provide Plaintiffs with Description of Immunity Defense* by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:23−cv−00038−APM(Warrington, David) (Entered: 04/22/2024) |
| 04/23/2024 | | MINUTE ORDER granting Defendant Trump's (107) Unopposed Motion for Extension of Time to File Protective Order and for Defendant to Provide Plaintiffs with Description of Immunity Defense in case 1:21−cv−00400−APM. The parties' proposed protective order shall now be due on or before May 10, 2024, and Defendant's description of his immunity defense is now due to Plaintiffs on or before May 15, 2024. Signed by Judge Amit P. Mehta on 04/23/2024. Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:23−cv−00038−APM (lcapm3) (Entered: 04/23/2024) |
| 04/26/2024 | 108 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:23−cv−00038−APM(Sellers, Joseph) (Entered: 04/26/2024) |
| 04/29/2024 | 109 | ORDER. Having considered the parties' respective positions, the deadline for immunity−related discovery shall be September 11, 2024. The parties shall file a Joint Status Report by May 29, 2024, and every 30 days thereafter, which updates the court on the progress of discovery. See attached Order for additional details. Signed by |

| | | |
|---|---|---|
| | | Judge Amit P. Mehta on 04/29/2024. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM (lcapm3) (Entered: 04/29/2024) |
| 04/29/2024 | | Set/Reset Deadlines: Joint Status Report due by 5/29/2024. (zed) (Entered: 05/07/2024) |
| 05/09/2024 | | Set/Reset Deadlines: Immunity–Related Discovery due by 9/11/2024. (zdrf) (Entered: 05/09/2024) |
| 05/10/2024 | 110 | Unopposed MOTION for Extension of Time to *Submit Proposed Protective Order* by REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. (Caspar, Edward) (Entered: 05/10/2024) |
| 05/13/2024 | | MINUTE ORDER granting (110) Unopposed Motion for Extension of Time to File Parties Proposed Protective Order in case 1:21–cv–00400–APM. The parties shall file a proposed protective order governing discovery by May 14, 2024. Signed by Judge Amit P. Mehta on 05/13/2024. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(lcmk) (Entered: 05/13/2024) |
| 05/14/2024 | | Set/Reset Deadlines: The parties shall file a proposed protective order governing discovery by May 14, 2024. Associated Cases: 1:21–cv–00400–APM et al.(zglw) (Entered: 05/14/2024) |
| 05/14/2024 | 111 | Joint MOTION for Protective Order by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Warrington, David) (Entered: 05/14/2024) |
| 05/15/2024 | 112 | ORDER entering (111) Stipulated Protective Order in case 1:21–cv–00400–APM. See attached Order for further details. Signed by Judge Amit P. Mehta on 05/15/2024. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM (Entered: 05/15/2024) |
| 05/29/2024 | 113 | Joint STATUS REPORT by DONALD J. TRUMP. (Warrington, David) (Entered: 05/29/2024) |
| 06/28/2024 | 114 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 06/28/2024) |
| 07/17/2024 | 115 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALL PLAINTIFFS. Attorney Anna Kathryn Barnes Barry terminated. (Barry, Anna Kathryn Barnes) (Entered: 07/17/2024) |
| 07/29/2024 | 116 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 07/29/2024) |
| 08/02/2024 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER. The parties shall appear for a remote status conference on August 6, 2024, at 10:00 a.m. Counsel for Defendant Trump should inform counsel for NARA and the Department of the Interior that the court is requesting their appearance at the status conference. Signed by Judge Amit P. Mehta on 08/02/2024. (lcapm3) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM (Entered: 08/02/2024) |
| 08/05/2024 | | Set/Reset Hearings: Status Conference set for 8/6/2024 at 10:00 AM via Zoom before Judge Amit P. Mehta. Interested members of the public and media may access the Status Conference by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747. Alternatively, the remote proceedings may be viewed in Courtroom 10. Associated Cases: 1:21−cv−00400−APM et al.(zakb) (Entered: 08/05/2024) |
| 08/06/2024 | | MINUTE ORDER. Pursuant to the status conference held on August 6, 2024, the court orders the following: (1) Defendant Trump and the government shall file a Joint Status Report by August 13, 2024, which updates the court on the status of Defendant's subpoena to the Secret Service; (2) the parties shall exchange by August 13, 2024, a preliminary list of intended deponents or declarants; and (3) the parties shall exchange by August 23, 2024, a final list of intended deponents or declarants. Signed by Judge Amit P. Mehta on 08/06/2024. (lcapm3) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM(lcmk) (Entered: 08/06/2024) |
| 08/06/2024 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 8/6/2024. Post−Discovery Conference set for 9/17/2024 at 09:00 AM via Zoom before Judge Amit P. Mehta. Interested members of the public and media may access the Conference by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747. See Court's Minute Order dated 8/6/2024 regarding additional deadlines. (Court Reporter William Zaremba.) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM(zakb) (Entered: 08/06/2024) |
| 08/13/2024 | 117 | Joint STATUS REPORT by DONALD J. TRUMP. (Lawkowski, Gary) (Entered: 08/13/2024) |
| 08/20/2024 | | MINUTE ORDER. Defendant Trump shall file a Status Report by August 29, 2024, which updates the court on his efforts to obtain records from the Secret Service and the DC Metropolitan Police Department. Signed by Judge Amit P. Mehta on 08/20/2024. (lcpam3) Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM (Entered: 08/20/2024) |
| 08/21/2024 | | Set/Reset Deadlines: Joint Status Report due by 8/29/2024. Associated Cases: 1:21−cv−00586−APM et al. (zakb) (Entered: 08/21/2024) |
| 08/21/2024 | 118 | STATUS REPORT by DONALD J. TRUMP. (Lawkowski, Gary) (Entered: 08/21/2024) |
| 08/28/2024 | 119 | |

| | | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 08/28/2024) |
|---|---|---|
| 08/29/2024 | | MINUTE ORDER. The parties shall file an additional Joint Status Report by September 5, 2024, which addresses: (1) Defendant Trump's position on Plaintiffs' proposed schedule of final declarant and deponent disclosures, (2) productions from NARA, the D.C. Metropolitan Police Department, the Secret Service, and the Department of Interior, and (3) Plaintiffs' position on an extension of the discovery deadline. Signed by Judge Amit P. Mehta on 08/29/2024. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM (Entered: 08/29/2024) |
| 08/30/2024 | | Set/Reset Deadlines: Joint Status Report due by 9/5/2024. Associated Cases: 1:21–cv–00400–APM et al. (zakb) (Entered: 08/30/2024) |
| 09/05/2024 | 120 | Joint STATUS REPORT by DONALD J. TRUMP. (Warrington, David) (Entered: 09/05/2024) |
| 09/09/2024 | | MINUTE ORDER. The deadline for the completion of immunity–related discovery is hereby extended to October 28, 2024. Also, the parties shall exchange declarations that they intend to use to support summary judgment by September 30, 2024. The court will permit new declarations or amendments beyond this deadline only for good cause show. The parties shall submit an additional Joint Status Report as to the status of immunity–related discovery on October 4, 2024. The post–discovery conference set for September 17, 2024, is hereby vacated and reset for October 31, 2024, at 10:00 a.m. Signed by Judge Amit P. Mehta on 09/09/2024. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM (Entered: 09/09/2024) |
| 09/13/2024 | | Set/Reset Deadlines/Hearings: Joint Status Report due by 10/4/2024. Discovery due by 10/28/2024. Discovery Hearing set for 10/31/2024 at 10:00 AM via video conference (Zoom) before Judge Amit P. Mehta. Interested members of the public and/or media may access the hearing by dialing the court's toll–free public access line: (877) 848–7030, access code 321–8747. Associated Cases: 1:21–cv–00400–APM et al.(zakb) (Entered: 09/13/2024) |
| 09/26/2024 | 121 | Mail Returned as Undeliverable re Minute Order entered on 8/6/2024 Sent to Oath Keepers. (zakb) (Entered: 09/26/2024) |
| 09/30/2024 | 122 | DECLARATION by JESSICA WATKINS. "LET THIS BE FILED." Signed by Judge Amit P. Mehta on 9/30/2024.(mg) (Entered: 10/01/2024) |
| 10/04/2024 | 123 | NOTICE of Appearance by Alexander Franklin Atkins on behalf of JARED HOLT (Atkins, Alexander) (Entered: 10/04/2024) |
| 10/04/2024 | 124 | NOTICE OF WITHDRAWAL OF APPEARANCE as to JARED HOLT. Attorney Jonathan Lentine Williams terminated. (Williams, Jonathan) (Entered: 10/04/2024) |
| 10/04/2024 | 125 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, |

| | | 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 10/04/2024) |
|---|---|---|
| 10/16/2024 | 126 | ORDER. Having considered the dispute raised in the Joint Status Report filed on October 4, 2024, ECF No. 125, the court orders that Plaintiffs may designate up to 20 more interrogatories, across all three Sets of Interrogatories, to which Defendant Donald J. Trump shall provide a response. If Plaintiffs want responses to more than 20 additional interrogatories, they must seek leave of court. See attached Order for additional details. Signed by Judge Amit P. Mehta on 10/16/2024. (lcapm3) Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM (Entered: 10/16/2024) |
| 10/17/2024 | 127 | ENTERED IN ERROR.....NOTICE *of Letter to Court* by DONALD J. TRUMP re 126 Order,, (Warrington, David) Modified on 10/18/2024 (mg). (Entered: 10/17/2024) |
| 10/18/2024 | | NOTICE OF ERROR regarding 127 Notice (Other). The following error(s) need correction: Incorrect event. Incorrect format (Letter)– correspondence is not permitted (LCvR 5.1(a)). Please refile using the Motion for Reconsideration event in proper pleading format with proposed order. (mg) (Entered: 10/18/2024) |
| 10/20/2024 | 128 | MOTION for Reconsideration re 126 Order,, by DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Warrington, David) (Entered: 10/20/2024) |
| 10/21/2024 | 129 | Memorandum in opposition to re (128 in 1:21–cv–00400–APM) Motion for Reconsideration filed by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 10/21/2024) |
| 10/24/2024 | 130 | Joint MOTION for Extension of Time to *Take Immunity–Related Depositions* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 10/24/2024) |
| 10/25/2024 | | MINUTE ORDER denying 128 Motion to Reconsider. Although Defendant may have raised an objection to the number of interrogatories at an earlier date, he did not stand on the objection until well after the 25–interrogatory threshold. The prejudice referenced in the courts Order, ECF No. 126, therefore remains the same. Accordingly, reconsideration is denied. Signed by Judge Amit P. Mehta on 10/25/2024. (lcapm3) (Entered: 10/25/2024) |
| 10/25/2024 | 131 | ORDER granting 130 Joint Motion to Extend Third–Party Deposition Deadlines. The post–discovery conference scheduled for October 31, 2024 is hereby vacated and reset to December 6, 2024 at 2:15 p.m. See attached Order for additional details. Signed by Judge Amit P. Mehta on 10/25/2024. (lcapm3) Main Document replaced on 11/1/2024 to remove "proposed" from title (zakb). (Entered: 10/25/2024) |
| 11/01/2024 | | MINUTE ORDER. Pursuant to the previously entered 78 Order, the Parties are hereby reminded to submit filings only in the first–filed case, Lee et al. v. Trump et al., 21–cv–400. Signed by Judge Amit P. Mehta on 11/1/2024. (zakb) (Entered: 11/01/2024) |
| 11/04/2024 | | Set/Reset Deadlines/Hearings: Post–Discovery Conference reset for 12/6/2024 at 2:15 PM via teleconference before Judge Amit P. Mehta. (zakb) (Entered: 11/04/2024) |
| 11/06/2024 | 132 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jared J. Roberts, Filing fee $ 100, receipt number DCDC–11284111. Fee Status: Fee Paid. by |

| | | |
|---|---|---|
| | | DONALD J. TRUMP FOR PRESIDENT, INC., MAKE AMERICA GREAT AGAIN PAC. (Attachments: # 1 Declaration of Jared J. Roberts, # 2 Text of Proposed Order)Associated Cases: 1:21–cv–00400–APM, 1:21–cv–02265–APM(Binnall, Jesse) (Entered: 11/06/2024) |
| 11/08/2024 | | NOTICE OF ERROR regarding 132 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jared J. Roberts, Filing fee $ 100, receipt number DCDC–11284111. Fee Status: Fee Paid.. The following error(s) need correction: Pro Hac Vice motion must be accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate as an Errata (mg) (Entered: 11/08/2024) |
| 12/01/2024 | 133 | NOTICE of Appearance by Stanley Edmund Woodward, Jr on behalf of DANIEL J. SCAVINO, JR (Woodward, Stanley) (Entered: 12/01/2024) |
| 12/02/2024 | 134 | MOTION for Protective Order , MOTION to Quash by DANIEL J. SCAVINO, JR. (Attachments: # 1 Text of Proposed Order)(Woodward, Stanley) (Entered: 12/02/2024) |
| 12/02/2024 | | MINUTE ORDER. Any opposition to Third–Party Dan Scavino's 134 Emergency Motion for Protective Order and/or Quash shall be filed by 5:00 p.m. Counsel for Plaintiffs, Defendant Trump, and Third–Party Scavino shall appear for a remote hearing at 5:30 p.m. on December 2, 2024. Signed by Judge Amit P. Mehta on 12/2/2024. (lcapm3) (Entered: 12/02/2024) |
| 12/02/2024 | 135 | Memorandum in opposition to re (134 in 1:21–cv–00400–APM, 134 in 1:21–cv–00400–APM) Motion for Protective Order, Motion to Quash filed by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 12/02/2024) |
| 12/02/2024 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Remote Discovery Hearing held on 12/2/2024. Court heard arguments on the interested party Daniel Scavino's 134 Emergency Motion for Protective Order and/or to Quash and denied the relief requested. (Court Reporter WIlliam Zaremba.) (zakb) (Entered: 12/03/2024) |
| 12/05/2024 | | MINUTE ORDER. The Post–Discovery Conference is hereby reset for 12/6/2024 at 2:30 PM via teleconference before Judge Amit P. Mehta. Signed by Judge Amit P. Mehta on 12/5/2024. (lcapm3) (Entered: 12/05/2024) |
| 12/06/2024 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Post–Discovery Conference held on 12/6/2024. Proposed Briefing Schedule of further proceedings due by 12/20/2024. (Court Reporter William Zaremba.) (zakb) (Entered: 12/06/2024) |
| 12/20/2024 | 136 | TRANSCRIPT OF JOINT STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on August 6, 2024; Page Numbers: 1–31. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/10/2025. Redacted Transcript Deadline set for 1/20/2025. Release of Transcript Restriction set for 3/20/2025.(Zaremba, William) (Entered: 12/20/2024) |
| 12/20/2024 | 137 | PROPOSED BRIEFING SCHEDULE *(Joint)* by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 12/20/2024) |
| 12/31/2024 | | MINUTE ORDER. Having considered the parties respective positions, ECF No. 137, the schedule for briefing on the question of presidential immunity from suit shall be as follows: (1) Defendant Trump's motion for summary judgment to confirm immunity shall be filed by January 24, 2025; (2) Plaintiffs' opposition to Defendant Trump's motion for summary judgment shall be filed by February 28, 2025; and (3) Defendant Trump's reply in support of the motion for summary judgment shall be filed by April 4, 2025. If Plaintiffs wish to cross–move for summary judgment on February 28, 2025, they shall separately file a motion of no more than five pages that justifies the need for a cross–motion. Signed by Judge Amit P. Mehta on 12/31/2024. (lcapm3) (Entered: 12/31/2024) |
| 12/31/2024 | | MINUTE ORDER. Plaintiffs and Defendant Trump shall appear for a remote hearing as to the discovery dispute set forth in their 137 Joint Statement on January 6, 2025, at 10:00 a.m. Signed by Judge Amit P. Mehta on 12/31/2024. (lcapm3) (Entered: 12/31/2024) |
| 01/06/2025 | | NOTICE of Hearing: The remote Discovery Hearing set for 1/6/2025 shall now be heard at 11:30 AM before Judge Amit P. Mehta. (zakb) Modified on 1/6/2025 to correct time (zakb). (Entered: 01/06/2025) |
| 01/06/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Discovery Hearing held on 1/6/2025. Court heard the parties' discovery disputes set forth in their 137 Joint Statement regarding Proposed Briefing Schedule for Further Proceedings. (Court Reporter William Zaremba.) (zakb) (Entered: 01/06/2025) |
| 01/10/2025 | | MINUTE ORDER. Having considered the parties' positions as to Defendant Trump's objection to answering Interrogatories 7, 9–12, the objection is sustained. Defendant Trump has answered the maximum interrogatories permitted by the court. Additionally, the information sought in these interrogatories will soon be put forth in Defendant's summary judgment brief, making a response to them unnecessary and burdensome now that the time for immunity discovery has ended. Signed by Judge Amit P. Mehta on 1/10/2025. (lcapm3) (Entered: 01/10/2025) |
| 01/16/2025 | 138 | TRANSCRIPT OF POST–DISCOVERY CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on December 6, 2024; Page Numbers: 1–13. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/6/2025. Redacted Transcript Deadline set for 2/16/2025. Release of Transcript Restriction set for 4/16/2025.(Zaremba, William) (Entered: 01/16/2025)

| Date | No. | Description |
|---|---|---|
| 01/16/2025 | 139 | NOTICE of Appearance by Gerald A. Urbanek, Jr on behalf of DONALD J. TRUMP (Urbanek, Gerald) (Entered: 01/16/2025) |
| 01/17/2025 | 140 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD J. TRUMP. Attorney David Alan Warrington terminated. (Warrington, David) (Entered: 01/17/2025) |
| 01/17/2025 | 141 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD J. TRUMP. Attorney Gary Lawkowski terminated. (Lawkowski, Gary) (Entered: 01/17/2025) |
| 01/20/2025 | 142 | MOTION to Withdraw as Attorney by KELLY MEGGS. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21−cv−00400−APM, 1:21−cv−02265−APM(Woodward, Stanley) (Entered: 01/20/2025) |
| 01/24/2025 | 143 | TRANSCRIPT OF DISCOVERY HEARING VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on December 2, 2024; Page Numbers: 1−16. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/14/2025. Redacted Transcript Deadline set for 2/24/2025. Release of Transcript Restriction set for 4/24/2025.(Zaremba, William) (Entered: 01/24/2025) |
| 01/24/2025 | 144 | MOTION for Summary Judgment by DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration, # 4 Exhibit, # 5 |

| | | |
|---|---|---|
| | | Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Text of Proposed Order)(Shaw, Jonathan) (Entered: 01/24/2025) |
| 01/24/2025 | 145 | MOTION for Reconsideration re 66 Order on Motion to Dismiss,,,,,,,, by DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Shaw, Jonathan) (Entered: 01/24/2025) |
| 01/28/2025 | 146 | Consent MOTION for Extension of Time to File Response/Reply *to Defendant Trump's Motion to Reconsider Denial of his Motion to Dismiss* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 01/28/2025) |
| 01/30/2025 | 147 | TRANSCRIPT OF DISCOVERY HEARING VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on January 6, 2025; Page Numbers: 1–36. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/20/2025. Redacted Transcript Deadline set for 3/2/2025. Release of Transcript Restriction set for 4/30/2025.(Zaremba, William) (Entered: 01/30/2025) |
| 02/05/2025 | 148 | NOTICE of Appearance by Ronald D. Coleman on behalf of ENRIQUE TARRIO (Coleman, Ronald) (Entered: 02/05/2025) |
| 02/07/2025 | 149 | ORDER granting 146 Consent Motion for Extension of Time to Respond. Plaintiffs shall file their response to Defendant Trump's Motion for Reconsideration by February 28, 2025. Defendant Trump shall file his reply by April 4, 2025. Signed by Judge Amit P. Mehta on 2/7/2025. (lcapm2) (Entered: 02/07/2025) |
| 02/07/2025 | 150 | ORDER denying Plaintiffs' request to file a cross–motion for summary judgment on the claim of official–act immunity. See the attached Order for additional details. Signed by Judge Amit P. Mehta on 2/7/2025. (lcapm2) (Entered: 02/07/2025) |

| 02/25/2025 | 151 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Nina C. Jaffe–Geffner, Filing fee $ 100, receipt number ADCDC–11503819. Fee Status: Fee Paid. by BONNIE WATSON COLEMAN, KAREN R. BASS, PRAMILA JAYAPAL, MAXINE WATERS, JERROLD NADLER, HENRY C. JOHNSON, STEPHEN I COHEN, BARBARA J. LEE, VERONICA ESCOBAR, MARCIA KAPTUR. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Deich, Alison) (Entered: 02/25/2025) |
|---|---|---|
| 02/26/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 151 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Nina C. Jaffe–Geffner, Filing fee $ 100, receipt number ADCDC–11503819. Fee Status: Fee Paid. by BONNIE WATSON COLEMAN, KAREN R. BASS, PRAMILA JAYAPAL, MAXINE WATERS, JERROLD NADLER, HENRY C. JOHNSON, STEPHEN I COHEN, BARBARA J. LEE, VERONICA ESCOBAR, MARCIA KAPTUR. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Deich, Alison).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/5/2025. (zapb) 2/26/2025 (zapb). (Entered: 02/26/2025) |
| 02/28/2025 | 152 | Memorandum in opposition to re 144 Motion for Summary Judgment,,,, *(Redacted)* filed by ALL PLAINTIFFS. (Attachments: # 1 Statement of Facts and Counterstatement of Facts, # 2 Declaration of Edward G. Caspar, # 3 Exhibit 50, # 4 Exhibit 51, # 5 Exhibit 52, # 6 Exhibit 53, # 7 Exhibit 54, # 8 Exhibit 55, # 9 Exhibit 56, # 10 Exhibit 57, # 11 Exhibit 58, # 12 Exhibit 59, # 13 Exhibit 60, # 14 Exhibit 61, # 15 Exhibit 62, # 16 Exhibit 63, # 17 Exhibit 64, # 18 Exhibit 65, # 19 Exhibit 66, # 20 Exhibit 67, # 21 Exhibit 68, # 22 Exhibit 69, # 23 Exhibit 70, # 24 Exhibit 71, # 25 Exhibit 72, # 26 Exhibit 73, # 27 Exhibit 74, # 28 Exhibit 75, # 29 Exhibit 76, # 30 Exhibit 77, # 31 Exhibit 78, # 32 Exhibit 79, # 33 Exhibit 80, # 34 Exhibit 81, # 35 Exhibit 82, # 36 Exhibit 83, # 37 Exhibit 84, # 38 Exhibit 85, # 39 Exhibit 86, # 40 Exhibit 87, # 41 Exhibit 88, # 42 Exhibit 89, # 43 Exhibit 90, # 44 Exhibit 91, # 45 Exhibit 92, # 46 Exhibit 93, # 47 Exhibit 94, # 48 Exhibit 95, # 49 Exhibit 96, # 50 Exhibit 97, # 51 Exhibit 98, # 52 Exhibit 99, # 53 Exhibit 100, # 54 Exhibit 101, # 55 Exhibit 102, # 56 Exhibit 103, # 57 Exhibit 104, # 58 Exhibit 105, # 59 Exhibit 106, # 60 Exhibit 107, # 61 Exhibit 108, # 62 Exhibit 109, # 63 Exhibit 110, # 64 Exhibit 111, # 65 Exhibit 112, # 66 Exhibit 113, # 67 Exhibit 114, # 68 Exhibit 115, # 69 Exhibit 116, # 70 Exhibit 117, # 71 Exhibit 118, # 72 Exhibit 119, # 73 Exhibit 120, # 74 Exhibit 121, # 75 Exhibit 122, # 76 Exhibit 123, # 77 Exhibit 124, # 78 Exhibit 125, # 79 Exhibit 126, # 80 Exhibit 127, # 81 Exhibit 128, # 82 Exhibit 129, # 83 Exhibit 130, # 84 Exhibit 131, # 85 Exhibit 132, # 86 Exhibit 133, # 87 Exhibit 134, # 88 Exhibit 135, # 89 Exhibit 136, # 90 Exhibit 137, # 91 Exhibit 138, # 92 Exhibit 139, # 93 Exhibit 140, # 94 Exhibit 141, # 95 Exhibit 142, # 96 Exhibit 143, # 97 Exhibit 144, # 98 Exhibit 145, # 99 Exhibit 146, # 100 Exhibit 147, # 101 Exhibit 148, # 102 Exhibit 149, # 103 Exhibit 150, # 104 Exhibit 151, # 105 Exhibit |

44

152, # 106 Exhibit 153, # 107 Exhibit 154, # 108 Exhibit 155, # 109 Exhibit 156, # 110 Exhibit 157, # 111 Exhibit 158, # 112 Exhibit 159, # 113 Exhibit 160, # 114 Exhibit 161, # 115 Exhibit 162, # 116 Exhibit 163, # 117 Exhibit 164, # 118 Exhibit 165, # 119 Exhibit 166, # 120 Exhibit 167, # 121 Exhibit 168, # 122 Exhibit 169, # 123 Exhibit 170, # 124 Exhibit 171, # 125 Exhibit 172, # 126 Exhibit 173, # 127 Exhibit 174, # 128 Exhibit 175, # 129 Exhibit 176, # 130 Exhibit 177, # 131 Exhibit 178, # 132 Exhibit 179, # 133 Exhibit 180, # 134 Exhibit 181, # 135 Exhibit 182, # 136 Exhibit 183, # 137 Exhibit 184, # 138 Exhibit 185, # 139 Exhibit 186, # 140 Exhibit 187, # 141 Exhibit 188, # 142 Exhibit 189, # 143 Exhibit 190, # 144 Exhibit 191, # 145 Exhibit 192, # 146 Exhibit 193, # 147 Exhibit 194, # 148 Exhibit 195, # 149 Exhibit 196, # 150 Exhibit 197, # 151 Exhibit 198, # 152 Exhibit 199, # 153 Exhibit 200, # 154 Exhibit 201, # 155 Exhibit 202, # 156 Exhibit 203, # 157 Exhibit 204, # 158 Exhibit 205, # 159 Exhibit 206, # 160 Exhibit 207, # 161 Exhibit 208, # 162 Exhibit 209, # 163 Exhibit 210, # 164 Exhibit 211, # 165 Exhibit 212, # 166 Exhibit 213, # 167 Exhibit 214, # 168 Exhibit 215, # 169 Exhibit 216, # 170 Exhibit 217, # 171 Exhibit 218, # 172 Exhibit 219, # 173 Exhibit 220, # 174 Exhibit 221, # 175 Exhibit 222, # 176 Exhibit 223, # 177 Exhibit 224, # 178 Exhibit 225, # 179 Exhibit 226, # 180 Exhibit 227, # 181 Exhibit 228, # 182 Exhibit 229, # 183 Exhibit 230, # 184 Exhibit 231, # 185 Exhibit 232, # 186 Exhibit 233, # 187 Exhibit 234, # 188 Exhibit 235, # 189 Exhibit 236, # 190 Text of Proposed Order)(Caspar, Edward) (Entered: 02/28/2025)

| | | |
|---|---|---|
| 02/28/2025 | 153 | MOTION to Take Judicial Notice *in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment* by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 02/28/2025) |
| 02/28/2025 | 154 | Memorandum in opposition to re 145 Motion for Reconsideration filed by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 02/28/2025) |
| 02/28/2025 | 155 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, # 2 Statement of Facts and Counterstatement of Facts, # 3 Declaration of Edward G. Caspar, # 4 Exhibit 52, # 5 Exhibit 53, # 6 Exhibit 54, # 7 Exhibit 55, # 8 Exhibit 56, # 9 Exhibit 65, # 10 Exhibit 68, # 11 Exhibit 69, # 12 Exhibit 80, # 13 Exhibit 84, # 14 Exhibit 89, # 15 Exhibit 100, # 16 Exhibit 103, # 17 Exhibit 106, # 18 Exhibit 107, # 19 Exhibit 111, # 20 Exhibit 124, # 21 Exhibit 125, # 22 Exhibit 126, # 23 Exhibit 127, # 24 Exhibit 128, # 25 Exhibit 129, # 26 Exhibit 130, # 27 Exhibit 131, # 28 Exhibit 132, # 29 Exhibit 133, # 30 Exhibit 134, # 31 Exhibit 135, # 32 Exhibit 136, # 33 Exhibit 137, # 34 Exhibit 138, # 35 Exhibit 139, # 36 Exhibit 140, # 37 Exhibit 141, # 38 Exhibit 142, # 39 Exhibit 143, # 40 Exhibit 144, # 41 Exhibit 145, # 42 Exhibit 146, # 43 Exhibit 147, # 44 Exhibit 148, # 45 Exhibit 149, # 46 Exhibit 163, # 47 Text of Proposed Order, # 48 Certificate of Service)(Caspar, Edward) (Entered: 02/28/2025) |
| 03/03/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 155 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, # 2 Statement of Facts and Counterstatement of Facts, # 3 Declaration of Edward G. Caspar, # 4 Exhibit 52, # 5 Exhibit 53, # 6 Exhibit 54, # 7 Exhibit 55, # 8 Exhibit 56, # 9 Exhibit 65, # 10 Exhibit |

68, # 11 Exhibit 69, # 12 Exhibit 80, # 13 Exhibit 84, # 14 Exhibit 89, # 15 Exhibit 100, # 16 Exhibit 103, # 17 Exhibit 106, # 18 Exhibit 107, # 19 Exhibit 111, # 20 Exhibit 124, # 21 Exhibit 125, # 22 Exhibit 126, # 23 Exhibit 127, # 24 Exhibit 128, # 25 Exhibit 129, # 26 Exhibit 130, # 27 Exhibit 131, # 28 Exhibit 132, # 29 Exhibit 133, # 30 Exhibit 134, # 31 Exhibit 135, # 32 Exhibit 136, # 33 Exhibit 137, # 34 Exhibit 138, # 35 Exhibit 139, # 36 Exhibit 140, # 37 Exhibit 141, # 38 Exhibit 142, # 39 Exhibit 143, # 40 Exhibit 144, # 41 Exhibit 145, # 42 Exhibit 146, # 43 Exhibit 147, # 44 Exhibit 148, # 45 Exhibit 149, # 46 Exhibit 163, # 47 Text of Proposed Order, # 48 Certificate of Service)(Caspar, Edward).

Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney−renewal.

Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/10/2025. (zapb) 3/4/2025 (zapb). (Entered: 03/03/2025)

| | | |
|---|---|---|
| 03/03/2025 | | MINUTE ORDER granting 151 Motion for Leave to Appear Pro Hac Vice. Attorney Nina C. Jaffe−Geffner is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 3/3/2025. (lcapm3) (Entered: 03/03/2025) |
| 03/03/2025 | 156 | NOTICE *of Non−Electronic Filing* by ALL PLAINTIFFS (Epstein, Marc) (Entered: 03/03/2025) |
| 03/07/2025 | 157 | NOTICE of Appearance by Nina Jaffe−Geffner on behalf of BONNIE WATSON COLEMAN, KAREN R. BASS, PRAMILA JAYAPAL, MAXINE WATERS, JERROLD NADLER, HENRY C. JOHNSON, STEPHEN I COHEN, BARBARA J. LEE, VERONICA ESCOBAR, MARCIA KAPTUR (Jaffe−Geffner, Nina) (Entered: 03/07/2025) |
| 03/07/2025 | 158 | NOTICE of Appearance by Edward D. Greim on behalf of Event Strategies Incorporated, Megan Powers Associated Cases: 1:21−cv−00400−APM et al.(Greim, Edward) (Entered: 03/07/2025) |
| 03/07/2025 | 159 | NOTICE of Appearance by Paul Eugene Brothers on behalf of Event Strategies Incorporated, Megan Powers Associated Cases: 1:21−cv−00400−APM et al.(Brothers, Paul) (Entered: 03/07/2025) |
| 03/07/2025 | 160 | Consent MOTION to Maintain Seal of Summary Judgment Exhibits re (155 in 1:21−cv−00400−APM) SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) by Event Strategies Incorporated, Megan Powers. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Associated Cases: 1:21−cv−00400−APM et al.(Greim, Edward) (Entered: 03/07/2025) |
| 03/07/2025 | 161 | NOTICE of Appearance by Mark Paul Nobile, I on behalf of DANIEL J. SCAVINO, JR (Nobile, Mark) (Entered: 03/07/2025) |
| 03/07/2025 | 162 | |

46

| | | |
|---|---|---|
| | | MOTION for Leave to File *Documents to Be Maintained Under Seal* by DANIEL J. SCAVINO, JR. (Attachments: # 1 Text of Proposed Order)(Nobile, Mark) (Entered: 03/07/2025) |
| 03/10/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 160 Consent MOTION to Maintain Seal of Summary Judgment Exhibits re (155 in 1:21–cv–00400–APM) SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) by Event Strategies Incorporated, Megan Powers. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Associated Cases: 1:21–cv–00400–APM et al.(Greim, Edward).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/17/2025. (zapb) Modified on 3/12/2025 (zhcn). (Entered: 03/10/2025) |
| 03/10/2025 | 163 | NOTICE of Exhibits by ALL PLAINTIFFS re 152 Memorandum in Opposition. "Let this be filed." Signed by Judge Amit P. Mehta on 3/10/2025. (mg) (Entered: 03/11/2025) |
| 03/14/2025 | 164 | Memorandum in opposition to re 162 Motion for Leave to File *Documents to be maintained under seal* filed by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 03/14/2025) |
| 03/17/2025 | | MINUTE ORDER granting 160 Consent Motion to Maintain Seal of Summary Judgment Exhibits. As the redacted information at issue contains personal identifying information, it is appropriately withheld from the public record. Exhibits 80, 84, and 89, to Plaintiffs' Memorandum in Opposition to Summary Judgment shall remain sealed. Signed by Judge Amit P. Mehta on 3/17/2025. (lcapm3) (Entered: 03/17/2025) |
| 03/20/2025 | | NOTICE of Hearing: Status Conference set for 3/25/2025 at 5:15 PM via Zoom before Judge Amit P. Mehta. (zakb) (Entered: 03/20/2025) |
| 03/21/2025 | 165 | REPLY to opposition to motion re 162 Motion for Leave to File *Documents to Be Maintained Under Seal* filed by DANIEL J. SCAVINO, JR. (Nobile, Mark) (Entered: 03/21/2025) |
| 03/24/2025 | 166 | MOTION for Hearing *for a status conference* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Martin, John) Modified event on 3/25/2025 (znmw). (Entered: 03/24/2025) |
| 03/24/2025 | | MINUTE ORDER granting 166 the United States' Motion for a Status Conference. The United States shall appear at the already scheduled status conference in these consolidated matters on March 25, 2025, at 5:15 p.m. Signed by Judge Amit P. Mehta on 3/24/2025. (lcapm3) (Entered: 03/24/2025) |
| 03/25/2025 | | Minute Entry for remote proceedings held before Judge Amit P. Mehta: Status Conference held on 3/25/2025. Joint Status Report from the parties due by 4/4/2025. |

| | | |
|---|---|---|
| | | Court granted Defendant Trump's oral Motion to Extend Time to File Reply Brief, reply due by 4/16/2025. Further Status Conference set for 5/13/2025 at 5:15 PM via Zoom before Judge Amit P. Mehta. (Court Reporter William Zaremba.) (zakb) (Entered: 03/25/2025) |
| 03/26/2025 | 167 | NOTICE OF WITHDRAWAL OF APPEARANCE as to GOVERNOR LATSON, DANNY MCELROY, MELISSA MARSHALL, MICHAEL FORTUNE, JASON DEROCHE, REGINALD CLEVELAND, BYRON EVANS, CONRAD SMITH. Attorney Esther D. Ness terminated. (Ness, Esther) (Entered: 03/26/2025) |
| 04/03/2025 | 168 | Consent MOTION for Extension of Time to File *Joint Status Report* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Martin, John) (Entered: 04/03/2025) |
| 04/04/2025 | 169 | ORDER granting 168 Consent Motion for Extension of Time to File a Joint Status Report. The joint status report shall now be due on or before April 9, 2025. See the attached Order for additional details. Signed by Judge Amit P. Mehta on 4/3/2025. (lcapm3) (Entered: 04/04/2025) |
| 04/09/2025 | 170 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Martin, John) (Entered: 04/09/2025) |
| 04/11/2025 | | MINUTE ORDER. The following schedule shall govern Plaintiffs' challenge to the governments substitution of itself for Defendant Donald J. Trump: (1) by May 14, 2025, Plaintiffs shall file their motion to strike, which will be limited to the evidentiary record developed in the immunity litigation; (2) by June 11, 2025, the government shall respond to Plaintiffs' motion; and (3) by June 27, 2025, Plaintiffs shall file their reply brief. The court hereby stays briefing on the government's motion to dismiss until after resolution of the immunity and substitution issues. Signed by Judge Amit P. Mehta on 4/11/2025. (lcapm3) (Entered: 04/11/2025) |
| 04/16/2025 | 171 | REPLY to opposition to motion re 145 Motion for Reconsideration filed by DONALD J. TRUMP. (Shaw, Jonathan) (Entered: 04/16/2025) |
| 04/16/2025 | 172 | Memorandum in opposition to re 153 Motion to Take Judicial Notice filed by DONALD J. TRUMP. (Shaw, Jonathan) (Entered: 04/16/2025) |
| 04/16/2025 | 173 | RESPONSE re 152 Memorandum in Opposition,,,,,,,,,,,,,,,,,, *PRESIDENT DONALD J. TRUMPS OBJECTION TO ADMISSION OF SELECT COMMITTEE FINAL REPORT* filed by DONALD J. TRUMP. (Attachments: # 1 Declaration of Gerald A. Urbanek, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB)(Shaw, Jonathan) (Entered: 04/16/2025) |
| 04/16/2025 | 174 | REPLY to opposition to motion re 144 Motion for Summary Judgment,,,, filed by DONALD J. TRUMP. (Attachments: # 1 Statement of Facts Redacted Response to Pls' Counterstatement, # 2 Statement of Facts Redacted Counterstatement to Pls' Add'l Facts, # 3 Declaration Declaration of G. Urbanek, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 |

| | | |
|---|---|---|
| | | Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit)(Binnall, Jesse) (Entered: 04/16/2025) |
| 04/16/2025 | 175 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DONALD J. TRUMP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Statement of Facts Sealed Response to Pls' Counterstatement, # 2 Statement of Facts Sealed Counterstatement to Pls' Add'l Statement, # 3 Text of Proposed Order Proposed Order, Mtn to Seal)(Binnall, Jesse) Modified on 6/20/2025, unsealed pursuant to Order filed on 6/19/2025. (mg). (Entered: 04/16/2025) |
| 04/17/2025 | | NOTICE OF ERROR re 174 Reply to opposition to Motion; emailed to jesse@binnall.com, cc'd 77 associated attorneys –– The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. Signature on Filing must match PACER account (mg, ) (Entered: 04/17/2025) |
| 04/17/2025 | 176 | REDACTED DOCUMENT– CORRECTED AND REDACTED PRESIDENT TRUMPS RESPONSE TO PLAINTIFFS COUNTERSTATEMENT TO DEFENDANTS STATEMENT OF UNDISPUTED FACTS to 174 Reply to opposition to Motion,,,, by DONALD J. TRUMP. (Attachments: # 1 Errata)(Shaw, Jonathan) (Entered: 04/17/2025) |
| 04/17/2025 | 177 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DONALD J. TRUMP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Text of Proposed Order)(Shaw, Jonathan) Modified on 6/20/2025, unsealed pursuant to 6/19/2025 MINUTE ORDER(mg). (Entered: 04/17/2025) |
| 04/23/2025 | 178 | Unopposed MOTION for Extension of Time to File Response/Reply *in Support of Request for Judicial Notice and in Response to Evidentiary Objections* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Epstein, Marc) (Entered: 04/23/2025) |
| 04/25/2025 | | MINUTE ORDER granting 178 Plaintiffs' Request for Extension of Time to File Reply in Support of Request for Judicial Notice and Leave to File Response to Defendant Trump's Evidentiary Objections and Separate Objection Brief. Plaintiffs shall have until May 14, 2025, to file any reply in support of Plaintiffs' request for judicial notice and any response to Defendant Trump's evidentiary objections in connection with his motion for summary judgment to confirm immunity. Signed by Judge Amit P. Mehta on 4/25/2025. (lcapm3) (Entered: 04/25/2025) |
| 05/05/2025 | 179 | NOTICE OF WITHDRAWAL OF APPEARANCE as to REGINALD CLEVELAND, JASON DEROCHE, BYRON EVANS, MICHAEL FORTUNE, GOVERNOR LATSON, MELISSA MARSHALL, DANNY MCELROY, CONRAD SMITH. Attorney Elizabeth Snow terminated. (Snow, Elizabeth) (Entered: 05/05/2025) |
| 05/09/2025 | 180 | ORDER denying 162 Nonparty Daniel J. Scavino's Motion to Seal Certain Exhibits to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. Plaintiffsand Scavino shall meet and confer and determine whether any personal identifying information in Exhibits 68, 69, or 103 warrants redaction. Plaintiffs shall file redacted |

| | | |
|---|---|---|
| | | versions of the exhibits on the public docket by May 15, 2025. See the attached Order for additional details. Signed by Judge Amit P. Mehta on 5/9/2025. (lcapm3) (Entered: 05/09/2025) |
| 05/13/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 5/13/2025. Further Status Conference set for 6/25/2025 at 5:15 PM via Zoom before Judge Amit P. Mehta. Joint Status Report from the parties due by 6/23/2025. Order forthcoming via chambers regarding the discovery issues discussed on the record. (Court Reporter William Zaremba.) (zakb) (Entered: 05/13/2025) |
| 05/14/2025 | 181 | REPLY to opposition to motion re 153 Motion to Take Judicial Notice filed by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 05/14/2025) |
| 05/14/2025 | 182 | RESPONSE re 173 Response to Document,, *Plaintiffs' Response to Defendant's Objection to Admission of Select Committee Final Report* filed by ALL PLAINTIFFS. (Attachments: # 1 Declaration, # 2 Exhibit 284, # 3 Exhibit 285)(Caspar, Edward) (Entered: 05/14/2025) |
| 05/14/2025 | 183 | MOTION to STRIKE by ALL PLAINTIFFS. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Text of Proposed Order)(Caspar, Edward) Modified relief on 5/15/2025 (mg). (Entered: 05/14/2025) |
| 05/15/2025 | 184 | NOTICE OF FILING REDACTED DOCUMENT *Exhibits 68, 69, and 103 to Plaintiffs Response to Defendant Trump's Motion for Summary Judgment* by ALL PLAINTIFFS (Attachments: # 1 Exhibit 68 (Dkt. 152–21 redacted), # 2 Exhibit 69 (Dkt. 152–22 redacted), # 3 Exhibit 103 (Dkt. 152–56 redacted))(Caspar, Edward) (Entered: 05/15/2025) |
| 05/19/2025 | 185 | Unopposed MOTION for Extension of Time to File *Reply to Plaintiffs' Response to President Trump's Objection to Admission of Select Committee Final Report* by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Shaw, Jonathan) (Entered: 05/19/2025) |
| 05/19/2025 | | MINUTE ORDER granting 185 Unopposed Request for Extension of Time to File Reply to Plaintiffs' Response to President Trump's Objection to Admission of Select Committee Final Report. President Trump shall have until June 4, 2025, to file his reply to the consolidated Plaintiffs' Response to President Trump's Objection to Admission of the Select Committee Final Report. Signed by Judge Amit P. Mehta on 5/19/2025. (lcapm3) (lctc) (Entered: 05/19/2025) |
| 05/20/2025 | 186 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on May 13, 2025; Page Numbers: 1–40. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be |

| | | |
|---|---|---|
| | | made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/10/2025. Redacted Transcript Deadline set for 6/20/2025. Release of Transcript Restriction set for 8/18/2025.(Zaremba, William) (Entered: 05/20/2025) |
| 06/04/2025 | 187 | REPLY re 182 Response to Document, filed by DONALD J. TRUMP. (Attachments: # 1 Declaration, # 2 Exhibit CC, # 3 Exhibit DD, # 4 Exhibit EE, # 5 Exhibit FF, # 6 Exhibit GG, # 7 Exhibit HH, # 8 Exhibit II, # 9 Exhibit JJ, # 10 Exhibit KK, # 11 Exhibit LL, # 12 Exhibit MM, # 13 Exhibit NN, # 14 Exhibit OO, # 15 Exhibit PP, # 16 Exhibit QQ, # 17 Exhibit RR, # 18 Exhibit SS, # 19 Exhibit TT, # 20 Exhibit UU, # 21 Exhibit VV, # 22 Exhibit WW, # 23 Exhibit XX)(Shaw, Jonathan) (Entered: 06/04/2025) |
| 06/11/2025 | 188 | Memorandum in opposition to re 183 MOTION to Strike filed by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Myers, Jonathan) (Entered: 06/11/2025) |
| 06/19/2025 | | MINUTE ORDER denying 175 , 177 Defendant's Motions for Leave to File Provisionally Under Seal. The motions for provisional sealing rest on what, at the time, was an unresolved request made by Third–Party Dan Scavino to seal certain exhibits. The court denied Mr. Scavino's motion on May 9, 2025. Order, ECF No. 180. The grounds for Defendant's provisional sealing requests are thus now moot. Accordingly, the Clerk of Court shall unseal the filings at ECF Nos. 175 and 177. Signed by Judge Amit P. Mehta on 6/19/2025. (lcapm3) (Entered: 06/19/2025) |
| 06/23/2025 | 189 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Margolin, Joshua) (Entered: 06/23/2025) |
| 06/25/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 6/25/2025. Plaintiff's Motion to Compel Discovery due by 7/11/2025. Hearing on the parties' discovery disputes set for 6/27/2025 at 1:30 PM via Zoom before Judge Amit P. Mehta. Further Status Conference set for 8/19/2025 at 5:15 PM in Telephonic/VTC before Judge Amit P. Mehta. Joint Status Report from the parties due by 8/15/2025. (zakb) (Entered: 06/26/2025) |
| 06/27/2025 | | ENTERRED IN ERROR.....Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 6/27/2025. Court heard the parties' discovery disputes and set forth the following deadlines: defendant Tarrio to provide to the Plaintiff updated discovery responses by 7/15/2025; any inspection is to be completed by 7/29/2025. (Court Reporter William Zaremba.) (zakb) Modified on 6/30/2025 to enter in error: entry filed in wrong case (zakb). (Entered: 06/27/2025) |
| 06/27/2025 | 190 | REPLY to opposition to motion re 183 Motion to Strike, filed by ALL PLAINTIFFS. (Epstein, Marc) (Entered: 06/27/2025) |
| 07/03/2025 | 191 | TRANSCRIPT OF DISCOVERY CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on June 27, 2025; Page Numbers: 1–39. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the |

| | | |
|---|---|---|
| | | Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/3/2025. Release of Transcript Restriction set for 10/1/2025.(Zaremba, William) (Entered: 07/03/2025) |
| 08/13/2025 | 192 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on June 25, 2025; Page Numbers: 1−18. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2025. Redacted Transcript Deadline set for 9/13/2025. Release of Transcript Restriction set for 11/11/2025.(Zaremba, William) (Entered: 08/13/2025) |
| 08/15/2025 | 193 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM(Margolin, Joshua) (Entered: 08/15/2025) |
| 08/19/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 8/19/2025. Order forthcoming via chambers on further proceedings. (Court Reporter William Zaremba.) (zakb) (Entered: 08/22/2025) |
| 08/25/2025 | 194 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on August 19, 2025; Page Numbers: 1−33. Court Reporter/Transcriber: William Zaremba; Email: |

| | | |
|---|---|---|
| | | William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/15/2025. Redacted Transcript Deadline set for 9/25/2025. Release of Transcript Restriction set for 11/23/2025.(Zaremba, William) (Entered: 08/25/2025) |
| 08/26/2025 | | MINUTE ORDER. Plaintiffs shall file their motion to compel with respect to Defendant Tarrio on or before September 9, 2025. Defendant Tarrio's opposition to that motion will be due on or before September 23, 2025, and Plaintiff's reply shall be due on or before September 30, 2025. Counsel for Plaintiffs and Campaign Defendants shall file a Joint Status Report by September 9, 2025, which updates the court on the status of their discovery disputes and shall appear on September 12, 2025, at 9:30 a.m. for a remote discovery hearing. All parties shall file a Joint Status Report on the status of discovery in these consolidated matters on or before October 2, 2025, and shall appear for a remote discovery conference on October 7, 2025, at 5:15 P.M. Signed by Judge Amit P. Mehta on 8/26/2025. (lcapm3) (Entered: 08/26/2025) |
| 08/26/2025 | | Set/Reset Deadlines: Status Report due by 10/2/2025 (zljn) (Entered: 08/26/2025) |
| 09/12/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Discovery Hearing held on 9/12/2025. Parties discussed discovery disputes. Further Discovery Hearing set for 9/15/2025 at 5:15 PM via Zoom before Judge Amit P. Mehta. (Court Reporter William Zaremba.) (zakb) (Entered: 09/12/2025) |
| 09/15/2025 | | MINUTE ORDER. The discovery hearing set for September 15, 2025, at 5:15 p.m. is hereby cancelled. The court will reschedule the hearing at a later date on the docket for *Smith v. Trump*, 21−cv−2265. Signed by Judge Amit P. Mehta on 9/15/2025. (lcapm3) (Entered: 09/15/2025) |
| 09/17/2025 | 195 | TRANSCRIPT OF DISCOVERY CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on September 12, 2025; Page Numbers: 1−29. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter. |

|  |  |  |
|---|---|---|
|  |  | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/8/2025. Redacted Transcript Deadline set for 10/18/2025. Release of Transcript Restriction set for 12/16/2025.(Zaremba, William) (Entered: 09/17/2025) |
| 10/02/2025 | 196 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Margolin, Joshua) (Entered: 10/02/2025) |
| 10/07/2025 |  | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 10/7/2025. Joint Status Report from the parties due by 11/25/2025. Further remote Status Conference set for 12/3/2025 at 5:15 PM via Zoom before Judge Amit P. Mehta. (Court Reporter William Zaremba.) (zakb) (zakb) (Entered: 10/07/2025) |
| 10/24/2025 | 197 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on October 7, 2025; Page Numbers: 1–36. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/14/2025. Redacted Transcript Deadline set for 11/24/2025. Release of Transcript Restriction set for 1/22/2026.(Zaremba, William) (Entered: 10/24/2025) |
| 11/25/2025 | 198 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Margolin, Joshua) (Entered: 11/25/2025) |
| 12/03/2025 |  | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 12/3/2025. Further Status Conferences set for 12/12/2025 at 10:30 AM and 2/12/2026 at 5:15 PM via Zoom before Judge Amit P. Mehta. Joint Status Reports |

| | | |
|---|---|---|
| | | from the parties due by 12/8/2025 and 2/9/2026. (Court Reporter William Zaremba.) (zakb) (Entered: 12/05/2025) |
| 12/08/2025 | 199 | MOTION for Scheduling Order *TO SCHEDULE HEARING FOR JANUARY 12, 2026, OR NEXT AVAILABLE DATE THEREAFTER* by DONALD J. TRUMP. (Shaw, Jonathan) (Entered: 12/08/2025) |
| 12/09/2025 | 200 | NOTICE of Appearance by Michael J. Walsh, Jr on behalf of DONALD J. TRUMP (Walsh, Michael) (Entered: 12/09/2025) |
| 12/09/2025 | 201 | Memorandum in opposition to re (199 in 1:21−cv−00400−APM) MOTION for Scheduling Order *TO SCHEDULE HEARING FOR JANUARY 12, 2026, OR NEXT AVAILABLE DATE THEREAFTER* filed by ALL PLAINTIFFS. Associated Cases: 1:21−cv−00400−APM et al.(Sellers, Joseph) (Entered: 12/09/2025) |
| 12/10/2025 | 202 | ORDER denying Defendant's 199 Motion to Schedule Hearing for January 12, 2026, or Next Available Date Thereafter. The hearing shall take place on December 19, 2025, at 9:30 AM in Courtroom 10. Please see the attached Order for further details. Signed by Judge Amit P. Mehta on 12/10/2025. (lcapm3) (Entered: 12/10/2025) |
| 12/12/2025 | 203 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Joshua Halpern, Filing fee $ 100, receipt number ADCDC−12132353. Fee Status: Fee Paid. by DONALD J. TRUMP. (Walsh, Michael) (Entered: 12/12/2025) |
| 12/12/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 12/12/2025. Parties discussed the National Archives and Records Admin.'s ( 465 in 21−cv−2265−APM) status report. Status Report due by 1/2/2026. Further Status Conference set for 1/5/2026 at 10:00 AM via Zoom before Judge Amit P. Mehta. (Court Reporter William Zaremba.) (zakb) (Entered: 12/12/2025) |
| 12/15/2025 | 204 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Caryn G. Schechtman, Filing fee $ 100, receipt number ADCDC−12137021. Fee Status: Fee Paid. by DONALD J. TRUMP. (Walsh, Michael) (Entered: 12/15/2025) |
| 12/17/2025 | | MINUTE ORDER granting 203 Motion for Admission of Attorney Joshua Halpern Pro Hac Vice. Attorney Joshua Halpern is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 12/17/2025. (lcapm3) (Entered: 12/17/2025) |
| 12/17/2025 | | MINUTE ORDER granting 204 Motion for Admission of Attorney Caryn Schechtman Pro Hac Vice. Attorney Caryn G. Schechtman is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 12/17/2025. (lcapm3) (Entered: 12/17/2025) |
| 12/17/2025 | 205 | ORDER setting schedule for the motions hearing on December 19, 2025. See the attached Order for further details. Signed by Judge Amit P. Mehta on 12/17/2025. (lcapm3) (Entered: 12/17/2025) |
| 12/17/2025 | 206 | ENTERED IN ERROR.....NOTICE of Appearance by Michael J. Walsh, Jr on behalf of DONALD J. TRUMP (Walsh, Michael) Modified on 12/22/2025 (mg). (Entered: 12/17/2025) |
| 12/19/2025 | 207 | ENTERED IN ERROR.....NOTICE of Appearance by Michael J. Walsh, Jr on behalf of DONALD J. TRUMP (Walsh, Michael) Modified on 12/22/2025 (mg). (Entered: |

| | | |
|---|---|---|
| | | 12/19/2025) |
| 12/19/2025 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Motion Hearing held on 12/19/2025 regarding Plaintiffs' 183 Motion to Strike the Government's Westfall Act Certification; Defendant Donald J. Trump's Motions 144 for Summary Judgment and 145 for Reconsideration re 66 Order on Motion to Dismiss. Court heard arguments and took the matters under advisement. (Court Reporter William Zaremba.) (zakb) (Entered: 12/19/2025) |
| 12/22/2025 | | NOTICE OF ERROR regarding 206 Notice of Appearance, 207 Notice of Appearance. The following error(s) need correction: Invalid attorney signature– signature on document must match PACER login. Please refile. (mg) (Entered: 12/22/2025) |
| 12/23/2025 | 208 | STIPULATION *(JOINT) of Dismissal with prejudice of Karen R. Bass* by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Sellers, Joseph) (Entered: 12/23/2025) |
| 12/31/2025 | 209 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on December 3, 2025; Page Numbers: 1–33. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/21/2026. Redacted Transcript Deadline set for 1/31/2026. Release of Transcript Restriction set for 3/31/2026.(Zaremba, William) (Entered: 12/31/2025) |
| 12/31/2025 | 210 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on December 12, 2025; Page Numbers: 1–24. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/21/2026. Redacted Transcript Deadline set for 1/31/2026. Release of Transcript Restriction set for 3/31/2026.(Zaremba, William) (Entered: 12/31/2025) |
| 12/31/2025 | 211 | TRANSCRIPT OF HEARING ON MOTION PROCEEDINGS before Judge Amit P. Mehta held on December 19, 2025; Page Numbers: 1–163. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/21/2026. Redacted Transcript Deadline set for 1/31/2026. Release of Transcript Restriction set for 3/31/2026.(Zaremba, William) (Entered: 12/31/2025) |
| 01/05/2026 | 212 | MEMORANDUM by DONALD J. TRUMP. (Walsh, Michael) (Entered: 01/05/2026) |
| 01/08/2026 | 213 | RESPONSE *to MEMORANDUM by DONALD J. TRUMP [Dkt. 212]* filed by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 01/08/2026) |
| 02/09/2026 | 214 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Margolin, Joshua) (Entered: 02/09/2026) |
| 02/12/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 2/12/2026. Further remote Status Conference set for 4/1/2026 at 5:15 PM before Judge Amit P. Mehta. Joint Status Report from the parties due by 3/27/2026. (Court Reporter William Zaremba.) (zakb) (Entered: 02/13/2026) |
| 02/17/2026 | 215 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on February 12, 2026; Page Numbers: 1–42. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/10/2026. Redacted Transcript Deadline set for 3/20/2026. Release of Transcript Restriction set for 5/18/2026.(Zaremba, William) (Entered: 02/17/2026) |
| 03/19/2026 | | MINUTE ORDER setting discovery dispute hearing as to Defendant Enrique Tarrio for March 20, 2026, at 10:00 AM via video conference. Signed by Judge Amit P. Mehta on 3/19/2026. (lcapm3) (Entered: 03/19/2026) |
| 03/20/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Discovery Hearing held on 3/20/2026. Supplemental briefing due by 3/27/2026. (Court Reporter William Zaremba.) (zcll) (Entered: 03/20/2026) |
| 03/21/2026 | 216 | TRANSCRIPT OF DISCOVERY DISPUTE CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on March 20, 2026; Page Numbers: 1−19. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/11/2026. Redacted Transcript Deadline set for 4/21/2026. Release of Transcript Restriction set for 6/19/2026.(Zaremba, William) (Entered: 03/21/2026) |
| 03/27/2026 | 217 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21−cv−00400−APM, 1:21−cv−00586−APM, 1:21−cv−00858−APM, 1:21−cv−02265−APM, 1:22−cv−00010−APM, 1:22−cv−00011−APM, 1:22−cv−00034−APM, 1:23−cv−00038−APM(Margolin, Joshua) (Entered: 03/27/2026) |
| 03/31/2026 | 218 | MOTION Voluntary Dismissal with Prejudice Pursuant to Rule 41(a)(2) Solely as to |

| | | |
|---|---|---|
| | | Plaintiff Karen R. Bass by KAREN R. BASS. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 03/31/2026) |
| 03/31/2026 | 219 | MEMORANDUM OPINION AND ORDER. President Donald J. Trump's 144 Motion for Summary Judgment is denied except as to the conduct that the court has determined were official acts; President Donald J. Trump's 145 Motion to Reconsider Denial of His Motion to Dismiss on First Amendment Grounds is denied, but the court grants the President's request to certify both the present ruling and the original denial for interlocutory review; Plaintiffs' 183 Motion to Strike the Government's Westfall Act Certification is granted; Plaintiffs' 153 Request for Judicial Notice in Support of Opposition to Defendant's Motion for Summary Judgment is granted insofar as the court has relied on any facts Plaintiffs have requested be judicially noticed; and President Donald J. Trump's 173 Objection to Admission of Select Committee Final Report is denied to the extent the court has cited to the Report to establish facts that the court believes can be converted into admissible evidence. See the attached Memorandum Opinion and Order for additional details. Signed by Judge Amit P. Mehta on 03/31/2026. (lcapm3) (Entered: 03/31/2026) |
| 04/01/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 4/1/2026. Further Status Conference set for 5/21/2026 at 5:15 PM via Zoom before Judge Amit P. Mehta. Joint Status Report from the parties ahead of next hearing due by 5/18/2026. (Court Reporter William Zaremba.) (zakb) (Entered: 04/02/2026) |
| 04/02/2026 | | MINUTE ORDER granting 218 Motion for Voluntary Dismissal with Prejudice Pursuant to Rule 41(a)(2) Solely as to Plaintiff Karen R. Bass. Karen R. Bass is dismissed as a plaintiff in this matter with prejudice. Signed by Judge Amit P. Mehta on 4/2/2026. (lcapm3) (Entered: 04/02/2026) |
| 04/02/2026 | | MINUTE ORDER. Plaintiffs, Defendant Trump, and the United States shall file a Status Report on or before April 17, 2026, which advises how the parties wish to proceed following issuance of the court's Memorandum Opinion and Order, ECF No. 219 . Signed by Judge Amit P. Mehta on 4/2/2026. (lcapm3) (Entered: 04/02/2026) |
| 04/10/2026 | 220 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to (219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicial Notice,,,,, Order on Motion to Strike,,,, by DONALD J. TRUMP. Filing fee $ 605, receipt number DCDC–12354937. Fee Status: Fee Paid. Associated Cases: 1:21–cv–00400–APM et al.(Binnall, Jesse) (Entered: 04/10/2026) |
| 04/10/2026 | 221 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 220 Notice of Appeal to DC Circuit Court. (mg) (Entered: 04/13/2026) |
| 04/17/2026 | 222 | Joint STATUS REPORT by DEFENDANTS and by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 04/17/2026) |
| 04/17/2026 | | USCA Case Number 26–7049 for 220 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP. (mg) (Entered: 04/20/2026) |
| 04/20/2026 | 223 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on April 1, 2026; Page Numbers: 1–42. Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2026. Redacted Transcript Deadline set for 5/21/2026. Release of Transcript Restriction set for 7/19/2026.(Zaremba, William) (Entered: 04/20/2026) |
| 04/20/2026 | | MINUTE ORDER. The condition to stay discovery against any defendant or third party in these matters is no longer extant, with the court having ruled on Defendant President Trump's immunity motion. *See* Order, *Smith v. Trump*, No. 21−cv−2265 (D.D.C), ECF No. 393. Accordingly, the parties in these consolidated cases shall meet and confer and, by May 1, 2026, submit a proposed discovery plan. This Minute Order shall apply to President Trump individually insofar as his counsel shall participate in the meet and confer process. Discovery against him will remain stayed for now, however. President Trump shall show cause by April 29, 2026, why merits discovery should not proceed against him. His response shall be no more than ten pages. Plaintiffs may file a response of no more than ten pages by May 8, 2026. President Trump may file a reply of no more than seven pages by May 15, 2026. Signed by Judge Amit P. Mehta on 4/20/2026. (lcapm3) (Entered: 04/20/2026) |
| 04/21/2026 | 224 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to (219 in 1:21−cv−00400−APM, 219 in 1:21−cv−00400−APM, 219 in 1:21−cv−00400−APM, 219 in 1:21−cv−00400−APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicial Notice,,,,, Order on Motion to Strike,,,, by UNITED STATES OF AMERICA. Fee Status: No Fee Paid. (Myers, Jonathan) (Entered: 04/21/2026) |
| 04/21/2026 | 225 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 224 Notice of Appeal to DC Circuit Court. (mg) (Entered: 04/21/2026) |
| 04/23/2026 | | USCA Case Number 26−7052 for 224 Notice of Appeal to DC Circuit Court, filed by UNITED STATES OF AMERICA. (mg) (Entered: 04/23/2026) |
| 04/28/2026 | 231 | MOTION to Intervene by ANTHONY SCOCOZZO. (Attachments: # 1 Exhibit)(mg) (Entered: 05/08/2026) |
| 04/29/2026 | 226 | Joint MOTION to Stay re Order,,,, Set Deadlines,,, *on all proceedings* by DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support Motion to Stay Pending Appeal, # 2 Text of Proposed Order for Motion to Stay)(Binnall, Jesse) (Entered: |

|  |  |  |
|---|---|---|
|  |  | 04/29/2026) |
| 04/30/2026 | 227 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alisa Tiwari, Filing fee $ 100, receipt number ADCDC–12393777. Fee Status: Fee Paid. by KAREN R. BASS, STEPHEN I COHEN, BONNIE WATSON COLEMAN, VERONICA ESCOBAR, PRAMILA JAYAPAL, HENRY C. JOHNSON, MARCIA KAPTUR, BARBARA J. LEE, JERROLD NADLER, MAXINE WATERS. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Deich, Alison) (Entered: 04/30/2026) |
| 04/30/2026 | 228 | MOTION for Reconsideration re (219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicial Notice,,,,, Order on Motion to Strike,,,, by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 04/30/2026) |
| 05/01/2026 | 229 | MOTION to Stay by UNITED STATES OF AMERICA. (Hackert, Connor) (Entered: 05/01/2026) |
| 05/01/2026 |  | MINUTE ORDER. In view of the motions to stay filed in these consolidated matters, ECF Nos. 226 , 229 , the court hereby modifies its Minute Order of April 20, 2026, as follows: Plaintiffs shall file a consolidated response to the stay motions of no more than 15 pages by May 8, 2026, and President Trump and the United States may each file a reply brief in support of their respective motions of no more than seven pages by May 15, 2026. Counsel for Plaintiffs, President Trump, and the United States shall reserve May 21, 2026, at 10:00 AM for an in–person hearing on the motions to stay, if needed. The remote status conference scheduled for 5:15 PM on that same day will go forward as scheduled as to all non–stay–related matters. Signed by Judge Amit P. Mehta on 05/01/2026. (lcapm3) (Entered: 05/01/2026) |
| 05/01/2026 |  | MINUTE ORDER granting 227 Motion for Admission Pro Hac Vice. Attorney Alisa Tiwari is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 05/01/2026. (lcapm3) (Entered: 05/01/2026) |
| 05/01/2026 | 230 | Joint STATUS REPORT *ON DISCOVERY PLAN* by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 05/01/2026) |
| 05/08/2026 | 232 | RESPONSE re 229 MOTION to Stay , 226 Joint MOTION to Stay re Order,,,, Set Deadlines,,, *on all proceedings* filed by ALL PLAINTIFFS. (Caspar, Edward) (Entered: 05/08/2026) |
| 05/11/2026 |  | MINUTE ORDER denying Anthony Scocozzo's 231 Motion to Intervene. Mr. Scocozzo has not stated a valid ground to intervene under Federal Rule of Civil Procedure 24(b). Accordingly, his motion is denied. Signed by Judge Amit P. Mehta on 5/11/2026. (lcapm3) (Entered: 05/11/2026) |
| 05/13/2026 | 233 | MOTION for Extension of Time to File Response/Reply *in Support of Plaintiffs' Motion for Reconsideration* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 05/13/2026) |
| 05/14/2026 |  | MINUTE ORDER granting Plaintiffs' 233 Unopposed Request for Extension of Time to File Reply in Support of Plaintiffs' Motion for Reconsideration. Plaintiffs' Reply |

| | | Brief shall be due by May 28, 2026. Signed by Judge Amit P. Mehta on 5/14/2026. (lcapm3) (Entered: 05/14/2026) |
|---|---|---|
| 05/14/2026 | 234 | Memorandum in opposition to re 228 MOTION for Reconsideration re (219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicia filed by UNITED STATES OF AMERICA. (Martin, John) (Entered: 05/14/2026) |
| 05/14/2026 | 235 | RESPONSE re (492 in 1:21–cv–02265–APM, 51 in 1:22–cv–00034–APM, 228 in 1:21–cv–00400–APM, 107 in 1:23–cv–00038–APM, 115 in 1:21–cv–00586–APM, 93 in 1:21–cv–00858–APM, 50 in 1:22–cv–00011–APM, 59 in 1:22–cv–00010–APM) MOTION for Reconsideration re (219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicia *Memorandum in Opposition* filed by DONALD J. TRUMP. Associated Cases: 1:21–cv–00400–APM et al.(Binnall, Jesse) (Entered: 05/14/2026) |
| 05/15/2026 | 236 | REPLY to opposition to motion re (229 in 1:21–cv–00400–APM, 493 in 1:21–cv–02265–APM, 108 in 1:23–cv–00038–APM, 116 in 1:21–cv–00586–APM, 52 in 1:22–cv–00034–APM, 60 in 1:22–cv–00010–APM, 94 in 1:21–cv–00858–APM, 51 in 1:22–cv–00011–APM) Motion to Stay filed by UNITED STATES OF AMERICA. (Hackert, Connor) (Entered: 05/15/2026) |
| 05/15/2026 | 237 | REPLY to opposition to motion re 226 Motion to Stay *re Order, Set Deadlines, on all proceedings* filed by DONALD J. TRUMP. (Binnall, Jesse) (Entered: 05/15/2026) |
| 05/18/2026 | 238 | Joint STATUS REPORT by ALL PLAINTIFFS. Associated Cases: 1:21–cv–00400–APM, 1:21–cv–00586–APM, 1:21–cv–00858–APM, 1:21–cv–02265–APM, 1:22–cv–00010–APM, 1:22–cv–00011–APM, 1:22–cv–00034–APM, 1:23–cv–00038–APM(Ghafarzade, Babak) (Entered: 05/18/2026) |
| 05/20/2026 | | MINUTE ORDER. Per the court's Minute Order of May 1, 2026, the parties shall appear for a hearing on the pending motions to stay tomorrow, May 21, 2026, at 10:00 AM in Courtroom 10. Signed by Judge Amit P. Mehta on 5/20/2026. (lcapm3) (Entered: 05/20/2026) |
| 05/20/2026 | | AMENDED MINUTE ORDER. Per the court's Minute Order of May 1, 2026, counsel for Plaintiffs, President Trump, and the United States shall appear for a hearing on the pending motions to stay tomorrow, May 21, 2026, at 10:00 AM in Courtroom 10. Defense counsel for entity or other individual defendants may appear remotely. The courtroom deputy will circulate a Zoom link to counsel of record. Signed by Judge Amit P. Mehta on 5/20/2026. (lcapm3) (Entered: 05/20/2026) |
| 05/21/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Motion Hearing held on 5/21/2026 re Defendant Donald J. Trump's 226 and the United States' 229 Motions to Stay. Court took the matters under advisement. (Court Reporter William Zaremba.) (zakb) (Entered: 05/21/2026) |
| 05/21/2026 | 239 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron Ward, Filing fee $ 100, receipt number ADCDC–12438244. Fee Status: Fee Paid. by DONALD J. TRUMP. (Walsh, Michael) (Entered: 05/21/2026) |

| 05/21/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Status Conference held on 5/21/2026. Joint Status Report due by 5/28/2026. Further Status Conference set for 7/1/2026 at 5:15 PM in Telephonic/VTC before Judge Amit P. Mehta. (Court Reporter William Zaremba.) (zakb) (Entered: 05/22/2026) |
|---|---|---|
| 05/28/2026 | 240 | REPLY to opposition to motion re 228 Motion for Reconsideration, filed by ALL PLAINTIFFS. (Sellers, Joseph) (Entered: 05/28/2026) |
| 06/01/2026 | 241 | MOTION for Extension of Time to *File Notice of Appeal* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Sellers, Joseph) (Entered: 06/01/2026) |
| 06/03/2026 | | MINUTE ORDER granting 239 Motion for Admission of Attorney Aaron Ward Pro Hac Vice. Attorney Aaron C. Ward is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 06/03/2026. (lcapm3) (Entered: 06/03/2026) |
| 06/04/2026 | 242 | MEMORANDUM OPINION AND ORDER granting in part and denying in part 226 Joint Motion to Stay Pending Appeal and denying 229 United States' Motion to Stay. Please see the attached Order for further details. Signed by Judge Amit P. Mehta on 6/4/2026. (lcapm3) (Entered: 06/04/2026) |
| 06/04/2026 | 243 | NOTICE OF INTERLOCUTORY APPEAL as to 219 Order on Motion for Summary Judgment, Order on Motion for Reconsideration, Order on Motion to Take Judicial Notice, Order on Motion to Strike, by DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (mg) (Entered: 06/04/2026) |
| 06/04/2026 | 244 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or motion to proceed In Forma Pauperis has been decided re 243 Notice of Interlocutory Appeal,. (mg) (Entered: 06/04/2026) |
| 06/04/2026 | | Payment for 244 Transmission of Notice of Appeal and Docket Sheet to USCA, 243 Notice of Interlocutory Appeal,. ($605; Receipt number CDCDC−12468313). (Urbanek, Gerald) (Entered: 06/04/2026) |
| 06/05/2026 | 245 | Supplemental Record on Appeal transmitted to US Court of Appeals re Payment of Fee − Notice of Appeal ;USCA Case Number Unknown. (mg) (Entered: 06/05/2026) |
| 06/05/2026 | 246 | TRANSCRIPT OF HEARING ON MOTION TO STAY PROCEEDINGS before Judge Amit P. Mehta held on May 21, 2026; Page Numbers: 1−60. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, |

| | | |
|---|---|---|
| | | which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/26/2026. Redacted Transcript Deadline set for 7/6/2026. Release of Transcript Restriction set for 9/3/2026.(Zaremba, William) (Entered: 06/05/2026) |
| 06/05/2026 | 247 | TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on May 21, 2026; Page Numbers: 1–40. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/26/2026. Redacted Transcript Deadline set for 7/6/2026. Release of Transcript Restriction set for 9/3/2026.(Zaremba, William) (Entered: 06/05/2026) |
| 06/09/2026 | 248 | NOTICE of Appearance by Aaron Ward on behalf of DONALD J. TRUMP (Ward, Aaron) (Entered: 06/09/2026) |
| 06/09/2026 | | USCA Case Number 26−7123 for 243 Notice of Interlocutory Appeal, filed by DONALD J. TRUMP. (mg) (Entered: 06/09/2026) |
| 06/15/2026 | 249 | RESPONSE re (241 in 1:21−cv−00400−APM) MOTION for Extension of Time to *File Notice of Appeal* filed by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:21−cv−00400−APM, 1:21−cv−02265−APM(Shaw, Jonathan) (Entered: 06/15/2026) |
| 06/22/2026 | 250 | REPLY to opposition to motion re (241 in 1:21−cv−00400−APM) Motion for Extension of Time to *File Notice of Cross−Appeal and Request for Expedited Ruling* filed by ALL PLAINTIFFS. Associated Cases: 1:21−cv−00400−APM, 1:21−cv−02265−APM(Sellers, Joseph) (Entered: 06/22/2026) |
| 06/30/2026 | | MINUTE ORDER. The Status conference currently set for 7/1/2026 is hereby vacated and reset for 7/6/2026 at 5:15 PM in Telephonic/VTC. Signed by Judge Amit P. Mehta on 6/30/2026. (zakb) (Entered: 06/30/2026) |
| 07/06/2026 | | Minute Entry for proceedings held before Judge Amit P. Mehta: Remote Status Conference held on 7/6/2026. Further Status Conference set for 8/25/2026 at 05:15 PM in Telephonic/VTC before Judge Amit P. Mehta. Joint Status Report from the parties due by 8/20/2026. (Court Reporter William Zaremba.) (zakb) (Entered: 07/07/2026) |

| 07/07/2026 | 251 | NOTICE of Appearance by Joshua Halpern on behalf of DONALD J. TRUMP Associated Cases: 1:21–cv–00400–APM, 1:21–cv–02265–APM(Halpern, Joshua) (Entered: 07/07/2026) |
|---|---|---|
| 07/15/2026 | 252 | NOTICE of Appearance by Caryn G. Schechtman on behalf of DONALD J. TRUMP (Schechtman, Caryn) (Entered: 07/15/2026) |
| 07/22/2026 | 253 | MEMORANDUM OPINION AND ORDER denying Plaintiffs' 228 Motion for Reconsideration; granting Plaintiffs' 228 Motion for Certification for Interlocutory Appeal; and granting Plaintiffs' 241 Motion for Extension of Time to File Notice of Appeal. See the attached Memorandum Opinion and Order for additional details. Signed by Judge Amit P. Mehta on 7/22/2026. (lcapm1) Modified on 7/24/2026 to correct document type (zakb). (Entered: 07/22/2026) |
| 07/24/2026 | 254 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to (253 in 1:21–cv–00400–APM, 253 in 1:21–cv–00400–APM) Order on Motion for Reconsideration,, Order on Motion for Extension of Time to, (219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM, 219 in 1:21–cv–00400–APM) Order on Motion for Summary Judgment,,,,, Order on Motion for Reconsideration,,,,, Order on Motion to Take Judicial Notice,,,,, Order on Motion to Strike,,,, by ALL PLAINTIFFS. Filing fee $ 605, receipt number DCDC–12568507. Fee Status: Fee Paid. Associated Cases: 1:21–cv–00400–APM et al.(Sellers, Joseph) (Entered: 07/24/2026) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE *et al.*, | |
| *Plaintiffs*, | Case No. 21-cv-00400 (APM) |
| v. | (lead case) |
| DONALD J. TRUMP *et al.*, | |
| *Defendants*. | |
| ERIC SWALWELL, | |
| *Plaintiff*, | Case No. 21-cv-00586 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP *et al*., | |
| *Defendants*. | |
| JAMES BLASSINGAME *et. al.*, | |
| *Plaintiffs*, | Case No. 21-cv-00858 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP, | |
| *Defendant*. | |
| CONRAD SMITH *et al*., | |
| *Plaintiffs*, | Case No. 21-cv-02265 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP *et al*., | |
| *Defendants*. | |
| MARCUS J. MOORE *et al.*, | |
| *Plaintiffs*, | Case No. 22-cv-00010 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP, | |
| *Defendant*. | |

| | |
|---|---|
| BOBBY TABRON *et al.*,<br><br>   *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP,<br><br>   *Defendants*. | Case No. 22-cv-00011 (APM)<br><br>(consolidated case) |
| BRIANA KIRKLAND,<br><br>   *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP,<br><br>   *Defendant*. | Case No. 22-cv-00034 (APM)<br><br>(consolidated case) |
| SANDRA GARZA,<br><br>   *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP *et al.*,<br><br>   *Defendants*. | Case No. 23-cv-00038 (APM)<br><br>(consolidated case) |

## PLAINTIFFS' NOTICE OF CROSS-APPEAL

The plaintiffs Barbara J. Lee, Stephen I. Cohen, Veronica Escobar, Pramila Jayapal, Henry C. Johnson, Jr., Marcia Kaptur, Jerrold Nadler, Maxine Waters, Bonnie M. Watson Coleman, Conrad Smith, Danny McElroy, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, Reginald Cleveland, Eric Swalwell, James Blassingame, Sidney Hemby, Marcus J. Moore, Bobby Tabron, Dedivine K. Carter, Briana Kirkland, and Sandra Garza, as personal representative of the Estate of Brian Sicknick, of the above-captioned consolidated cases, hereby give notice of their appeal to the United States Court of Appeals for the D.C. Circuit from this Court's Memorandums Opinions and Orders entered on March 31, 2026 and July 22, 2026, holding that Defendant Donald J. Trump is entitled to immunity for a tweet that he sent at 2:24 p.m. on

1

January 6, 2021 ("2:24 p.m. tweet"), stating that, "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify. USA demands the truth!" Mem. Op. & Order at 54–55, *Lee v. Trump*, No. 21-cv-00400 (APM) (D.D.C. Mar. 31 2026), Dkt No. 219; Mem. Op. & Order at 2, 9, 12, *Lee*, No. 21-cv-00400, Dkt. No. 253. An appeals court may exercise "pendent appellate jurisdiction" in situations when "substantial considerations of fairness or efficiency demand it," including when "a non-appealable order is inextricably intertwined with an appealable order." *See Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003) (citation modified). Plaintiffs' filing of this notice of cross-appeal is timely given this Court's grant of Plaintiffs' motion to extend the time to notice the appeal and/or the Court's recent denial of Plaintiffs' motion for reconsideration on this same issue. *See* Mem. Op. & Order at 2, 9, 10, 12, *Lee*, No. 21-cv.-00400, Dkt. No. 253. This Court has also granted Plaintiffs' request to certify its ruling on the 2:24 p.m. tweet for 28 U.S.C. § 1292(b) interlocutory review. *See Id.* at 2, 10, 12.

Dated: July 24, 2026

Respectfully submitted,

*/s/ Joseph Sellers*
Joseph M. Sellers, Bar No. 318410
Brian Corman, Bar No. 1008635
Alison S. Deich, Bar No. 1572878
Alisa Tiwari (*pro hac vice,* appl. for admission pending)
Nina Jaffe-Geffner, Bar No. 90011459
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W.
Eighth Floor, Washington, D.C. 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699

2

jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com
atiwari@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Anthony P. Ashton, Bar No. MD25220
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: 410-580-5777
aashton@naacpnet.org

*Attorneys for Plaintiffs Barbara J. Lee, et al.*


*/s/ Edward G. Caspar*
Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein, D.C. Bar No. 90003967
Jeffrey Blumberg, D.C. Bar No. 432928
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org
jblumberg@lawyerscommittee.org

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Babak Ghafarzade, *pro hac vice*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
bghafarzade@selendygay.com

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100
1441 Brickell Avenue

3

Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com
ebh@sperlingkenny.com

*Attorneys for Plaintiffs Conrad Smith, et al.*


*/s/ Matthew Kaiser*
Matthew Kaiser, D.C. Bar No. 486272
Sarah R. Fink, D.C. Bar No. 166663
KAISER PLLC
1099 Fourteenth Street N.W.
8th Floor Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiff Eric Swalwell*


*/s/ Patrick Malone*
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556 (appl. for
admission forthcoming)
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

Cameron Kistler, Bar No. 1008922
Kristy Parker, Bar No. 1542111
Erica Newland, Bar No. MD0141
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Avenue N.W., #163
Washington, D.C. 20006
Telephone: 202-579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org
erica.newland@protectdemocracy.org

Genevieve C. Nadeau, Bar No. 979410
UNITED TO PROTECT DEMOCRACY

4

15 Main Street, Suite 312
Watertown, MA 02472
Telephone: 202-579-4582
genevieve.nadeau@protectdemocracy.org

*Attorneys for Plaintiffs James Blassingame and Sidney Hemby*

*/s/ Mark Zaid*
Mark S. Zaid, Esq., D.C. Bar No. 440532
Bradley P. Moss, Esq., D.C. Bar No. 975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue N.W. Suite 700
Washington, D.C. 20036
Telephone: 202-498-0011
Facsimile: 202-330-5610
Mark@MarkZaid.com
Brad@MarkZaid.com

Matthew Kaiser, D.C. Bar No. 486272
Sarah R. Fink, D.C. Bar No. 166663
KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiff Sandra Garza*

*/s/ Patrick Malone*
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

*Attorneys for Plaintiffs Marcus J. Moore et al.; Bobby Tabron et al.; and Briana Kirkland*

5

## CERTIFICATE OF SERVICE

I certify that on July 24, 2026, a true and correct copy of the foregoing was served on

counsel of record by the Clerk of the Court through the CM/ECF system.


*/s/ Joseph Sellers*
Joseph M. Sellers

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BARBARA J. LEE et al.,** | ) | **Case No. 21-cv-00400 (APM)** |
|  | ) |  |
| **Plaintiffs,** | ) | **Consolidated Member Cases:** |
|  | ) | 21-cv-00586 (APM) |
| **v.** | ) | 21-cv-00858 (APM) |
|  | ) | 21-cv-02265 (APM) |
| **DONALD J. TRUMP et al.,** | ) | 22-cv-00010 (APM) |
|  | ) | 22-cv-00011 (APM) |
| **Defendants.** | ) | 22-cv-00034 (APM) |
|  | ) | 23-cv-00038 (APM) |

## MEMORANDUM OPINION AND ORDER

### I.

In its Memorandum Opinion issued on March 31, 2026, the court largely denied Defendant Donald J. Trump's motion for summary judgment on the grounds of official-acts immunity. Mem. Op., ECF No. 219. One exception to that general ruling was a tweet that President Trump sent at 2:24 p.m. on January 6, 2026 ("2:24 p.m. tweet"). *See id.* at 54–55. It said: "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify. USA demands the truth!" *Id.* at 54. The court held that the 2:24 p.m. tweet, "based on context alone, [fell] within the outer perimeter of President Trump's official responsibilities." *Id.* at 55. The court reasoned that "[t]he President was at the White House at the time" and "he was acting (or not) on the advice of White House advisors," and so the 2:24 p.m. tweet "reasonably can be construed as the act[] of an office-holder and therefore [is] cloaked in official-acts immunity." *Id.*

Plaintiffs now seek reconsideration of that ruling. Pls.' Mot. for Recons., ECF No. 228 [hereinafter Pls.' Mot.]. They argue that the court wrongly held in President Trump's favor because he "never sought immunity for [the 2:24 p.m. tweet] in the first place," *id.* at 1, and, even if he had, he failed to carry his burden to show that the tweet reasonably could be understood as the act of an office-holder rather than an office-seeker. *Id.* at 8–12. In the alternative, Plaintiffs seek certification of the ruling for interlocutory review. *Id.* at 16. And, by separate motion, they ask the court to extend time to file an appeal. Pls.' Mot. for Extension of Time to File Notice of Appeal, ECF No. 241 [hereinafter Pls.' Mot. for Extension].

For the reasons that follow, the court denies the motion for reconsideration, grants the request to certify for interlocutory review, and grants an extension of time to file a notice of appeal.

## II.

Before reaching the merits, the court addresses jurisdiction. President Trump and the United States both contend that the court cannot rule on Plaintiffs' motion for reconsideration because his appeal of the immunity ruling divested this court of jurisdiction. Def.'s Br. in Opp'n to Pls.' Mot., ECF No. 235 [hereinafter Def.'s Opp'n], at 4–5; U.S. Mem. in Opp'n to Pls.' Mot., ECF No. 234, at 2–3. The court disagrees.

For one, ordinarily, "a party may not appeal from a favorable judgment," *Kalka v. Hawk*, 215 F.3d 90, 96 n.9 (D.C. Cir. 2000), and the court's jurisdiction is divested only as to "those aspects of the case involved in the appeal," *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (internal quotation marks omitted). The ruling on the 2:24 p.m. tweet was favorable to President Trump and thus is not before the court of appeals. This court therefore is not divested of jurisdiction to rule on Plaintiffs' motion.

2

For another, Federal Rule of Civil Procedure 62.1(a) expressly authorizes the court to decide the motion.  The rule provides that, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court" has three options.  Fed. R. Civ. P. 62.1(a).  It may "defer considering the motion," "deny the motion," or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  *Id.*  So, even if President Trump's appeal generally divested this court of jurisdiction as to its immunity ruling, Rule 62.1 allows the court to rule—or at least indicate its ruling—on Plaintiffs' motion.

### III.

Now the merits.  Rule 54(b) permits a court to "revise[]" any "order or other decision" "at any time before entry of judgment adjudicating all claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  That rule "recognizes [the court's] inherent power to reconsider an interlocutory order 'as justice requires.'"  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (*quoting Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.)).  The "as justice requires" standard affords greater flexibility than that applicable to a Rule 59(e) motion as to a final order, *see Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015), and courts in this jurisdiction have looked to whether there are "good reasons" for granting a Rule 54(b) motion.  *United States v. All Assets Held at Bank Julius, Baer & Co.*, 308 F. Supp. 3d 186, 193 (D.D.C. 2018) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).  Relevant considerations include whether the court failed to consider "data[] that might reasonably be expected to alter the conclusion reached by the court," *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted), or where the movant presents new information that "constitute[s] a change in the court's awareness of the

3

circumstances," even though it "may not constitute a change in the actual facts of the case," *Jud. Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006).

## A.

Plaintiffs' threshold contention is that "[t]he Court's grant of immunity on the 2:24 p.m. tweet exceeded the relief Trump himself sought." Pls.' Mot. at 8. In other words, President Trump did not seek immunity for that act. That argument is premised on the absence of any specific mention of the 2:24 p.m. tweet in both President Trump's summary judgment brief and his statement of undisputed facts, as well as his failure to present any contextual evidence regarding that tweet. *See id.* All of that is true as far as it goes, but it too narrowly construes the relief sought by the motion.

President Trump sought recognition of immunity as to four categories of alleged acts, the last of which was his "alleged failure to take action to halt the events that occurred at the U.S. Capitol on January 6, 2021." Def.'s Mem. of P. & A. in Supp. of His Mot. for Summ. J. on Absolute Presidential Immunity Grounds, ECF No. 144-1, at 2. When identifying and describing that category, President Trump cited to acts or omissions alleged in various paragraphs across Plaintiffs' multiple complaints. *Id.* at 2 n.4. Among the allegations falling within the fourth category was the 2:24 p.m. tweet.[1] Therefore, contrary to Plaintiffs' contention, President Trump sought immunity as to the tweet "in the first place." Pls.' Mot. at 1. Reconsideration therefore is not warranted on that ground.

---

[1] President Trump expressly cited to the 2:24 p.m. tweet allegation in the following complaints: (1) Am. Compl., *Blassingame v. Trump*, No. 21-cv-858 (APM), ECF No. 3, ¶ 116; (2) Compl., *Kirkland v. Trump*, No. 22-cv-34 (APM), ECF No. 1, ¶ 106; and (3) Compl., *Tabron v. Trump*, No. 22-cv-11 (APM), ECF No. 1, ¶ 121. And, although he did not cite to the relevant paragraph in other cases, the allegation is contained in each. *See* Compl., *Moore v. Trump*, No. 22-cv-10 (APM), ECF No. 1, ¶ 112; First Am. Compl., *Garza v. Trump*, No. 23-cv-38 (APM), ECF No. 35-3, ¶ 95; Compl., *Swalwell v. Trump*, No. 21-cv-586 (APM), ECF No. 1, ¶ 138; Am. Compl., *Lee v. Trump*, ECF No. 11-1, ¶ 118; Am. Compl., *Smith v. Trump*, No. 21-cv-2265 (APM), ECF No. 89, ¶ 145.

4

**B.**

Plaintiffs' main contention is that the record does not support a finding that the 2:24 p.m. tweet was an official act for which President Trump is immune. *Id.* at 9–15.  Rather, they contend, "the 2:24 p.m. tweet was the activity of an office seeker.  The nature of the function performed was a message from Trump's personal Twitter account to his campaign supporters at the Capitol, like a campaign speech." *Id.* at 10.  They point out that President Trump presented no evidence that any Executive Branch official participated in drafting the tweet, assert that "Trump issued the tweet as part of a larger set of office-seeking activities," and argue that some usual trappings of the presidency, namely, official photographs and a recording of the President's activities in the Presidential Daily Diary, were absent at the time of the tweet. *Id.* at 10–11.  They also contrast the 2:24 p.m. tweet with the later Rose Garden video, which was produced with the assistance of White House staff. *Id.* at 11.  They further argue that the content of the tweet confirms that it was not an official act, as it was a message to his supporters that spoke to the Vice President's failure to return disputed electoral votes to states and urged them to demand the truth. *Id.*  Finally, Plaintiffs challenge the court's analysis, contending that neither President Trump's presence at the White House nor his interaction with advisors renders the 2:24 p.m. tweet an official act. *Id.* at 12–15.

The court is unpersuaded by these contentions.

Plaintiffs' arguments lose sight of the governing standard: President Trump satisfies his burden "if, based on an appropriately objective, context-specific assessment, his alleged actions can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Blassingame v. Trump*, 87 F.4th 1, 30 (D.C. Cir. 2023).  "And if it is a close call, doubts are resolved in favor of the President."  Mem. Op. at 7 (citing *Blassingame*,

5

87 F.4th at 21).  It is at least a reasonable construction of the 2:24 p.m. tweet that it was an official act.  Plaintiffs acknowledge that President Trump was told at 1:21 p.m., minutes after he returned to the White House from the Ellipse, that rioters had started to overrun the Capitol.  Pls.' Mot. at 3.  He then sat in the White House dining room to watch the events unfold.  *Id.* at 4.  A moment of crisis was now before the President of the United States.  A coordinate branch of the federal government was under attack.  It fell to him to decide how the Executive Branch would respond. He could have used persuasion or force, or both, to put down the riot.  But he chose instead to remain idle and, eventually, post the 2:24 p.m. tweet.  The tweet arguably poured gasoline on the fire, but that President Trump, in Plaintiffs' view, exacerbated the crisis is no less an official act than if he had exercised the powers of the presidency to quell the riot.  *See* Mem. Op. at 55.

Plaintiffs insist that the President's message echoed that of a "campaign speech," Pls.' Mot. at 10, but that is but one plausible characterization of the tweet.  True, it was sent from "Trump's personal Twitter account," *id.*, but Plaintiffs previously accepted such tweets could be official acts. *See* Mem. Op. at 48.  And while Plaintiffs assert that the President directed the tweet at his "campaign supporters at the Capitol," Pls.' Mot. at 10, there is nothing on the face of the message to suggest such a narrow target audience.

Plaintiffs also contend that the tweet was part "a larger set of office-seeking activities," including his Ellipse Speech, calls before and after the tweet to members of Congress about lodging objections to electoral votes, and phone calls to his personal lawyer, Rudolph Giuliani.  *See id.* at 4–5, 10–11.  Fair enough; that context matters.  But other context clues matter, too, perhaps none more than that, moments before the tweet, two of his closest advisors, Chief of Staff Mark Meadows and White House Counsel Pat Cipollone, implored him to do something to stop the riot. *See* Def.'s Obj. to Admission of Select Committee Final Report, ECF No. 173, Ex. W,

6

ECF No. 173-24 [hereinafter Select Report], at 595.  The President refused, then sent the 2:24 p.m.

tweet.  *See id.* at 595–96; Mem. Op. at 54.

Plaintiffs respond that the evidentiary source of that timeline—the Select Committee's

report—is ambiguous as to whether Meadows and Cipollone spoke to the President before the

2:24 p.m. tweet.  *See* Pls.' Mot. at 12–13.  It is not.  The order of events established by the

Committee is clear: Cipollone walked into Meadows's office shortly after 2:13 p.m. to persuade

him to get the President to act; after a brief exchange, the two walked "toward the dining room to

meet with the President"; the President posted his tweet at 2:24 p.m.; and "[m]inutes later,

Meadows and Cipollone returned from their talk with the President."  *See* Select Report at 595–

96.  That sequence of events cannot reasonably be understood to allow for the possibility that

President Trump sent the 2:24 p.m. tweet *before* Meadows and Cipollone entered the dining room.

If there were any doubt, a Department of Justice filing in President Trump's criminal case—

which Plaintiffs cite in their motion—confirms the timeline.  *See* Pls.' Mot. at 5 (citing Mot. for

Immunity Determinations, *United States v. Trump*, No. 23-cr-257 (TSC), ECF No. 252 [hereinafter

Smith Mot.]).  In asking the court there to find that the 2:24 p.m. tweet was an unofficial act, the

Special Counsel wrote:

> [W]hen news broke that rioters had breached the Capitol, the defendant's advisors—including [redacted] Deputy White House Counsel [redacted] and [redacted]—urged the defendant to issue a calming message and make efforts to stop the riot.  The defendant refused, responding that the people at the Capitol were angry because the election been stolen.  Eventually, all of the defendant's staffers left him alone in the dining room.  Fox News continued to report on the growing crisis at the Capitol.
>
> *It was at that point*—alone, watching news in real time, and with knowledge that rioters had breached the Capitol building—that the defendant issued the 2:24 p.m. Tweet attacking Pence for refusing the defendant's entreaties to join the conspiracy and help overturn the results of the election.

Smith Mot. at 141 (emphasis added) (footnotes omitted).   Thus, like the Select Committee, the Special Counsel determined that President Trump's advisors spoke to him minutes *before* he sent the 2:24 p.m. tweet.  That additional context, as this court found, renders it reasonable that the tweet was the act of an office-holder, not an office-seeker.  *See* Mem. Op. at 54–55.

Plaintiffs next try to diminish the significance of the President's rejection of his advisors' pleas to act.  *See* Pls.' Mot. at 13.  Calling the court's reliance on that sequence of events as establishing a "rule," Plaintiffs say it would lead to "incongruous results: It would mean that any act taken by the president—no matter how outlandish (like organizing a poker game) or plainly office-seeking (like firing a campaign pollster)—would become official simply because they occurred after the President received some advice about not engaging in such acts from government officials."  *Id.* at 14.  But, of course, the court never established any such "rule."  Again, context matters.   The President's advisors were urging him to exercise his official *presidential* powers—not those of an office-seeker—to put an end to the violence at the Capitol. That the President elected not to do so and instead sent the 2:24 p.m. tweet may seem unpresidential, but the court's task is not to evaluate the wisdom of the conduct.  *Cf. Trump v. United States*, 603 U.S. 593, 618 (2024) (observing that the official-acts immunity inquiry cannot explore the President's motives).  It is only to assess, based on context, whether the act can reasonably be construed as official.  The 2:24 p.m. tweet can be so understood.

Finally, Plaintiffs are critical of the court's reliance on the President's physical presence at the White House at the time of the tweet.  Pls.' Mot. at 15.  They insist that fact "cannot bear much weight without contravening the foundational principle that immunity attaches to functions, not to actors or to physical settings."  *Id.* (citing *Clinton v. Jones*, 520 U.S. 681, 695 (1997)).  The court does not disagree with that principle; it disagrees, however, that it contravened it.  The President's

8

presence at the White House matters in the analysis because that is where he learned about the riot at the Capitol, received advice from White House personnel, and made the decision not to act but to send the tweet. This sequence of events distinguishes the President's actions here from those Plaintiffs note would not be official even if performed at the White House, such as taking a call from a child's teacher. *Id.* And this remains true even though President Trump sent the tweet from the White House dining room, rather than, for example, the Oval Office. *See id.* At bottom, President Trump took actions that could reasonably be construed as official from the White House. The location is not dispositive, but it is an important contextual clue that the court had to assess.

For these reasons, the court denies Plaintiffs' motion for reconsideration.[2]

## IV.

Next, the court considers Plaintiffs' request to certify for interlocutory review the issue of the 2:24 p.m. tweet's status. Pls.' Mot. at 16. To start, it is not clear to the court why Plaintiffs require certification. It would be an odd result to make Plaintiffs wait until after entry of a final judgment to seek review on an immunity issue on which they lost, when President Trump already has exercised his right to an interlocutory review of the immunity rulings adverse to him. It makes far more sense that Plaintiffs, too, would have the right to a cross-appeal to promote judicial efficiency and uniformity. *See Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003) (describing circumstances where an appeals court may exercise "pendent jurisdiction," including "'when substantial considerations of fairness or efficiency demand it,' such

---

[2] Nothing in this opinion should be understood to mean that the court agrees with President Trump's view that the content of the 2:24 p.m. tweet alone made it official because it concerned a matter of public interest. *See* Def.'s Opp'n at 6–7. The court previously rejected that very argument. *See* Mem. Op. at 11–14.

as when a non-appealable order is 'inextricably intertwined' with an appealable order" (citation omitted)).[3]

In any event, the court grants certification.  The court agrees with Plaintiffs that the question of the 2:24 p.m. tweet's status as an official act involves a controlling question of law regarding the President's official-act immunity and presents substantial grounds for difference of opinion (beyond, as President Trump suggests, Plaintiffs' own disagreement), and its resolution may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Additionally, certifying the question for interlocutory review will promote judicial efficiency and fairness.

## V.

The court also grants Plaintiffs' motion to extend the time for appeal.  It does so out of an abundance of caution.  "A timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court not final' for purposes of appeal."  *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 197 (2019) (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (per curiam)); *see also Myers v. Comm'r of IRS*, 928 F.3d 1025, 1029–1030 (D.C. Cir. 2019).  If the immunity ruling is treated as a "final decision" for purposes of an interlocutory appeal, the clock to file notice may not have yet started given Plaintiffs' timely filing of a motion for reconsideration.

In any event, the court agrees that Plaintiffs have established at least "excusable neglect" to extend the deadline.  *See* Fed. R. App. P. 4(a)(5)(A)(ii).  Whether neglect is "excusable" requires weighing a number of factors, including "the danger of prejudice to the [non-movant], the length

---

[3] President Trump argues that the D.C. Circuit held in *Roth v. King* that a partial order granting immunity is not immediately appealable under the collateral order doctrine.  *See* Def.'s Opp'n to Pls.' Mot. for Extension, ECF No. 249, at 3 (citing *Roth v. King*, 449 F.3d 1272, 1280–82 (D.C. 2006)).  That may be, but the court "decline[d] to resolve whether the cross-appeal is so 'inextricably intertwined' as to allow for pendent appellant jurisdiction in this case." *Roth*, 449 F.3d at 1283.  *Roth* therefore does not foreclose an exercise of pendent jurisdiction without a certification for interlocutory review.

of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ." *Id.* at 392. "[T]he determination is at bottom an equitable one . . . ." *Id.* at 395.

The four *Pioneer* factors weigh in Plaintiffs' favor. As to the first and second factors, permitting late-filing poses no meaningful prejudice to President Trump, and Plaintiffs did not delay in seeking relief. President Trump asserts that "Plaintiffs' proposed cross-appeal would add a plaintiff-side challenge to a single Tweet to an already multi-issue consolidated appeal, without aiding meaningful review of the immunity issues President Trump has placed before the Court of Appeals. It would also risk delaying resolution of those appeals, contrary to the interest in prompt review of immunity questions." Def.'s Opp'n to Pls.' Mot. for Extension, ECF No. 249 [hereinafter Def.'s Opp'n to Pls.' Mot. for Extension], at 6–7. But adding the single issue that Plaintiffs wish to raise will not add complexity to the appeal—after all, it concerns only one act, a single tweet. Nor will it risk delaying appellate proceedings. The court presumes that the issue can easily be folded into the parties' existing briefing schedule, which has yet to commence. *See* Order, *Lee v. Trump*, No. 26-7049 (D.C. Cir. July 16, 2026) (setting appellants' opening brief deadline as August 10, 2026, and appellees' joint brief deadline as September 4, 2026).

The third factor—the reason for delay and whether it was in counsel's control—also favors Plaintiffs. As Plaintiffs explain, given the pendency of the motion for reconsideration, they did not file a notice of appeal. *See* Pls.' Mot. for Extension at 3. A decision on the motion would allow them to notice both the original decision and the denial of reconsideration. To be sure, as President Trump points out, it was within Plaintiffs' control to file a protective notice, *see* Def.'s Opp'n to

11

Pls.' Mot. for Extension at 7, but this is not a case akin to one of actual neglect or inexcusable error. Plaintiffs simply have attempted to follow an orderly process to tee up a narrow immunity ruling for appellate review.

Finally, Plaintiffs have acted in good faith. President Trump does not assert otherwise. *See id.* at 7–8.

Accordingly, the court grants Plaintiffs' motion to extend time to notice an appeal of this court's ruling regarding the 2:24 p.m. tweet. Plaintiffs shall file their notice of appeal no later than August 5, 2026.

## VI.

For the foregoing reasons, the court (1) denies Plaintiffs' Motion for Reconsideration but grants their request for certification of interlocutory review, ECF No. 228, and (2) grants Plaintiffs' Motion for Extension of Time to File Notice of Appeal, ECF No. 241.

Dated:  July 22, 2026

Amit P. Mehta
United States District Judge

12

84

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BARBARA J. LEE et al., | ) | Case No. 21-cv-00400 (APM) |
|  | ) |  |
| Plaintiffs, | ) | Consolidated Member Cases: |
|  | ) | 21-cv-00586 (APM) |
| v. | ) | 21-cv-00858 (APM) |
|  | ) | 21-cv-02265 (APM) |
| DONALD J. TRUMP et al., | ) | 22-cv-00010 (APM) |
|  | ) | 22-cv-00011 (APM) |
| Defendants. | ) | 22-cv-00034 (APM) |
|  | ) | 23-cv-00038 (APM) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

These consolidated civil cases are among the last vestiges of litigation concerning the events at the United States Capitol on January 6, 2021.  In February 2022, this court denied President Donald J. Trump's motion to dismiss, ruling that Plaintiffs had plausibly alleged that President Trump's acts leading up to and on January 6, including his rally speech on the Ellipse ("Ellipse Speech" or "Speech"), were not official acts and therefore he did not enjoy presidential immunity from suit.  *See Thompson v. Trump*, 590 F. Supp. 3d 46, 73–84 (D.D.C. 2022).[1]  The court also held that words spoken during the Ellipse Speech plausibly amounted to incitement and were not protected under the First Amendment.  *See id.* at 108–18.

President Trump then sought interlocutory review of the court's immunity ruling. The D.C. Circuit affirmed, and President Trump elected not to appeal that decision. *See Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023).  The case then returned to this court.

---

[1] The court ruled, however, that President Trump was immune from suit as to Plaintiff Swalwell's failure-to-act claim under 42 U.S.C. § 1986.  *Thompson*, 590 F. Supp. 3d at 84–85 ("Just as he is immune for acts that fall within the outer perimeter of his official responsibilities, so too must he be immune for alleged failures to exercise that official responsibility.").

President Trump opted to take discovery bearing on immunity, and the parties engaged in such discovery for nearly a year. Now, the question of official-acts immunity is once more teed up for this court, but this time under the more rigorous summary judgment standard.

But that is not all. President Trump also asks the court to reconsider its ruling rejecting his First Amendment defense. According to him, a subsequent Supreme Court decision, *Counterman v. Colorado*, 600 U.S. 66 (2023), clarified the law on incitement and confirms that the Ellipse Speech was protected political expression. President Trump asks the court to walk back its previous decision or, if it declines to do so, to certify the First Amendment question for interlocutory review.

And the Department of Justice has joined the fray. More than four years after the first of these suits was brought, the Department filed a Westfall Act Certification ("Certification") signed by the Attorney General's designee. The Certification asserts that the acts by President Trump alleged in the various complaints fell within the scope of his employment as President of the United States. Under the Westfall Act, the Attorney General's act of certification requires that the United States be substituted as the defendant for tort claims brought against a federal employee. The consequence of substitution in this case would be two-fold. It would immunize President Trump from tort liability because he could no longer be held personally responsible. And it would require dismissal of the tort claims altogether, as no Plaintiff filed pre-suit notice as required under the Federal Tort Claims Act. Plaintiffs have moved to strike the Certification. If granted, the United States would not be substituted as the defendant and the tort claims against President Trump would remain intact.

Those are the three primary pending motions. There are also two motions seeking to admit or exclude certain evidence from the court's consideration of the immunity question. Furthermore,

2

the parties have submitted lengthy statements and counterstatements of undisputed facts to support their positions on immunity.  Together, they total over 650 pages and contain what seems an endless stream of evidentiary objections.  The court has considered those statements in their entirety, their supporting evidence, and the parties' objections.[2]

For the reasons set forth below, the court rules as follows: (1) President Trump's summary judgment motion with respect to official-acts immunity is denied except as to certain conduct that falls within the outer perimeter of a President's responsibilities; (2) President Trump's motion for reconsideration is denied, but the court certifies its First Amendment rulings for interlocutory review; and (3) Plaintiffs' motion to strike the United States' Westfall Act Certification is granted. Further, to the extent the court has relied on evidence covered by the two evidentiary motions, the court (4) grants Plaintiffs' motion requesting judicial notice and (5) denies Defendant's motion objecting to the court's consideration of the final report of the U.S. House Select Committee to Investigate the January 6 Attack on the U.S. Capitol.

This opinion will proceed as follows.  Section II addresses the controlling legal principles, starting with a summary of the two appellate rulings on presidential immunity that followed this court's ruling: (1) the D.C. Circuit's opinion in *Blassingame* and (2) the Supreme Court's decision in *Trump v. United States*, 603 U.S. 593 (2024).  Section II closes with a discussion of President Trump's contention that *Trump* altered *Blassingame*'s immunity framework and related legal disputes.  Section III addresses the merits of the immunity question.  Sections IV and V, respectively, address President Trump's motion to reconsider his First Amendment defense and Plaintiffs' motion to strike the Westfall Act Certification.

---

[2] Instead of identifying the various filings in the body of this opinion or in footnotes, they are listed in an Appendix. The corresponding CM/ECF docket entries and short-cite abbreviations are found there, too.

3

The court does not lead with a factual or procedural overview, as the court presumes readers' familiarity with the background set forth in *Blassingame*, 87 F.4th at 6–12, and *Thompson*, 590 F. Supp. 3d at 63–69. It is incorporated here by reference.

## II.    LEGAL PRINCIPLES

### A.    *Blassingame v. Trump*

A unanimous panel in *Blassingame* concluded that, on a motion to dismiss, President Trump had not "demonstrated an entitlement to official-acts immunity for his actions leading up to and on January 6 as alleged in the complaints." 87 F.4th at 5. In so holding, the court began by distilling three "governing principles" from the Supreme Court's two major cases on presidential immunity from civil suit, *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), and *Clinton v. Jones*, 520 U.S. 681 (1997). "First, the President is entitled to official immunity from civil damages liability based on actions within the 'outer perimeter' of official presidential responsibility, including discretionary acts within the concept of duty associated with the presidency." *Blassingame*, 87 F.4th at 14. "[A]n act lies within the outer perimeter of an official's duties if it is 'the kind of act not manifestly or palpably beyond [the official's] authority, but rather having more or less connection with the general matters committed by law to his control or supervision.'" *Id.* at 13 (second alteration in original) (quoting *Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425, 1429 (D.C. Cir. 1987)). "Second, the President is subject to civil damages suits based on actions taken in an unofficial, private capacity to the same extent as any private citizen." *Id.* at 14. "And third, the President's actions do not fall beyond the outer perimeter of official responsibility merely because they are unlawful or taken for a forbidden purpose. Rather, the President's official immunity insulates all of his official actions from civil damages liability, regardless of their legality or his motives." *Id.*

With these three principles in mind, the *Blassingame* court rejected President Trump's assertions that his alleged conduct fell within the outer perimeter of his official duties "because they amounted to speech on matters of public concern" and because "they came within his constitutional duty under the Take Care Clause." *Id.* As to his first argument, the court recognized that the President "possesses an extraordinary power to speak to his fellow citizens and on their behalf" and that "many uses of the presidential bully pulpit fall comfortably 'within the "outer perimeter" of [the President's] official responsibility.'" *Id.* at 14–15 (alteration in original) (first quoting *Trump v. Hawaii*, 585 U.S. 667, 701 (2018); then quoting *Nixon*, 457 U.S. at 756). But merely speaking on a matter of public concern is not, by itself, enough to enjoy official-acts immunity. Context matters. As the court explained, "an immunity for all presidential speech on matters of public concern—without regard to the context in which the President speaks—would be grounded purely in 'the identity of the actor who performed it' rather than 'the nature of the function performed,'" "a result that is 'unsupported by precedent.'" *Id.* at 16 (quoting *Clinton*, 520 U.S. at 695). The critical contextual question in this case, the court observed, is whether "the President is speaking (or engaging in conduct) in an official capacity as office-holder or instead in an unofficial capacity as office-seeker." *Id.* at 19. That distinction follows from the fact that the presidency is agnostic as to "who will occupy the office next." *Id.* at 17. "Campaigning to *attain* [the Office of the President] . . . is not an official function *of* the office." *Id.* An incumbent President engaged in "campaign-related activity" therefore is acting beyond the "outer perimeter" of his official responsibilities and is not entitled to absolute immunity from civil damages. *See id.* at 18–19 (offering as examples of non-official acts a nomination acceptance speech at a party convention, the running of a "campaign ad fully funded by a candidate's campaign," and a "speech at a reelection campaign rally").

As to President Trump's second argument—that he was carrying out his duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3—the court quickly disposed of it. *Blassingame*, 87 F.4th at 23. That assertion, "at least without more, assumes the answer to the question whether he acted in an official capacity as office-holder or in a private capacity as office-seeker." *Id.* at 24. Again, context matters. For example, the President "could exhort Congress to do its duty under the Electoral Count Act in a campaign ad, or he could do the same in the State of the Union address"; the latter arguably would be taken in furtherance of the President's Take Care Clause responsibilities, but the former would not. *Id.* The court concluded that President Trump "had made no argument as to why his actions alleged here should be treated more like the State of the Union than the campaign ad," and thus his invocation of the Take Care Clause ultimately did "not add anything to his claim of immunity in the circumstances of the cases before [it]." *Id.*

Importantly, the panel offered guidance on how to distinguish the acts of an incumbent President as "office-holder" from those as "office-seeker." Context, not motive, is the key consideration. *See id.* at 20–21. "An assessment of whether the President is engaged in official functions or unofficial reelection campaign activity . . . does not turn on whether the activity was subjectively undertaken in some measure to enhance the President's re-election prospects or profile. The inquiry instead is an objective one, 'grounded in' a context-specific assessment of 'the nature of the function performed.'" *Id.* (quoting *Clinton*, 520 U.S. at 695). "That context may be substantially informed by the way in which the President and the executive branch themselves treat the activity in question." *Id.* at 21. Put succinctly, if an act is "clothed in the trappings of an official function based on objective indicia, it more likely constitutes an official act for immunity purposes than if it bears the hallmarks of re-election campaign activity." *Id.* Relevant "objective indicia" include whether "an activity is organized and promoted by official White House channels

6

and government officials and funded with public resources." *Id.* The content of a speech might be relevant, too. "In certain circumstances, for instance, it could serve to confirm what an objective assessment of the context makes evident." *Id.* at 22. "But the crux of the inquiry . . . concerns the context in which the President speaks, not what precisely he says or whether it might advance his re-election prospects." *Id.* And when performed, the inquiry "should be fashioned and carried out with appropriate sensitivity to the important interests at stake." *Id.* at 20.

The court also defined the applicable burden and standard of proof. The President "bears the burden of establishing that he is entitled to official-act immunity." *Id.* at 30. "[T]hat burden will be met if, based on an appropriately objective, context-specific assessment, his alleged actions can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Id.* But "when a President's actions viewed objectively and in context may reasonably be understood only as re-election campaign activity, a court not only may, but must deny immunity." *Id.* at 21–22. And if it is a close call, doubts are resolved in favor of the President. *See id.* at 21 ("When an appropriately objective, context-specific assessment yields no sufficiently clear answer in either direction, the President . . . should be afforded immunity.").

To illustrate these principles, the court considered the remarks President Trump delivered at the "Salute to America" event held at the National Mall on July 4, 2019—a date by which he had "formally announced his candidacy for re-election." *Id.* at 22. Among the objective indicia the court identified were that (1) the rally was "publicly funded" through National Park Service and Department of Defense resources, (2) the government "promoted" the event through National Park Service channels and on the White House official Twitter account, (3) the White House dedicated a page on its website to the event, (4) "its primary organizers were government officials from the White House and the Department of Interior," (5) government officials attended the event,

7

and (6) the White House posted the President's remarks on its website. *Id.* at 22–23. The court did not definitively opine on whether the President's speech would be an official act for purposes of immunity but said that it would be treated as such "if it could reasonably be understood in that way." *Id.* at 23. The court added that "[w]hether his remarks addressed matters of public concern would not—and we believe should not—decide the issue." *Id.*

Ultimately, as to the conduct alleged in Plaintiffs' complaints, the court held that, because President Trump had not made any effort to show through objective, context-specific indicia that the alleged acts were official, dismissal on grounds of presidential immunity was not warranted. *See id.* at 30. It then remanded the case to this court to make an immunity determination at the summary judgment stage. *Id.* at 29–30. President Trump did not appeal the decision.

## B.    *Trump v. United States*

Seven months after *Blassingame*, the Supreme Court ruled in *Trump v. United States*. That decision addressed whether a former President is absolutely immune from criminal prosecution for conduct alleged to encompass official acts while in office. 603 U.S. at 605–06. That case, like this one, involved President Trump's conduct leading up to and on January 6. *See id.* at 602–03.

The Court held that "the nature of Presidential power requires that a former President have some immunity from criminal prosecution for official acts during his tenure in office." *Id.* at 606. The Court identified the degree of immunity afforded to three categories of conduct. At one end are activities "within his exclusive sphere of constitutional authority" for which "the President is absolutely immune from criminal prosecution." *Id.* at 609. The Court identified as examples the President's authority to pardon, remove inferior officers, and recognize foreign countries. *Id.* at 608–09. At the other are unofficial acts for which "there is no immunity." *Id.* at 615. And then there is the wide gulf in between. For conduct in that category, the President enjoys "at least a

8

*presumptive* immunity from criminal prosecution for . . . acts within the outer perimeter of his official responsibility." *Id.* at 614. Such presumptive immunity "is required to safeguard the independence and effective functioning of the Executive Branch, and to enable the President to carry out his constitutional duties without undue caution." *Id.* That presumption can be overcome if "the Government can show that applying a criminal prohibition to that act would pose no 'dangers of intrusion on the authority and functions of the Executive Branch.'" *Id.* at 615 (quoting *Fitzgerald*, 457 U.S. at 754).

As the D.C. Circuit did in *Blassingame*, the Court offered guidance on how to distinguish official acts from unofficial ones. The inquiry "begins with assessing the President's authority to take [the] action" in dispute. *Id.* at 617. The Court there simply acknowledged the expansive array of conduct that fits within the "outer perimeter" of the President's official responsibilities. *See id.* at 617–18. The court next emphasized that the President's motives and the alleged illegality of the conduct are not relevant to the inquiry. *Id.* at 618–19. And finally, for actions that "cannot be neatly categorized as falling within a particular Presidential function," the "necessary analysis is . . . fact specific." *Id.* at 628. That includes Presidential speech. "[M]ost of a President's public communications," the Court said, "are likely to fall comfortably within the outer perimeter of his official responsibilities." *Id.* at 629. But there may be "contexts in which the President, notwithstanding the prominence of his position, speaks in an unofficial capacity—perhaps as a candidate for office or party leader." *Id.* Where there is ambiguity as to speech, an "objective analysis of 'content, form, and context' will necessarily inform the inquiry." *Id.* (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). That analysis "must be fact specific and may prove to be challenging." *Id.* Relevant considerations may include "what else was said contemporaneous to

the excerpted communications" or, as relevant to this case, "who was involved in transmitting the electronic communications and in organizing the rally." *Id.* at 630.

The Supreme Court categorized some of the conduct alleged in the indictment. President Trump's discussions with the Department of Justice about investigative and prosecutorial decisionmaking were within the President's exclusive authority and therefore subject to absolute immunity from prosecution. *Id.* at 619–21. As to his "conversations" with Vice President Mike Pence during which President Trump allegedly pressured the Vice President to reject legitimate electoral votes or return them to state legislatures, the President was presumptively immune. *Id.* at 621–25. "Whenever the President and Vice President discuss their official responsibilities," the Court explained, "they engage in official conduct." *Id.* at 623. To prosecute such acts, the government would have to overcome the presumption of immunity. *Id.* at 623–25. The indictment's remaining allegations would be subject to a "fact specific" inquiry, performed by the district court in the first instance, to determine whether they were official or unofficial. *Id.* at 628–30. That would include President Trump's interactions with persons outside the Executive Branch, such as state election officials and legislators; his communications with the public via tweets; and the January 6 Ellipse Speech. *Id.* at 621, 625–30.

The district court, however, never finally performed that inquiry after President Trump won re-election, resulting in the indictment's dismissal.

## C.    Official-Acts Immunity Legal Framework

The foregoing discussion of *Blassingame* and *Trump* provides the backdrop for the parties' present legal disputes. The court starts with President Trump's contention that the Supreme Court in *Trump* made an important modification to the immunity framework that the D.C. Circuit adopted

10

in *Blassingame*. The court then turns to the parties' competing views of how the court should apply the legal principles articulated in both *Trump* and *Blassingame* to the evidence.

> 1.    *Whether* Trump *Alters the* Blassingame *Immunity Framework*

Recall that *Blassingame* requires the court to undertake an "objective, context-specific assessment" to determine whether the President is acting as an office-holder versus office-seeker. *Blassingame*, 87 F.4th at 30. That inquiry looks primarily to whether the conduct is "clothed in the trappings of an official function based on objective indicia." *Id.* at 21; *see also id.* at 33 (Katsas, J., concurring) ("Unless speaking at some specific campaign or political event, he will thus likely be 'clothed in the trappings' of his Office . . . ."). The content of speech, while sometimes relevant, plays a secondary role. "In certain circumstances, for instance, it could serve *to confirm* what an objective assessment of the context makes evident." *Id.* at 22 (majority opinion) (emphasis added). "But the crux of the inquiry . . . concerns the context in which the President speaks, not precisely what he says or whether it might advance his re-election prospects." *Id.*; *see also id.* at 32 (Katsas, J., concurring) ("Because the President may deliver the 'same essential message' at an official or unofficial event, the immunity cannot turn on what he says.").

President Trump argues that the Supreme Court in *Trump* modified, if not inverted, this approach. According to him, under *Trump*, "content needs to drive the analysis," not context. Oral Argument Hr'g Tr., ECF No. 211 [hereinafter Hr'g Tr.], at 9:10-13; *see also id.* at 10:8-24; Def.'s SJ Mem. at 9 n.5. President Trump sees the Supreme Court making this subtle but important paradigm shift when it concluded that "the President's communications to the Attorney General and to the Vice President were exercises of fundamental Article II power." Hr'g Tr. at 9:15-18. The Court made that determination, he argues, "solely by reference to the subject matter, the contents of the communication." *Id.* at 9:18-20; *see also id.* at 11:8-12, 13:20–14:3. He also points

11

to what he describes as "the first time that the Supreme Court articulates the broad scope of the bully pulpit power." *Id.* at 15:12-14; *see also id.* at 15:19-20.  While *Blassingame* endorsed the proposition that "when the President is running or speaking in a particular function, like a campaign function or acceptance speech, . . . he's no longer exercising the bully pulpit," the Supreme Court did not adopt that dichotomy.  *Id.* at 15:22–16:4.  The Court's complete embrace of the bully pulpit power, he maintains, cannot be squared with *Blassingame*'s office-holder/office-seeker distinction.  *Id.* at 16:5-8.

This court declines to veer from the *Blassingame* framework.  For one, it cannot do so. This court is bound by D.C. Circuit precedent unless "intervening Supreme Court authority . . . 'effectively overrule[s], *i.e.*, eviscerate[s], the law of our circuit.'"  *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1334 (D.C. Cir. 2024) (citation omitted).  *Trump* does not overrule—effectively or otherwise—*Blassingame*.  And it does not "clearly dictate a departure from circuit law." *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023).  *Blassingame* therefore must mark the way for this court's analysis.

For another, President Trump's argument is based on a strained reading of *Trump*.  It is true that the Court found him absolutely immune from prosecution for his discussions with the Department of Justice and presumptively immune for his conversations allegedly pressuring the Vice President.  *Trump*, 603 U.S. at 619–24.  Such conduct easily fell within the "outer perimeter" of his official responsibilities.  *See id.*  But that conclusion rested less on the content of the President's speech than on the fact that the acts in question indisputably were of an official character based on the actors involved and the actors' prescribed constitutional duties—in other words, contextual factors.  The Court explained as to President Trump's interactions with Department of Justice officials that "[i]nvestigative and prosecutorial decisionmaking is 'the

12

special province of the Executive Branch.'"  *Id.* at 620 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)).  The same was true of the President's alleged threat to remove the Attorney General, which the Court said "implicates 'conclusive and preclusive' Presidential authority."  *Id.* at 620–21.  And as to his "conversations" and "discussions" with the Vice President, the Court's reasoning rested largely on the singularity of the Vice President as "one of the President's closest advisers" and "[a]s the President's second in command."  *Id.* at 621–23.  That special relationship was enough for the Court to conclude that "[w]henever the President and Vice President discuss their official responsibilities, they engage in official conduct."  *Id.* at 623.  Context, not content, drove the Court's analysis.

Nor did the Court place the President's exercise of the bully pulpit on the same footing as acts "within the scope of his exclusive authority."  *Id.* at 608.  Like the D.C. Circuit in *Blassingame*, the Court acknowledged that "*most* of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities."  *Id.* at 629 (emphasis added); *accord Blassingame*, 87 F.4th at 15 (observing that "many uses of the presidential bully pulpit fall comfortably within the outer perimeter of [the President's] official responsibility" (alteration in original) (internal quotation marks omitted)); *id.* at 33 (Katsas, J., concurring) ("The Court's approach recognizes that presidential speech on matters of public concern will very often be official—and thus immunized.").  But the Court recognized that there may "be contexts in which the President, notwithstanding the prominence of his position, speaks in an unofficial capacity—perhaps as a candidate for office or party leader."  *Trump*, 603 U.S. at 629.  When such uncertainty is present, courts must perform an "objective analysis" that is "fact specific" and informed by "'content, form, and context.'"  *Id.* (quoting *Snyder*, 562 U.S. at 453).  In this court's

view, there is no daylight between that formulation and the "objective, context-specific assessment" required by *Blassingame*.

The court's analysis of the factual record therefore will proceed using the metes and bounds drawn in *Blassingame*, informed by the Supreme Court's conclusions and reasoning in *Trump*.

    2.    *The Parties' Disputes Over* Blassingame*'s Application*

But before the court gets there, there is more to say about *Blassingame*.  The parties do not see eye to eye on its legal principles and standards.

According to President Trump, *Blassingame* sets "only a very low bar" to overcome: he is "entitled to summary judgment . . . unless it is absolutely clear that his actions *cannot* be reasonably understood as official acts."  Def.'s SJ Mem. at 4.  In making the assessment, the court cannot "pick among competing understandings of the facts," *id.* at 7, or "weigh competing inferences," Def.'s SJ Reply at 6; rather, if the President's actions can reasonably be understood as official, he is entitled to immunity even if such understanding may not be "the only or the best" one.  *Id.*  Thus, according to President Trump, "Plaintiffs may only defeat immunity if they provide exceedingly unambiguous evidence, uncontradicted by President Trump, to show that the only reasonable way to understand his actions was as 'manifestly and palpably' unofficial."  Def.'s SJ Mem. at 6.

Plaintiffs respond that President Trump's framing of the inquiry "is not the law."  Pls.' SJ Opp'n at 12.  They take issue with characterizations such as "very low threshold," "absolutely clear," and "exceedingly unambiguous."  *Id.* at 11–12.  Plaintiffs instead posit that the "touchstone of the inquiry is reasonableness."  *Id.* at 12.  Mere ambiguity as to the conduct's status does not confer immunity.  *See id.*  The court must "carefully pars[e] the evidence" and then determine what reasonable inferences can be drawn from it.  *Id.*  Immunity must be denied, they emphasize,

14

"[w]hen a President's actions viewed objectively and in context may *reasonably* be understood only as re-election campaign activity." *Id.* (quoting *Blassingame*, 87 F.4th at 21–22).

This back-and-forth was largely unnecessary. That is because *Blassingame*'s standards and directives are quite clear. To start, it is President Trump's burden to establish that he is entitled to official-acts immunity. *Blassingame*, 87 F.4th at 30. This is not, as he suggests, a mere "burden of production," Def.'s SJ Reply at 6; at this stage, it is a burden of proof, *Blassingame*, 87 F.4th at 30 (observing that the Supreme Court in *Nixon* did not create "any President-specific exception to the 'general rule' that [President Trump] must 'plead and prove . . . a defense'" (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008))). Further, the Rule 56(a) standard governs. Under that standard, President Trump—as the movant and the party that bears the burden of proof—must establish that the record reveals "no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If he makes a "properly supported motion for summary judgment," Plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If there is conflicting evidence, it is not the court's job to make credibility determinations or weigh the evidence. *Id.* at 255. Rather, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Plaintiffs' burden, therefore, is not as President Trump contends to present "exceedingly unambiguous evidence" to defeat summary judgment on the question of immunity. Def.'s SJ Mem. at 6. Rather, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

What factual showing, then, does President Trump have to make to prevail at this stage? Again, he must establish that there are no genuine disputes of material fact and, based on such

15

record, that his "actions can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Blassingame*, 87 F.4th at 30. Put differently, the court must ask, "[I]s it reasonable to think"—based on an undisputed set of material facts— that President Trump "was exercising his official responsibilities as President, or was he instead engaging in reelection campaign activity as a presidential candidate?" *Id.* If the inquiry "yields no sufficiently clear answer in either direction, the President . . . should be afforded immunity." *Id.* at 21. But if the record shows that the conduct "may reasonably be understood only as re-election campaign activity, a court not only may, but must deny immunity." *Id.* at 21–22. So, although Plaintiffs are correct that "[t]he touchstone of the inquiry is reasonableness," Pls.' SJ Opp'n at 12, if the President shows on an undisputed factual record that one reasonable construction of his conduct is official—it need not be the only or best one—he is entitled to immunity for such acts.

It bears emphasizing that the court's present task is not to cast an up or down vote on official-acts immunity with respect to the complaints as a whole or as to any claim. It is to assess whether the record evidence, under the summary judgment standard, proves the discrete acts alleged in the complaint and, if it does, then to assess whether that conduct falls within the outer perimeter of the President's responsibilities. That is the lesson of *Trump.* Plaintiffs here, like the prosecutors in *Trump*, cannot prove their claims based on immunized official acts. *Cf.* 603 U.S. at 630 ("Presidents therefore cannot be indicted based on conduct for which they are immune."). The court therefore must parse the complaints and the factual record and determine which alleged acts are official and which are not. The grouping of similar acts is permitted—the Court did so in *Trump*—but if the evidence is unique as to a particular act or set of acts within a grouping, that difference must figure into the court's calculus.

16

One last observation about the controlling legal principles.  The parties spill much ink over the following line from *Blassingame*: "an act lies within the outer perimeter of an official's duties if it is 'the kind of act not manifestly or palpably beyond [the official's] authority, but rather having more or less connection with the general matters committed by law to his control or supervision.'" 87 F.4th at 13 (alteration in original) (citation omitted).  The Court approvingly cited it in *Trump*. *See* 603 U.S. at 618.   President Trump wields the phrase "manifestly or palpably beyond [the President's] authority" as if it sets a near insurmountable hurdle to demonstrating that a presidential act is unofficial.  *See, e.g.*, Def.'s SJ Mem. at 4–6, Def.'s SJ Reply at 5–10.  Plaintiffs, by contrast, argue that "*Blassingame*'s single use of this phrase was not announcing a new standard of proof but rather explaining that an act may be beyond the 'outer perimeter' of an official's duties if it is 'manifestly or palpably beyond [his] authority.'"  Pls.' SJ Opp'n at 14 (quoting *Blassingame*, 87 F.4th at 13).

Plaintiffs are correct.  The "manifestly or palpably beyond" descriptor in *Blassingame* merely adds texture to the line between acts that lie within the outer perimeter and those that lie without.  That is clear from the contrast drawn by the clause that follows—"but rather having more or less connection with the general matters committed by law to his control or supervision."  An act "manifestly or palpably beyond" an official's authority is one bearing no reasonable nexus to the duties and responsibilities of the office.  That text does not impose an insuperable barrier to finding that a presidential act does not enjoy absolute immunity.

## III.    OFFICIAL-ACTS IMMUNITY

Now, the merits.  The court addresses the arguments in the order in which they appear in President Trump's summary judgment brief.  First, starting with the Ellipse Speech, the President contends based on content alone that the remarks were official because he was exercising authority

under the Constitution's Recommendations Clause, U.S. Const. art. II, § 3, and speaking on a matter of public interest. Def.'s SJ Mem. at 7–18. Only after does he address the contextual evidence, which he asserts also establishes the Speech was official. *Id.* at 18–26. Second, President Trump maintains that his outreach to state and local officials in the election's aftermath was official because he undertook those acts pursuant to his constitutional duty to "take care that the laws be faithfully executed." *Id.* at 27–28. Third, he claims that the tweets Plaintiffs cite from his @realDonaldTrump Twitter account were official acts based on both context and content. *Id.* at 28–36. And fourth, he argues that his response (or lack thereof) to the rioting at the Capitol was conduct within the outer perimeter of his official responsibilities and therefore cannot be relied on to support Plaintiffs' claims. *Id.* at 37. Plaintiffs dispute each of these contentions. *See generally* Pls.' SJ Opp'n.

### A.      January 6 Ellipse Speech

#### 1.      *The Recommendations Clause and Speech on a Matter of Public Interest*

President Trump begins his defense of the Ellipse Speech as official by focusing solely on what he said: "the speech, standing alone, demonstrates that [he] is entitled to absolute civil immunity." Def.'s SJ Mem. at 20. He insists that his remarks on January 6 were an exercise of three Presidential functions: (1) providing information and making recommendations to Congress pursuant to the Recommendations Clause, (2) using the "bully pulpit" to address matters of public concern, and (3) communicating with the Vice President about his official duties as the presiding officer of the Joint Session of Congress. *Id.* at 7–20. The court describes each argument in greater detail before explaining why each fails.

The Recommendations Clause states that the President "shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such

18

Measures as he shall judge necessary and expedient." U.S. Const. art. II, § 3. President Trump maintains that "on its face [the Ellipse] speech falls within President Trump's 'conclusive and preclusive' authority to provide recommendations to Congress and to advise Congress on matters of significant national concern." Def.'s SJ Mem. at 8–9. He says that the audience for the Ellipse Speech "expressly included Senators and Members of Congress, who were the only persons positioned to take measures in response to the concerns raised." *Id.* at 11. He offered them "'Information of the State of Union' by addressing concerns of widespread voter fraud and by providing to Congress evidence of election irregularities," *id.* at 10, and he proposed various election-reform "Measures," such as "an end to ballot harvesting, requirements for voter identification, and a ban on universal mail-in balloting," *id.* at 12. He also suggested "an avenue for Congress to reject the certification of the 2020 election." *Id.* at 13. That these recommendations were made in a public address does not matter: "the Constitution imposes no specific requirement as to how, when, or why the President shall fulfill this function." *Id.* at 11.

As to the bully pulpit, President Trump emphasizes the "'extraordinary power to speak to his fellow citizens and on their behalf'" and states that "in January 2021 there was no matter more pressing to the American public than the outcome of the 2020 president election." *Id.* at 17 (quoting *Trump*, 603 U.S. at 629). The Ellipse Speech therefore fell comfortably within the outer perimeter of his Presidential responsibilities. *Id.* at 17–18.

And with respect to communicating with the Vice President, President Trump highlights that "the Ellipse Speech repeatedly called upon Vice President Mike Pence to perform his constitutional and statutory duties by refusing to certify the election results." *Id.* at 19. He places this aspect of the Speech on the same footing as his conversations with the Vice President that the Supreme Court deemed to be official conduct. *See id.* (citing *Trump*, 603 U.S. at 622–23).

19

These lead contentions share a common defect: they rely solely on the content of the President's Ellipse Speech.  For that reason alone, the court rejects them.  The D.C. Circuit in *Blassingame* was clear that whether the Ellipse Speech was an official act must be determined from an "objective, context-specific assessment."  *See* 87 F.4th at 30 (discussing allegations relating to the January 6 rally).  The Speech's content is not "off-limits," but "the crux of the inquiry . . . concerns the context in which the President speaks, not what precisely he says or whether it might advance his re-election prospects."  *Id.* at 22.  President Trump's singular focus on the content of the Ellipse Speech disregards *Blassingame*'s clear instruction.  And as discussed, nothing in *Trump* altered the context-driven nature of the inquiry.

President Trump's Recommendations Clause and bully pulpit arguments also cannot be squared with *Blassingame* for additional reasons.  The latter is foreclosed: President Trump made that same assertion about the bully pulpit before the D.C. Circuit—i.e., when the President speaks on a matter of public concern, he enjoys official-acts immunity—and the court rejected it.  *Id.* at 14–16.  The decision in *Trump* did not disturb that holding.  *See* 603 U.S. at 629.  As to the former, it fails for the same reason the D.C. Circuit rejected his Take Care Clause argument: "at least without more, [it] assumes the answer to the question whether he acted in an official capacity as office-holder or in a private capacity as office-seeker."  *Blassingame*, 87 F.4th at 24.  An incumbent President seeking re-election could offer recommendations to Congress during the State of the Union and then make the very same recommendations the next day at a campaign rally.  *See id.* Only by looking at context can a court determine whether the remarks are official or unofficial. President Trump "has made no argument as to why [the Ellipse Speech] should be treated more like the State of the Union than [a] campaign [speech].  His invocation of the [Recommendations] Clause thus ultimately does not add anything to his claim of immunity . . . ."  *Id.*

20

The court is also guided by the Supreme Court's view of the Ellipse Speech. The indictment against President Trump alleged that he falsely asserted during the Speech "that certain States wanted to recertify their electoral votes and that the Vice President had the power to send those States' ballots back for recertification." *Trump*, 603 U.S. at 628 (citing Indictment, *United States v. Trump*, No. 23-cr-257-TSC (D.D.C.), ECF No. 1 [hereinafter Indictment], ¶¶ 103–104).[3] The Court did not declare the Ellipse Speech an official act based on that allegation alone. *Id.* at 628–30. Rather, it said that its status may depend on a "factbound analysis" of its "content, form, and context" and left it to the district court to make that determination in the first instance. *Id.* at 629–30. If the Supreme Court did not view the President's reference to the Vice President's purported "power" as rendering the Ellipse Speech categorically official, this court will not either.

### 2. Objective, Context-Specific Assessment

The court now turns to do what *Blassingame* instructed: perform an "appropriately objective, context-specific assessment" of whether the Ellipse Speech "can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Blassingame*, 87 F.4th at 30. Because the burden of proof rests on President Trump, the court begins with the evidence adduced by him. There is not much of it. The court then evaluates the proof supplied by Plaintiffs, which requires a longer discussion.

### a. President Trump's evidence

President Trump submits five objective facts as context: (1) per "normal practice and procedures, White House staff vetted the speech as an official communication"; (2) "White House officials helped plan the President's involvement in the event"; (3) the "[t]iming and location were

---

[3] Paragraph 104 of the indictment quotes verbatim portions of the Ellipse Speech addressing the Vice President's purported authority to return electoral votes to state legislatures. Indictment ¶ 104(a), (b). President Trump cites to these same portions of the Ellipse Speech in his Statement of Undisputed Material Facts. *See* Def.'s Stmt. at 182–83 ¶ 52 (citing Def.'s SJ Mot., Ex. 42, ECF No. 144-47, at 4–5, 17–18).

21

designed to affect public policy and Congressional action"; (4) the content of the Ellipse Speech urged the Vice President and Congress to carry out their duties in a manner President Trump believed was consistent with the Constitution; and (5) the speech was nationally televised.[4] Def.'s SJ Mem. at 20–26. These factual contentions, individually and collectively, are not enough to carry his burden.

*Vetting of the Ellipse Speech.* President Trump's assertion that White House staffers treated the Ellipse Speech as an official act, *id.* at 20–22 (citing Def.'s Stmt. at 186–98 ¶¶ 53–56), rests on the following evidence: (1) a declaration from Senior Advisor to the President, Stephen Miller, Def.'s SJ Mot., Ex. 43, ECF No. 144-48 [hereinafter Miller Decl.], and his deposition testimony in this matter, Def.'s SJ Mot., Ex. 44, ECF No. 144-49, at 64:1–71:24; (2) the absence of a Hatch Act warning on the draft of the Speech circulated internally for review, Def.'s SJ Mot., Exs. 44a & 44b, ECF Nos. 144-50 & 144-51; and (3) that among the distribution recipients was Patrick Philbin, a Deputy White House Counsel who did not suggest that the Ellipse Speech should be treated as subject to the Hatch Act, *id.*; Def.'s Stmt. at 198 ¶ 56.

This record evidence does not establish as an undisputed fact that "White House staff vetted the speech as an official communication." That fact is very much in dispute.

The court disregards portions of Miller's declaration that contain legal arguments or his legal opinion of the Ellipse Speech's contents. *See, e.g.*, Miller Decl. ¶¶ 6–8, 11–15 ("In my view, all of these aspects of the speech constituted official conduct.").[5] These are not appropriate

---

[4] President Trump also adds to this list a legal assertion that the court "may not consider a President's allegedly improper motives or allegations of illegality." Def.'s SJ Mem. at 26. The court agrees and has not done so.

[5] At least one of Miller's statements conflicts with the law. He says that "[w]hether an activity or speech was considered 'official' depended more on the content and objectives of the President's remarks or appearance, rather than the nature of the event or its location." Miller Decl. ¶ 6. Miller seems to attribute this understanding to advice from the White House Counsel's Office. *See id.* ¶¶ 5–6. Regardless of the source, the law says just the opposite. *See, e.g.*, *Trump*, 603 U.S. at 618 ("[C]ourts may not inquire into the President's motives."); *Blassingame*, 87 F.4th at 22 ("[T]he crux of the inquiry . . . concerns the context in which the President speaks, not what precisely he says or whether it might advance his re-election prospects.").

considerations.  *See Davis v. City of Little Rock*, 122 F.4th 326, 332 (8th Cir. 2024) ("On summary judgment, courts 'consider only admissible evidence and disregard portions of various affidavits and depositions that . . . purport to state legal conclusions as fact.'" (alteration in original) (citation omitted)); *cf. United States v. BCCI Holdings (Lux.), S.A.*, 977 F. Supp. 1, 6 (D.D.C. 1997) ("[L]egal conclusions 'cloaked' as facts are not sufficient to create a genuine issue of material fact.").

Miller does submit one statement that resembles an objective fact: "[B]ecause of the official character of the January 6, 2021 speech, the electronic trail of the final versions of the speech were routed through the White House system and subjected to the protocols and reviews of other official statements or speeches of President Trump."  *Id.* ¶ 16.  But this causal assertion ("because of the official character") conflicts with his own statements and other evidence.  In the same declaration, Miller said that "*all* speeches regardless of whether they were 'official' or 'unofficial'" were reviewed by "the White House Counsel's Office and other White House staff." *Id.* ¶ 8 (emphasis added).  Other witnesses confirmed that process.  Ross Worthington, who drafted the Ellipse Speech, and Robert Gabriel, Miller's assistant, testified before the U.S. House Select Committee to Investigate the January 6 Attack on the U.S. Capitol ("Select Committee"). Worthington stated that "any speech, whether it's political or official," "would generally be moved up to the White House systems."  Pls.' SJ Opp'n, Ex. 58, ECF No. 152-11 [hereinafter Worthington Dep.], at 16:22–17:5.  Gabriel confirmed that even "a political speech" would "go through an official White House process."  *Id.*, Ex. 121, ECF No. 152-74 [hereinafter Gabriel Dep.], at 18:1-11.[6]  Thus, the fact that a draft of the Ellipse Speech was routed through official White House

---

[6] President Trump has objected on hearsay grounds to the admissibility of testimony before the Select Committee. *See* Notice of Position on Evidentiary Disputes, ECF No. 212, at 5.  But President Trump concedes that, at summary judgment, the court may consider evidence that is "admissible or can be converted into admissible form."  *Id.* at 3.

23

channels, including to Philbin, is not by itself objective evidence that staff treated it as an official act of the President.  Nor has President Trump presented any evidence that Philbin's silence upon receiving draft remarks customarily would have been understood by others as conveying his legal opinion that the remarks were official.

Further, there is evidence tending to show that President Trump's speechwriters deemed the Ellipse Speech to be *un*official and handled it as such.  The White House speechwriting team "drafted both official speeches and political/campaign speeches."  Def.'s CounterStmt. at 417 ¶ 314.  "[U]nofficial speeches were 'generally' drafted on personal devices."  *Id.* at 410 ¶ 300 (Def.'s Resp.).  And Google Docs "was 'generally' used for the drafting of political speeches." *Id.* at 412 ¶ 301 (Def.'s Resp.).  Consistent with these protocols, Worthington worked on an "early draft" of the Ellipse Speech on his personal device using Google Docs.  *Id.* at 420–21 ¶¶ 320, 322. Gabriel told the Select Committee that he and Worthington had used "their personal [email] accounts" in connection with the Ellipse Speech.  *Id.* ¶ 321.  This evidence creates a genuine dispute of fact as to President Trump's contention that, per "normal practice and procedures, White House staff vetted the speech as an official communication."[7]

The absence of a Hatch Act warning on the internal White House circulation of the Ellipse Speech is not disputed, but what meaning to ascribe to that fact is.  Def.'s Stmt. at 192 ¶ 54. President Trump points out that, two days before the Ellipse Speech, he delivered a rally speech in Dalton, Georgia for a political event.  *Id.* at 197 ¶ 55.  The internal circulation of the Dalton draft

---

Testimony before the Select Committee easily can be "converted into admissible form" by calling the witness to testify at trial.  Contrary to President Trump's contention, there is no requirement that a party attempt first to depose the witness before their testimony from another proceeding may be considered on summary judgment. *See id.* at 5.  The court therefore will consider any testimony submitted of a witness who appeared before the Select Committee.

[7] Worthington's and Gabriel's use of personal devices and email accounts is consistent with their subjective beliefs that the purpose of the Ellipse Speech was "political."  Worthington Dep. at 115:15-18; Gabriel Dep. at 38:8-11.

remarks bore a prominent Hatch Act warning.[8]  *Id.*; *see also* Def.'s SJ Mot., Ex. 44b, ECF No. 144-51.  President Trump infers from the absence of that same warning on the internally circulated draft Ellipse Speech that staff deemed it to be official.  *See* Def.'s SJ Mem. at 21–22.  But there is evidence to the contrary.  In testimony before the Select Committee, Miller likened the Ellipse Speech to the "one in Georgia."  Pls.' SJ Opp'n, Ex. 57, ECF No. 152-10, at 131:7-12 (stating the Ellipse Speech was a "rally" and "we had already done one in Georgia").  All agree that the Dalton speech was unofficial political activity.  *See* Def.'s CounterStmt. at 54 ¶ 41 (conceding the Dalton event was "political rally").  If, as Miller testified, the Ellipse Speech and the Dalton remarks were viewed in the same way, then the absence of a Hatch Act warning on the Ellipse Speech's distribution does not establish that staff viewed the Speech as official.

Accordingly, President Trump's evidence does not establish as an undisputed fact that White House staff treated the Ellipse Speech as an official Presidential act.

*Planning of the Ellipse Speech*.  President Trump asserts that "White House personnel were involved in the logistics and planning of [the] Ellipse Speech."  Def.'s SJ Mem. at 22 (citing Def.'s Stmt. at 105–07, 154–56 ¶¶ 34–36, 41, 42).  That is a gross exaggeration.  The record firmly establishes that the White House's participation was negligible.  *See Trump*, 603 U.S. at 630

---

[8] That warning was as follows:

> **NOTE: HATCH ACT RESTRICTIONS APPLY.** This speech will be delivered at a political event and thus Hatch Act restrictions apply.  Accordingly, per instruction from the White House Counsel's Office, review for issues beyond accuracy (such as for political consistency or effective messaging) should not be performed by noncommissioned officers or using official equipment and office space.  Commissioned officers should not use official equipment to review for issues beyond accuracy (such as for political consistency or effective messaging). If you have any questions pertaining to Hatch Act restrictions with respect to review of these remarks, please be sure to consult with your designated ethics officer.

Def.'s Stmt. at 197 ¶ 55.

(stating that "who was involved . . . in organizing the rally[] could be relevant to classification" of the Ellipse Speech).

President Trump identifies only *one* meaningful contribution made by any White House employee to organizing or planning the Save America Rally ("Rally") on January 6. *See* Def.'s SJ Mem. at 22 (citing Def.'s Stmt. at 105–07 ¶¶ 34–36). That came from Tony Ornato, the White House Deputy Chief of Staff. Days before the event, Ornato sent an email to the Secretary of the Interior, David Bernhardt, seeking a waiver of a usual National Park Service restriction that prohibits the placement of any event structures within the 150-foot-wide vista sight line from the White House to the Jefferson Memorial. Def.'s Stmt. at 105–07 ¶¶ 34–36 (citing Def.'s SJ Mot., Exs. 22 & 23, ECF Nos. 144-27 & 144-28). Ornato did so at the request of the event "host," who was unable to secure a waiver on their own. Def.'s SJ Mot., Ex. 22, ECF No. 144-27 (noting that the event organizer was "trying to get a center stage position" and forwarding a "brief synopsis from the host," and indicating that the National Park Service had declined to allow the stage to be set at the center of the Ellipse). Without the waiver, the event stage would have been 30 feet off-center of the White House. *Id.* Ornato wrote that centering the stage to position it directly in front of the White House was the "desire of the White House and the President as well." *Id.* The National Park Service granted the requested waiver. Def.'s SJ Mot., Ex. 23, ECF No. 144-28. This is the only evidence of any material White House involvement in planning the event.[9]

---

[9] President Trump cites a handful of other exhibits, but none help him. *See* Def.'s SJ Mem. at 22 (citing Def.'s Stmt. at 154–56 ¶¶ 41–42, in turn citing additional Exhibits 24, 29, 30, 30a, 31–33). Exhibit 24 is an email request directed to two White House staffers from former Campaign official Caroline Wren asking that the President meet with two people on January 6, Texas Attorney General Ken Paxton and the private donor who largely underwrote the Rally's expenses, Julie Fancelli. Def.'s SJ Mot., Ex. 24, ECF No. 144-29. President Trump has not included an exhibit showing whether the White House ever responded to this request. Exhibit 30 is an email from a White House staffer to two private individuals inquiring whether they wished to have VIP seating for the Rally; when those individuals said they would, the staffer said he would "forward [their] names to those keeping the list." Def.'s SJ Mot., Ex. 30, ECF No. 144-35. President Trump does not identify who kept the list. Exhibit 31 is a "Guest Guidance Memo" for "March to Save America Attendees," whose authorship is unidentified but lists Wren, among others, as points of

26

As discussed in the next subsection, nearly all the planning and preparation for the Rally was done by non-government actors. There was hardly any contribution by White House or other executive branch personnel. President Trump's assertion that "White House officials helped plan the President's involvement in the event" therefore is not supported by the record evidence.

*The Event's Time and Location.* According to President Trump, "the date, location, and timing of the Ellipse Speech confirms" that it was an official event. Def.'s SJ Mem. at 23 (citing Def.'s Stmt. at 163 ¶ 44). He notes that January 6 was the day a Joint Session of Congress convened to count and certify States' electoral votes, and the President spoke before the Joint Session convened. *Id.* And, he adds, "the iconic backdrop of the White House . . . was itself a significant indicator of its official nature." *Id.* at 24.

These might be persuasive points if the Executive Branch had any role in selecting the "date, location, and timing" of the event. But it did not. The event organizer, Women for America First (WAF), conceived the idea of holding a rally on January 6, even before President Trump's "Be there, will be wild" tweet on December 19. Def.'s SJ Mot., Ex. 19, ECF No. 144-23

---

contact. Def.'s SJ Mot., Ex. 31, ECF No. 144-36. Exhibit 32 is a document titled "Participant Instructions," whose authorship also is not identified. Def.'s SJ Mot., Ex. 32, ECF No. 144-37. Exhibit 33 is an email from one event organizer, Megan Powers, to another, Justin Caporale, copying one White House staff member; the White House staffer does not participate in the discussion. Def.'s SJ Mot., Ex. 33, ECF No. 144-38. Finally, President Trump cited to Exhibit 30a, but did not attach it.

President Trump argues that these exhibits demonstrate that organizers outside the White House used non-campaign emails to organize the rally and that White House staffers used their official accounts "when planning the Save America Rally." Def.'s Stmt. at 156 ¶ 42. But the fact that Rally organizers used non-campaign emails to communicate does not establish any greater role by the White House in the event. And the fact that White House staffers used their official email addresses is of no moment, because the more significant point is that the emails' substance underscores the White House's lack of involvement in "planning the [Rally]."

Exhibit 29 illustrates this point. *See* Def.'s Stmt. at 154 ¶ 41. The exhibit is an email string between Rally organizers and White House officials discussing a draft "Guidance" to be issued by the Office of the Press Secretary to credentialed media about the Rally. Def.'s SJ Mot., Ex. 29, ECF No. 144-34. The communications show that Rally organizers were responsible for naming the event and that Hannah Salem, a private consultant, would be the media's point of contact for additional information. *Id.* A White House official eventually decided to hold off on issuing the Guidance after "talk[ing] with Hannah." *Id.* President Trump offers no proof that the Office of the Press Secretary ever sent a final Guidance to credentialed media.

27

[hereinafter A. Kremer Dep.], at 47:11–49:11 (deposition of WAF leader, Amy Kremer, before the Select Committee). WAF also decided to hold the Rally on the Ellipse, after it first considered but rejected Freedom Plaza as a location because that venue decreased the likelihood that the President would attend due to security concerns. *See* Def.'s CounterStmt. at 263–65 ¶ 182 (objecting only on rejected admissibility grounds, *see supra* n.6); Pls.' SJ Opp'n, Ex. 72, ECF No. 152-25, at 21:22–28:12 (deposition of Justin Caporale before the Select Committee); Pls.' SJ Opp'n, Ex. 73, ECF No. 152-26, at 94:25–96:17 (deposition of Kylie Kremer before the Select Committee). And WAF initiated the request for an exception to place the event stage in front of the White House. *See* Def.'s SJ Mot., Ex. 23, ECF No. 144-28. And as for the timing of the Ellipse Speech, that, too, was determined by WAF. Def.'s SJ Mot., Ex. 21, ECF No. 144-26 [hereinafter Rally Permit], at 3 (rally permit indicating speeches would begin at 9:00 a.m.). Thus, the undisputed facts establish that the White House was not involved in setting the "date, location, and timing of the Ellipse Speech." Def.'s SJ Mem. at 23.

*Content of the Ellipse Speech*. The court already has discussed at length what role the Ellipse Speech's content plays under the *Blassingame* framework. That does not need to be repeated. But President Trump also argues that the organizing purpose for the Save America Rally "was not to promote President Trump's re-election or to advance any private agenda, but rather to petition members of Congress to take action regarding the administration of the November 2020 election and to raise concerns regarding election fraud and election integrity." *Id.* at 24–25 (citing Def.'s Stmt. at 75 ¶ 29). But the testimony that President Trump cites from Amy Kremer, a WAF leader, does not establish that contention as an undisputed fact. She testified that the Rally was conceived to "have our voices heard" and urge Senators not to certify the Electoral College results on January 6. A. Kremer Dep. at 49:16–50:2. WAF knew that some members of the House were

going to "contest the electoral college," but they "needed Senators to be involved." *Id.* at 49:24–50:2. "So our objective was to put pressure on the Senators, because they couldn't do it without the Senators." *Id.* at 50:1-2. Contrary to President Trump's assertion, then, the Rally did have a "private agenda"—WAF's—and that agenda aligned with the President's private interest as office-seeker to retain the Presidency. The President's own evidence does not establish as an undisputed fact that the Rally's purpose "was not to promote [his] re-election or advance any private agenda." Def.'s SJ Mem. at 24.

*Nationally Televised.* According to President Trump, the fact that the Ellipse Speech was a "nationally televised address" means it is "markedly different than purely private conduct, such as writing a letter to a personal friend, or a private conversation." *Id.* at 25. Fair enough. But President Trump cites no evidence to support the contention that the Ellipse Speech was a "nationally televised address." *See id.* at 25–26. He does not, for instance, identify which networks covered the Speech or recount whether it was telecast in its entirety.

But even if the Speech was broadcast nationally, that adds little to the contextual inquiry. An acceptance speech at a party nominating convention is likewise nationally televised, but the D.C. Circuit placed those remarks squarely in the category of unofficial conduct. *See Blassingame*, 87 F.4th at 18. If President Trump means to suggest that the Ellipse Speech was more akin to the State of the Union than a party acceptance speech, he has provided little evidence in support.

\*   \*   \*

In sum, the context-specific evidence cited by President Trump does not establish based on undisputed facts that the Ellipse Speech can reasonably be understood as falling within the outer perimeter of his official duties. There is a genuine dispute as to whether the Speech was drafted and vetted consistent with the protocols of an official act during the President's first term—in fact,

29

113

there is compelling evidence to the contrary.  So, too, as to the Rally's purpose.  There is no dispute, however, as to other contextual facts.  Other than securing an exception for stage placement, White House personnel played no role in the Rally's planning and execution.  The event organizer, WAF, determined the date, location, and timing of the Rally and the Speech.  And the claimed national broadcast of the Speech finds no record support and regardless is a fact of little probative value.

That is the sum and substance of President Trump's "objective, context-specific" proof. *Blassingame*, 87 F.4th at 30.  It does not establish that the Ellipse Speech was "clothed in the trappings of an official function." *Id.* at 21.  Indeed, the only uncontradicted evidence he presents points in the other direction: that the Ellipse Speech was an unofficial "political event[]." *Id.* at 32 (Katsas, J., concurring).  If the court were to assess only President Trump's proof, it would conclude that he has not carried his burden at summary judgment to show that the Speech "can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Id.* at 30 (majority opinion).

But Plaintiffs have offered a raft of their own evidence.  The court must evaluate that evidence, too.  It is to that task the court now turns.

b.      Plaintiffs' evidence

Plaintiffs have proffered over 350 undisputed facts and submitted 185 exhibits to support their contentions. *See generally* Pls.' SJ Opp'n, Exs.; Def.'s CounterStmt.  The court obviously cannot consider each individually here.  So, it organizes them into categories that generally correspond to the contextual considerations identified in *Blassingame* or *Trump*.[10]  Recall, the

---

[10] President Trump routinely raises boilerplate objections, like hearsay, to evidence Plaintiffs have offered to support their asserted undisputed facts. *See generally* Def.'s CounterStmt.  The court cannot possibly separately address each objection.  Suffice it to say that if the court cites to a proposed undisputed fact to which President Trump has made evidentiary objections, the court rejects them.

court in *Blassingame* said that if an activity "is organized and promoted by official White House channels and government officials and funded with public resources, it is more likely an official presidential undertaking than if it is organized, promoted, and funded by campaign channels, personnel, and resources." 87 F.4th at 21. The Supreme Court also recognized that "who was involved . . . in organizing" could be relevant to how an activity or communication is classified. 603 U.S. at 630. The court considers the following categories of evidence, which *Blassingame* identified when analyzing the Salute to America event: (1) general event organization; (2) rally funding; (3) pre-rally promotion; (4) post-rally promotion; and (5) rally attendees and participants. *See* 87 F.4th at 22–23. The court then separately addresses evidence relating to the campaign entity Donald J. Trump for President, Inc.'s ("Campaign") involvement in organization and planning. The facts that emerge are largely undisputed.

*General Event Organization.* The court starts with high-level facts about the Save America Rally. A private organization, WAF, conceived of and was primarily responsible for organizing and planning the event. Def.'s CounterStmt. at 196–98 ¶¶ 124–125, 127, 129. WAF was founded by Amy and Kylie Kremer to focus on "pushing the America First agenda." *Id.* at 194 ¶ 123; *see also* Pls.' SJ Opp'n, Ex. 203, ECF No. 152-156, 6:11-23.[11] WAF employed at least two private companies—Event Strategies, Inc., and Salem Strategies, LLC—to carry out event organizing and planning. Def.'s CounterStmt. at 246 ¶ 167, 270 ¶ 188, 374–75 ¶ 255.

WAF secured the permit for the Rally. *Id.* at 263 ¶ 181, 266 ¶ 184; *see also* Rally Permit at 1. The Permit identifies 12 people as "event sponsor(s), coordinator(s), staff assistants and emergency response/security team supervisors who will be on site during the event." Rally Permit

---

[11] In response to this fact assertion, President Trump argues that "[t]here is no indication from [Amy Kremer's] statement that an 'America First agenda' is synonymous with 'President Trump.'" Def.'s CounterStmt. at 195 ¶ 123. President Trump does not say what he means by "synonymous." There can be no doubt, however, from Amy Kremer's testimony that WAF was founded to promote a policy-agenda aligned with the President's own.

31

115

at 32–33.  Eight were either former employees of the Campaign or consultants who received sizable payments.  Def.'s CounterStmt. at 267–79 ¶¶ 186–195, 283 ¶ 199.[12]  None were executive branch employees during the weeks leading up to the Rally.  WAF also helped to coordinate logistics, including furnishing marshals and volunteers for crowd control and safety.  *Id.* at 370 ¶ 253.  A "Guidance Memo" addressed to Rally attendees identified four people to whom questions could be directed.  *Id.* at 388 ¶ 262.  None were executive branch employees.  *Id.*

*Rally Funding.*  The Rally was funded entirely by private donations.  *Id.* at 286 ¶ 203.  Julie Fancelli was the primary contributor.  She "personally funded" Rally expenses totaling over $2.1 million.  *Id.* at 258–60 ¶¶ 177–178, 286 ¶ 203; Def.'s Stmt. at 110 ¶ 37.  She along with her family had donated over $1.5 million to the "Trump Victory campaign."  Def.'s CounterStmt. at 258–59 ¶ 177.

*Pre-Rally Promotion.*  The first Trump White House "regularly posted on the White House website, www.whitehouse.gov, news items about," among other things, "Presidential speeches, statements, [and] remarks."  *Id.* at 414 ¶ 304.  The White House did not, however, announce the Rally on either its website or official Twitter accounts, @whitehouse and @potus.  *Id.* at 368 ¶ 251, 421–23 ¶¶ 323, 327–328.

President Trump himself promoted January 6 events generally and the Rally specifically on his personal @realDonaldTrump Twitter account.  *Id.* at 322–28 ¶¶ 225–229, 354 ¶ 241.  In one such tweet, President Trump referred to the Save America Rally—though not directly by name—as "The BIG Protest Rally," identified its date and time, and signed off with "StopTheSteal!"  *Id.* at 324 ¶ 227.

---

[12] The court does not include Hannah Salem or William Wilson, as both received only modest payments from the Campaign.  *See* Def.'s CounterStmt. ¶ 199.

32

116

Rally promotion occurred exclusively through private channels, including the Campaign's. *See id.* at 9 ¶ 7 (identifying name of campaign entity). For instance, the Campaign posted a video on its YouTube account @DonaldJTrumpforPresident on January 2, encouraging people to "JOIN THE MARCH" and identifying the Rally's time and location. *Id.* at 328 ¶ 230. The next day, the Campaign's official Twitter account, @TeamTrump, circulated a video of an interview of Kylie Kremer promoting the Rally, which President Trump (from his personal account) and Jason Miller, a Senior Advisor to the Campaign, retweeted. *Id.* at 352–56 ¶¶ 240–242. WAF also promoted the Rally through at least two news outlets. *Id.* at 316–17 ¶ 221 (Newsmax affiliate); *id.* at 351 ¶ 239 (interview on One America News).

*Post-Rally Promotion.* As noted, the White House website "regularly" posted news items about President Trump's speeches and remarks on its official website. *Id.* at 414 ¶ 304; *see also id.* ¶ 305. The archived Trump White House website does not, however, contain video or a transcript of the President's Ellipse Speech. *Id.* at 422 ¶ 325. Nor does the Trump White House's YouTube video archive. *Id.* ¶ 326. By contrast, the White House did post the President's remarks at the Salute to America event on the White House official website. *Id.* at 416 ¶ 310.

As for the Campaign, it posted on its Twitter and Instagram accounts snippets of the Ellipse Speech from Fox News and images of the Rally. *Id.* at 363–68 ¶¶ 247–250.

*Rally Attendees and Participants.* *Blassingame* suggests that the identities of event attendees or participants is a relevant contextual consideration. *See* 87 F.4th at 22–23. For the Save America Rally, the speaker line-up was determined by President Trump and private individuals. Def.'s CounterStmt. at 388–94 ¶¶ 263–270. No White House official or staff had a role in that decision. *See id.* Of note, on January 4, 2021, President Trump met with a former senior campaign advisor, Katrina Pierson, at the White House to discuss the speaker list. *Id.* at

33

392–93 ¶ 267. At the time, Pierson was only four days removed from her role with the Campaign. *Id.* at 222 ¶ 145.

The final speaker list included one government official: Mo Brooks, a congressman from Alabama. *See Thompson*, 590 F. Supp. 3d at 66. President Trump has not identified any other attendee who was a government official. The other speakers included three family members (Donald Trump, Jr., Eric Trump, and Lara Trump) and three others who either had advised or represented the Campaign (John Eastman, Rudolph Giuliani, and Kimberly Guilfoyle). Def.'s CounterStmt. at 394–96 ¶¶ 271–281; *see also id.* at 209 ¶ 136 (admitting that Guilfoyle "worked for the Trump Campaign and the Trump Victory Fund Committee"). Two were paid for their appearances by a private source: Donald Trump, Jr. and Guilfoyle each received a $30,000 speaker fee from Turning Point Action, an entity founded by Charlie Kirk. *Id.* at 399–400 ¶ 286.

Notable among the speakers was John Eastman. Eastman was President Trump's counsel of record in President Trump's effort to intervene "in his personal capacity as candidate for re-election to the office of President" in a lawsuit brought by Texas before the Supreme Court to challenge election administration by various States. *Id.* at 175–76 ¶¶ 109–110; Pls.' SJ Opp'n, Ex. 200, ECF No. 152-153.

Members of the public could attend and watch the Rally in person but not necessarily from the Ellipse. The event setup included a cordoned-off security perimeter on the Ellipse, which contained designated "VIP Seating" and "Guest Seating" areas in front of the stage. Rally Permit at 23–24 (event diagrams); *id.* at 33 (identifying a "VIP Advisor" and "VIP Lead"). The record does not reveal who would have attended the Rally as a "VIP" or "Guest". Rally attendees who did not have special access likely would have viewed it from the National Mall.

34

*Campaign Involvement.*  Much of the parties' back-and-forth concerns the extent of the Campaign's involvement in organizing and planning the Rally.  President Trump's answer is none: the Campaign had no role in "permitting, fundraising, promoting, or executing" the event. *See* Def.'s SJ Reply at 17.  Plaintiffs, on the other hand, go to great lengths to tie the Campaign to the Rally.  They say that the "Rally was planned, funded, promoted, organized, and executed by the Campaign, Campaign affiliates, and other private individuals dedicated to keeping Trump in office."  Pls.' SJ Opp'n at 4.  The undisputed facts paint a more nuanced picture.

Some facts are not contested.  The Campaign did not lead the organizing and planning of the Rally.  That was done by WAF and private event vendors.  Campaign funds, except as discussed below, were not used to underwrite the Rally.  Funding for the Rally primarily came from a private individual who (along with her family) was a large-dollar donor to the re-election efforts.  And the Campaign promoted the Rally through its social media channels.  *See supra* Section III.A.2.b.

Beyond these facts, there are others that establish some involvement by the Campaign in Rally funding, planning, and organization.  Still other factual assertions are either not borne out by the evidence or disputed.

Rally Funding (Campaign).  The Campaign provided some funding for the Rally. Def.'s CounterStmt. at 286–88 ¶ 204.  The basis for this fact comes from the Campaign's Answer to the Amended Complaint in *Smith v. Trump*, No. 21-cv-2265-APM (D.D.C.) [hereinafter *Smith Docket*].  Plaintiffs in *Smith* asserted as one of several fact allegations in one paragraph that, "Leading up to the January 6 rally, TRUMP FOR PRESIDENT made payments to Event Strategies Inc., an event staging company that was listed on the permit for the January 6 rally."  Am. Compl., *Smith* Docket, ECF No. 89 [hereinafter *Smith* Am. Compl.], ¶ 84.  The Campaign answered: "Admitted only that the Trump Campaign made payments to Event Strategies Inc for equipment

35

119

rental in connection with a rally on or near January 6, 2021. The Entity Defendants deny the remaining allegations contained in this paragraph." *See* Make America Great PAC & Donald J. Trump for President, Inc.'s Answer to Am. Compl., *Smith* Docket, ECF No. 187, ¶ 84.

Plaintiffs contend that this admission establishes that the Campaign paid Event Strategies, the Rally's "production vendor," *see* Rally Permit at 31, for equipment rental costs associated with the Rally. Def.'s CounterStmt. at 286–87 ¶ 204. President Trump challenges this fact. He argues that the *Smith* Answer, as drafted, is ambiguous as to whether the Campaign payment was for Rally equipment rental or something else. *Id.* at 288–89 ¶ 204 (Def.'s Resp.).[13]

President Trump's position is untenable. The *Smith* Amended Complaint equates the "January 6 rally" with the Save America Rally. *See, e.g.*, *Smith* Am. Compl. ¶¶ 83, 87, 114–115, 144. The Campaign's counsel would have understood it that way given that the pleading's description of the "January 6 rally" matches the Save America Rally. Thus, the only logical understanding of the allegation and response is that the Campaign paid Event Strategies some amount—how much is not specified—towards staging the Rally. Also, President Trump submits no evidence to rebut or clarify the response. *See id.* Based on the evidence presented, then, the fact is undisputed.

Plaintiffs further maintain that "the Campaign directly compensated some organizers for their work in connection with the Rally." Pls.' SJ Opp'n at 4 (citing Def's. CounterStmt. ¶¶ 134–135, 139–144, 140, 152–157, 195–197, 204–209). That assertion lacks convincing evidentiary support. For instance, Plaintiffs suggest that the Campaign paid Justin Caporale, who led Event Strategies' efforts, for his Rally-related work. Def.'s CounterStmt. at 206–07 ¶ 135 (citing Pls.' SJ Opp'n, Ex. 94, ECF No. 152-47, at 1); *see also* Rally Permit at 32 (identifying Caporale as the

---

[13] President Trump lodges various objections to the *Smith* Answer excerpt's admissibility. But the response is plainly an admission of a party-opponent—the Campaign—that is not hearsay. *See* Fed. R. Evid. 801(d)(2).

"Project Manager"). But the cited exhibit only shows a pre-Rally payment request from Caporale for services from "12/1 – 12/15." Pls.' SJ Opp'n, Ex. 94, ECF No. 152-47, at 1. Similarly, Plaintiffs assert that the Campaign approved payments to "J. Karwacki and R. McEnany" "in connection with the Rally." Def.'s CounterStmt. at 218 ¶ 143. But the invoices submitted by Karwacki and McEnany do not, at least on their face, explicitly reference the Save America Rally. Def.'s SJ Reply, Exs. 242 & 243, ECF Nos. 174-9 & 174-10.[14]

Rally Organization and Planning (Campaign). The Campaign, acting through its then agents and employees, played a modest role in organizing and planning the Rally. Plaintiffs attempt to argue otherwise. Pls.' SJ Opp'n at 4–5, 32–33. Their position, however, relies largely on the roles played by multiple *former* campaign employees—"campaign affiliates," as Plaintiffs call them—not on persons then employed or hired by the Campaign. *Id.* at 32 (identifying Caporale, Megan Powers, Caroline Wren, and Guilfoyle); *see also* Def.'s SJ Mot., Ex. 28, ECF No. 144-33 (listing paid Campaign staff after December 31, 2020).

The one arguable exception is Pierson. She remained affiliated with the Campaign through December 31, 2020. Def.'s CounterStmt. at 222–23 ¶¶ 145, 147. Her involvement in Rally organizing began by acting as a go-between for the Kremers and other persons interested in funding a January 6 event. Pls.' SJ Opp'n, Ex. 86, ECF No. 152-39, at 29:2–33:23. She also kept Mark Meadows, the President's Chief of Staff, and others in the loop about WAF's event planning. *Id.* at 35:20–37:22. Eventually, she joined a text string with the Kremers on December 30, 2020. Pierson told the Kremers, "You guys have full branding rights to the 6th and the only brand w/ POTUS. I made sure no one else will have the stage branding w/POTUS." Pls.' SJ Opp'n, Ex. 87,

---

[14] The Karwacki invoice, if viewed in the light most favorable to Plaintiffs, does pertain to work on the Save America Rally. His invoice seeks payment for "1/6/2021 rally for Team Trump." Def.'s SJ Reply, Ex. 243, ECF No. 174-10. President Trump offers no reason to believe that the "1/6/2021 rally for Team Trump" was anything other than the Save America Rally.

37

ECF No. 152-40, at 12.  She also explained that she had been in touch with Wren about funding

for the Kremers' event and that Wren "is going to move funds around." *Id.* at 9.  She continued to

help plan the Rally during the first week of January 2021, after her formal role with the Campaign

had concluded.  *See id.* at 1–9 (text messages between Pierson and the Kremers leading up to

January 6).  Significantly, she met with President Trump in the White House on January 4 to

discuss Rally speakers and thereafter worked to finalize the list.  Def.'s CounterStmt. at 392–93

¶¶ 267–269.  President Trump denies that he decided who ultimately would speak at the Rally.  *Id.*

at 393 ¶ 270 (Def.'s Resp.).  Evidently, that determination was made by event organizers.

Rally Promotion (Campaign).  As previously discussed, the Campaign used its

social media channels to tout the Rally and Ellipse Speech, both before and after.  *See supra*

Section III.A.2.b.  There is also some evidence of coordination as to the promotion and

broadcasting of the Ellipse Speech between Caporale and Dan Scavino, the White House Director

of Social Media.  *See* Pls.' SJ Opp'n, Exs. 68 & 69, ECF Nos. 155-10 & 155-11 (email exchange

between Caporale, using his @donaldtrump.com email address, and Dan Scavino, using a

gmail.com address);[15] Def.'s Stmt. at 25 ¶ 5 (Def.'s response identifying Scavino's White House

position).  Scavino, however, was likely serving in an unofficial capacity at the time, given that

Caporale addressed the inquiry to Scavino's personal email account, not an official White House

address, and Scavino used that personal account to respond.

---

[15] President Trump objects to Plaintiffs' use of Exhibits 68 and 69 on various grounds, including late disclosure. *See, e.g.*, Def.'s CounterStmt. at 345–48 ¶ 237 (Def.'s Resp.).  President Trump has not, however, identified any prejudice from the late disclosure.  He also did not seek leave from the court to take additional discovery once Plaintiffs surfaced the exhibits or move to exclude them in a formal motion.

c.        Objective, context-specific assessment

With the undisputed facts now set forth—both as presented by President Trump and Plaintiffs—the court assesses whether he has carried his burden to show he is cloaked with official-acts immunity for the Ellipse Speech.  He has not.

President Trump does not dispute that he remained an office-seeker up to and on January 6. The President's appearance at the Save America Rally, consistent with that status, involved almost no "trappings of an official function."  No public funds were used to put on or promote the event.[16] The White House did not tout the Ellipse Speech through its official website or social media channels beforehand, and it did not publish the President's remarks afterwards.  Nor did any executive branch agency.  Further, the White House played no meaningful role in organizing or planning the Rally.  The only material assistance was to send a single email to the Secretary of the Interior to secure a stage-location waiver from the National Park Service.  Nothing more.  The speaker line-up included only one other public official, Congressman Mo Brooks, and there is no evidence of attendance by any other government official.  In *Blassingame*, the D.C. Circuit observed that the White House's involvement in planning, funding, and promoting the Salute to America event and attendance by multiple government officials "strongly suggest" that the President's speech was "part of an official event."  87 F.4th at 22–23.  Those considerations are entirely missing here.

The opposite is true of private interests closely aligned with President Trump's re-election efforts.  WAF was an entity dedicated to advancing policies that aligned with the President's agenda.  WAF conceived of the Rally, led its organization and planning, secured the permit, and

---

[16] The court excludes any expenditures that were incurred to transport the President to the Ellipse, such as the salaries of Secret Service agents and related costs.  Such public funds would be expended any time the President makes an appearance outside the White House.

39

promoted it in various ways.  It selected the location, date, and time for the Rally.  The Rally's expenses—over $2.1 million—were largely underwritten by one private donor.  That donor and her family contributed over $1.5 million to the President's re-election efforts.  A former finance advisor of the Campaign (Wren) secured that funding.  Nearly all the individuals who ran the nuts and bolts of the operation were former Campaign officials, paid staff, or consultants, who had concluded their formal work for the Campaign within the 60 days prior to January 6.  In fact, on January 4, the President met with Pierson, still a senior campaign advisor only four days prior, in the White House to discuss the Rally's production elements and speaker list.  She—not White House officials—communicated the President's wishes back to Rally organizers.  The Rally speaker lineup featured all private individuals but one who were closely associated with the Campaign.  They included the President's two sons (one of whom was paid a speaker fee with private funds) and daughter-in-law, a lawyer who represented the President in his personal capacity before the Supreme Court, and two well-known campaign surrogates (one of whom was the President's son's then-fiancée and was paid a speaker fee with private funds).  Members of the public could attend the Rally, but only official "Guests" and "VIPs" could enter the permitted event site on the Ellipse.  These objective considerations all point towards classifying the President's participation in the Save America Rally as an unofficial act of an office-seeker.

President Trump attempts to carry his burden of proof by focusing primarily on the content of the Ellipse Speech and secondarily on its context.  *See* Def.'s SJ Mem. at 7–20.  As already discussed, that inverts the *Blassingame* inquiry.  *See supra* Section II.C.1.

When addressing context, President Trump emphasizes the lack of Campaign involvement in the Rally.  Def.'s SJ Reply at 17.  To be sure, the allegation of one Plaintiff that the Rally was "organized and funded by Trump's campaign organization" has not panned out.  *Blassingame*, 87

F.4th at 30 (quoting Plaintiff Swalwell's complaint).  But President Trump's representation to this court that "the January 6th rally is in no way related to the campaign; . . . the campaign doesn't pay [ ] for it; the campaign is not involved with it at all," *id.* (alterations in original) (quoting Hr'g Tr., Jan. 10, 2022, ECF No. 63, at 14:5-8), has not borne out either.  The Campaign admits to funding the cost of rental equipment for the Rally (though President Trump now attempts to distance himself from that concession).  The Campaign promoted the Rally through its social media channels.  And Katrina Pierson, while still associated with the Campaign as a senior advisor, worked with WAF, the Kremers, and other former Campaign staff to organize and plan the Rally. Thus, while it is fair to say that the Rally was not a fully baked campaign event, the Campaign had a hand in it.  And when the contributions of donors and the work of former Campaign officials, staff, and consultants are considered, the Rally bears a far stronger resemblance to campaign re-election activity than an official event.  These objective, undisputed contextual facts support only one reasonable understanding of the Ellipse Speech: that President Trump delivered it as an office-seeker still attempting to secure re-election and not as an incumbent office-holder. *See Blassingame*, 87 F.4th at 17.

President Trump's other arguments to avoid this conclusion are unpersuasive.  He is wrong to suggest that because the Rally was not a fully campaign-sponsored event, his Ellipse Speech therefore must be an official act.  *See* Def.'s SJ Reply at 16–23.  The court in *Blassingame* never said that.  It did not imply that the Ellipse Speech would qualify as unofficial if it could reasonably be understood only as campaign-sponsored.  Rather, the question posed was whether it could "reasonably be understood only as re-election campaign activity." *Blassingame*, 87 F.4th at 22–23.  The court recognized that re-election campaign activity could take place in venues that were not strictly campaign-sponsored, such as a political party's convention, a fundraiser, or "other

41

political events." 87 F.4th at 20; *id.* at 32 (Katsas, J., concurring) ("Campaign or other political events are unofficial . . . ."); *id.* at 33 ("Unless speaking at some specific campaign or political event, he will thus likely be 'clothed in the trappings' of his Office . . . ."). Accordingly, nothing in *Blassingame* forecloses an event that is "organized, promoted, and funded" by "channels, personnel, and resources" other than those of a campaign from being considered unofficial "if it bears the hallmarks of re-election campaign activity." *Id.* at 21 (majority opinion). The Ellipse Speech bore those "hallmarks."

President Trump further argues that the Rally was "in line with the common, well-accepted practice of all presidents . . . [to] use[] private events to further their official duties." Def.'s SJ Mem. at 25. He cites as examples the National Prayer Breakfast and a speech before the Economic Club of Chicago. *Id.* President Trump is certainly correct that Presidents sometimes act in their official capacities at privately sponsored events. But what he misses is that merely categorizing the Rally as a "private event" does not resolve the official-acts issue. The question remains whether at the private event the President is acting as the incumbent office-holder or a candidate for re-election. Also, President Trump offers no comparator. He does not say that he appeared at the National Prayer Breakfast, before the Economic Club of Chicago, or at any other private event when he was a declared candidate for President. And even if there were such events, he offers none that were like the Rally and "clothed in the trappings of an official function." In fact, the most comparable event on this record—the Dalton, Georgia political rally that occurred only two days prior—points the other way. Def.'s CounterStmt. at 54 ¶ 41; *see also id.* at 55 ¶ 42, 433–38 ¶ 336. Merely stating that Presidents have carried out their official duties through "private events" therefore does not satisfy President Trump's burden.

42

126

Before moving on, the court returns to where it began its discussion of the Ellipse Speech: its content. Its content "confirms" what the court's "objective assessment of the context makes evident": President Trump has not shown that the Speech reasonably can be understood as falling within the outer perimeter of his Presidential duties. *See Blassingame*, 87 F.4th at 22. The court provided a lengthy summary of the Speech in *Thompson*, *see* 590 F. Supp. 3d at 113–14, and does not repeat it here. For present purposes, it suffices to quote what the court previously held:

> [W]hile the Speech did touch on matters of public concern (namely President Trump's pledge to work on election laws in a second term), the main thrust of the Speech was not focused on policy or legislation. It was to complain about perceived cases of election fraud that led President-elect Biden to win more votes in closely contested states, to urge members of Congress to object to certain state certifications, and to exhort the Vice President to return those certifications to those states to be recertified. Much like the tweets leading up to the January 6 Rally, the words spoken by the President—without delving into the motivation behind them— reflect an electoral purpose, not speech in furtherance of any official duty.

*Id.* at 83. Or, put another way, "President Trump's alleged words and actions were directed toward promoting his victory in the 2020 presidential election rather than carrying out a designated official duty to confirm the integrity of the electoral process, to ensure faithful execution of the laws, or to fulfill other official purposes." *Blassingame*, 87 F.4th at 35 (Rogers, J., concurring) (citing *Thompson*, 590 F. Supp. 3d at 83). The content of the Ellipse Speech confirms that it is not covered by official-acts immunity.

### B.   President Trump's Outreach to State and Local Officials

The court moves next to those allegations relating to President Trump's direct contacts with state and local officials. According to Plaintiffs, "President Trump tried to persuade state and local officials in Michigan, Pennsylvania, and Georgia to use their offices to change the declared results in their jurisdictions." *Id.* at 7 (majority opinion); *see* Pls.' SJ Opp'n at 22. And, in so doing, he

43

"acted as an office-seeker looking to retain office, not as a President engaged in an official duty." *Id.* at 22.  Devoting only one page of his summary judgment brief to these allegations, *see* Def.'s SJ Mem. at 27–28, President Trump makes almost no effort to show that these acts were taken in his official capacity.

He starts by claiming to have made these contacts pursuant to his constitutional authority to "take Care that the Laws be faithfully executed," U.S. Const. art II, § 3.  Def.'s SJ Mem. at 27.  He also quotes from *Trump*: "[T]he President may speak on and discuss [the fairness and integrity of federal elections] with state officials—even when no specific federal responsibility requires his communication—to encourage them to act in a manner that promotes the President's view of the public good."  *Id.* (quoting *Trump*, 603 U.S. at 627).  And finally, he once again invokes the President's "broad powers to speak on matters of public concern."  *Id.* at 28.

President Trump's near complete failure to offer facts to support these contentions ignores *Trump*.  When the Supreme Court considered these very same allegations, it said that determining whether these acts qualify as official "requires a close analysis of the indictment's extensive and interrelated allegations."  603 U.S. at 628.  It added that "this alleged conduct cannot be neatly categorized as falling within a particular Presidential function.  The necessary analysis is instead fact specific, requiring assessment of numerous alleged interactions with a wide variety of state officials and private persons."  *Id.*

The President has not heeded those words.  Instead of a "close analysis" that is "fact specific," he mainly offers the broad legal arguments noted above.  He does allude to one fact to support his position that these were official communications: "To the extent records exist memorializing or referring to these conversations, they are considered official communications maintained by the National Archives."  Def.'s SJ Mem. at 27.  He cites only a single item of

44

128

evidence to support that contention.  *See id.* (citing Def.'s Stmt. at 68 ¶ 26).  It is an image, maintained by the National Archives, of a single tweet from President Trump's @realDonaldTrump Twitter account dated January 3, 2021, linking a story on breitbart.com titled, "Trump Speaks to State Legislators on Call About Decertifying Election."  Def.'s SJ Mot., Ex. 17, ECF No. 144-21.  That is the only factual context—if it can be called that—he provides regarding his alleged pressuring of state and local officials to reverse the election outcomes in their jurisdictions.  This is plainly insufficient to carry his burden at summary judgment.

Given the complete absence of relevant evidence, Plaintiffs were not required to present any of their own to prevail.  *See Anderson*, 477 U.S. at 250.  But they have.  They have identified the relevant statements President Trump made to state and local officials, to whom he made them, when, and how.  They are:

- A telephone call to a Pennsylvania State Republican Senate Policy committee hearing on November 25, 2020, Def.'s CounterStmt. at 112 ¶ 75;

- A telephone call to Pennsylvania State Senate Majority Leader Jake Corman and Pennsylvania Speaker of the House of Representatives Bryan Cutler in December 2020, *id.* at 114–19 ¶¶ 77–79;[17]

- A telephone call to Republican Board Members of the Wayne County Board of Canvassers after they certified election results on November 17, 2021, with Republican National Committee (RNC) Chair Ronna Romney McDaniel present, *id.* at 122–31 ¶¶ 81–83;[18]

---

[17] The evidence cited in ¶¶ 77 and 79 is Plaintiffs' Exhibit 115, which are excerpts from the Select Committee's final report.  *See* Pls.' SJ Opp'n, Ex. 115, ECF No. 152-68.  President Trump has objected to the Report's admission, *see* Def.'s SJ Obj., but that objection is not well taken here because Plaintiffs also have submitted Cutler's testimony before the Select Committee as proof, *see* Pls.' SJ Opp'n, Ex. 191, ECF No. 152-144.  The court already has rejected President Trump's objections to considering transcripts of testimony before the Select Committee.

[18] Like the call to Corman and Cutler, *see supra* n.17, the proof offered for the call to the two Wayne County Board members is the Select Committee's final report.  As noted, President Trump has objected to its admissibility.  The court does not need to decide whether the Select Committee's final report would be admissible at a trial.  For present purposes, it is sufficient to show that proposed evidence can be presented in a form that would be admissible at a trial. The Select Committee interviewed Board member Monica Palmer and Republican National Committee Chair Ronna Romney McDaniel about the phone call.  *See* Def.'s SJ Obj., Ex. W, ECF No. 173-24, at 315 n.86.  Presumably, either or both could testify at a trial or be deposed with their sworn testimony admissible under Federal Rule of Civil Procedure 32(a)(4).

- A telephone call to Michigan Senate Majority Leader Mike Shirkey and Speaker of the Michigan House of Representatives Lee Chatfield on November 18, 2020, *id.* at 131–32 ¶ 84;

- A meeting in the Oval Office with Michigan Senate Majority Leader Mike Shirkey and Speaker of the Michigan House of Representatives Lee Chatfield on November 20, 2020, *id.* at 131–34 ¶¶ 84–85;[19]

- A telephone call to Georgia Governor Brian Kemp in December 2020, *id.* at 139 ¶ 88; and

- A telephone call to Georgia Secretary of State Brad Raffensperger on January 2, 2021, in the presence of Chief of Staff Mark Meadows and Campaign attorneys Cleta Mitchell, Kurt Hilbert, and Alex Kaufman, *id.* at 142–51 ¶¶ 91–95.

President Trump offers no evidence to contextualize any of these statements. Instead, he claims that Plaintiffs' "own evidence shows that [he] reached out to state election officials in his official capacity to discuss the issue of presidential electors, by including the Chief of Staff on phone calls with state officials and meeting with state officials in the Oval Office." Def.'s SJ Reply at 2; *see also id.* at 14–15. But that contention fails to differentiate among the alleged communications. The evidence establishes that the only call involving the Chief of Staff was with Raffensperger and that the only meeting held in the Oval Office was with Michigan officials. For the others—the calls made to Pennsylvania legislators, the first call to Michigan officials, and the call to Governor Kemp—the record contains no contextual facts. The sole clue about the outreach to the Wayne County Board members is that the RNC Chair was on the call, too. Without objective evidence of context, most of these contacts cannot reasonably be understood as the actions of an office-holder rather than an office-seeker.

That leaves the Oval Office meeting with Michigan state legislators on November 20, 2020, and the call to Raffensperger on January 2, 2021. As to the former, *Blassingame* compels its

---

[19] This fact, too, relies on the Select Committee's final report. Because Shirkey testified before the Select Committee, Def.'s SJ Obj., Ex. W, ECF No. 173-24, at 320 n.159, and Plaintiffs presumably could secure his testimony as discussed in note 18, the court will consider this fact.

46

recognition as an official act.  The sole contextual fact offered is that the meeting took place in the Oval Office.  Def.'s CounterStmt. at 134 ¶ 85.  That is a trapping of the Office.  *See Blassingame*, 87 F.4th at 32–33 (Katsas, J., concurring).  True, President Trump purportedly told Shirkey and Chatfield to "have some backbone and do the right thing," Def.'s CounterStmt. at 134 ¶ 85, but that content is a secondary consideration, *see Blassingame*, 87 F.4th at 22, and can reasonably be construed as official or unofficial, *see Trump*, 603 U.S. at 626–28.  As here, when a "context-specific assessment yields no sufficiently clear answer in either direction," the President must be afforded immunity.  *Blassingame*, 87 F.4th at 21.  President Trump enjoys presidential immunity as to the November 20, 2020 meeting in the Oval Office with Michigan state legislators.

The call to Raffensperger, on the other hand, can only reasonably be viewed as the act of an office-seeker.  President Trump highlights that his Chief of Staff Mark Meadows was on the call.  But the Eleventh Circuit has ruled that Meadows was not acting in an official capacity when speaking to Raffensperger.  *See State v. Meadows*, 88 F.4th 1331, 1349 (11th Cir. 2023).  "Meadows's participation in the call reflected a clear attempt to further Trump's *private litigation interests*: he urged the participants to 'find[] a path forward that's less litigious.'"  *Id.* (alteration in original) (emphasis added).  This court agrees.  The other three participants with the President were all "attorneys for the Trump Campaign, Cleta Mitchell, Kurt Hilbert, and Alex Kaufman."  Def.'s CounterStmt. at 142 ¶ 91.  That context renders the only reasonable understanding of that communication to be re-election activity.  And content confirms that conclusion.  President Trump told the Georgia Secretary of State, among other things, "And the real truth is I won by 400,000 votes.  At least.  That's the real truth.  But we don't need 400,000.  We need less than 2,000."  *Id.* at 146 ¶ 93.  And he continued, "So what are we going to do here folks?  I only need 11,000 votes. . . .  Give me a break.  You know, we have that in spades already."  *Id.* at 148 ¶ 94.  Also, during

47

the call, the President said to his Campaign lawyer Cleta Mitchell, "[A]ll we have to do Cleta is find 11,000-plus votes." *Id.* at 149 ¶ 95. These are the words of an office-seeker imploring a state official to alter the outcome of Georgia's election, not those of an incumbent President acting in his official capacity.

*    *    *

In sum, President Trump has not carried his burden to prove that his various communications with state and local officials, except one, were official acts entitled to immunity. He offered no meaningful evidence of his own on the subject, and Plaintiffs' evidence largely establishes that these acts can only be reasonably construed as those of an office-seeker. The sole exception is the Oval Office meeting with Michigan state legislators. As to that act, the sole contextual fact on this record—its location—counsels in favor of construing it as falling within the outer perimeter of the President's official duties.

## C.    The Twitter Account

Next up are various tweets sent from President Trump's @realDonaldTrump Twitter account. The court counts more than 35 of them.[20] President Trump has described this Twitter account as "personal" or "private" in various judicial fora, including before the Supreme Court. *See, e.g.*, Def.'s CounterStmt. at 17–22 ¶¶ 12–15, 23 ¶ 17. Those admissions are relevant, *see Blassingame*, 87 F.3d at 15–16, but not dispositive. Even Plaintiffs acknowledge that, "[b]ecause some tweets from @realDonaldTrump were official and some were purely private[] campaign activity, the focus must be on the relevant tweets at issue." Pls.' SJ Opp'n at 15 (internal citation omitted). That is a wise concession. In *Trump*, the Court said that "[w]hether the Tweets . . . involve official conduct may depend on the content and context *of each*." 603 U.S. at 630

---

[20] *See* Def.'s CounterStmt. ¶¶ 1, 21–23, 27–40, 45, 47–49, 90, 225–29, 238, 241, 243–45, 347, 349, 351.

(emphasis added).  Among the contextual facts the Court identified as bearing on the issue are "what else was said contemporaneous to the excerpted communications" and "who was involved in transmitting the electronic communications." *Id.*  Notably, the Court seemed to contemplate that the trial court's task would not be to decide whether tweeting was categorically an official act, but to make that inquiry on a tweet-by-tweet basis.  *See id.*

President Trump largely ignores the "objective," "factbound analysis" that the Supreme Court held might be needed to separate official from unofficial tweets.  *See* Def.'s SJ Mem. at 28–36.  He presents no evidence as to "what else was said contemporaneous" to a particular tweet, who drafted it, or who was involved in its transmission.  *See Trump*, 603 U.S. at 630.  He also offers no other contextual proof that could be relevant, such as his location at the time of the tweet, who else was present (even if not involved in its transmission), or the acts he performed contemporaneously.  *See* Def.'s SJ Mem. at 28–36; Def.'s Stmt. at 1–73 ¶¶ 1–27.  And he makes no effort to delve into any particular tweet's content to support its classification as official.  *See* Def.'s SJ Mem. at 28–36; Def.'s Stmt. at 1–73 ¶¶ 1–27.

Instead, as he did with the Ellipse Speech, President Trump elides the proper legal framework.  He invokes the two-part test that the Supreme Court announced in *Lindke v. Freed* to determine whether a state official's social media message constitutes state action under Section 1983.  *See* Def.'s SJ Mem. at 28–34 (citing *Lindke*, 601 U.S. 187 (2024)).  There, the Court held that "a public official's social-media activity constitutes state action under § 1983 only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media."  601 U.S. at 198.  President Trump claims that all his tweets satisfy the second element because he sent them in furtherance of his responsibilities to "tak[e] care that the laws are faithfully executed," to "urg[e] Congress and the states to take action

49

on matters of public concern," and to "'engage' with the public on matters of public concern." Def.'s SJ Mem. at 33. This argument fails for the reasons already discussed: it ignores context and "assumes the answer to the question" the court is asked to decide. *Blassingame*, 87 F.4th at 24; *see supra* Section III.A.1. His approach also does not recognize the Court's admonition in *Lindke* that "[h]ard-to-classify cases require awareness that an official does not necessarily purport to exercise his authority simply by posting about a matter within it" and that "many public officials possess a broad portfolio of governmental authority that includes routine interaction with the public, and it may not be easy to discern a boundary between their public and private lives." 601 U.S. at 203. Ultimately, *Lindke* requires the same kind of fact-intensive inquiry as *Trump* and *Blassingame*: "Categorizing posts that appear on an ambiguous [social media] page . . . is a fact-specific undertaking in which the post's content and function are the most important considerations." *Id.* President Trump mostly eschews this "fact-specific undertaking." *See id.* ("And when there is doubt, additional factors might cast light—for example, an official who uses government staff to make a post will be hard pressed to deny that he was conducting government business.").

The court uses the qualifier "mostly" because President Trump does offer eight "facts" that he says show that his "use of his Twitter account was official conduct." Def.'s SJ Mem. at 34. Those facts are: (1) he labeled the account with his official title, "The 45th President of the United States"; (2) members of his administration described the use of the account as "official"; (3) the White House Press Secretary announced that communications on his Twitter account should be considered "official statement[s] by the President of the United States," and he operated the account with the help of the White House's Director of Social Media, Dan Scavino; (4) he routinely used the account for official communications, and federal agencies monitored his account for such

messages; (5) the National Archives preserved the tweets, including (6) those relating to the Save America Rally; (7) a "then-in-force" Second Circuit decision *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2019), ruled that "the President . . . acts in an official capacity when he tweets"; and (8) the Trump Presidential Library cites to @realDonaldTrump as the official Twitter account of the Trump presidency. *See id.* at 34–36.

But none of these "facts" help to determine whether any particular tweet was an official act. President Trump does not dispute that he sometimes used @realDonaldTrump for unofficial messages. *See* Def.'s SJ Reply at 23–24. Nor could he. After all, he represented to the Supreme Court that "[s]ince his inauguration, President Trump has continued to use the account for . . . personal purposes," in addition to official ones. Def.'s CounterStmt. at 21 ¶ 15. So, the fact that the account bears his official title and that he sometimes used it for official purposes says little about the status of any individual tweet. The same is true of White House staff pronouncements. None are specific to the tweets cited by Plaintiffs. The National Archives' collection of the tweets carries no weight, as there is no evidence that the Archives sought to separate official from unofficial messages as part of its archival function. Whatever persuasive force the *Knight* decision may have had has evaporated, because the Supreme Court vacated that judgment. *See Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021).[21] And the views of the President's Library are of no significance.

The sole fact of some relevance is that President Trump operated the account with the help of Scavino, the White House Social Media Director.[22] *See Trump*, 603 U.S. at 630; *Lindke*,

---

[21] President Trump concedes that the statements from *Knight* are "not being offered for the truth of the matter asserted therein and [are] only being offered to provide context as to how the @realDonaldTrump account was treated throughout the term of the first Trump Administration and was viewed and understood by those using it during the relevant times, including November of 2020 through January of 2021." Def.'s Stmt. at 23 ¶ 5 (Def.'s Resp.).

[22] President Trump cites only *Knight* for this fact proposition, *see* Def.'s Stmt. at 21 ¶ 5, and Plaintiffs object to the court's consideration of it as inadmissible, *see id.* (Pls.' Resp.). The court nevertheless considers the fact to be true, as it presumes that Scavino would confirm it if called to testify.

601 U.S. at 203.  But that general statement has little probative value because it is not specific to any of the dozens of tweets identified by Plaintiffs.  Because the court's undertaking here is "fact-specific," *Lindke*, 601 U.S. at 203, it cannot presume that Scavino participated in transmitting any specific tweet, let alone all of them, *see Trump*, 601 U.S. at 630.

President Trump bears the burden to show, through contextual evidence, that a particular tweet can reasonably be construed as official conduct.  Because he has essentially offered no such evidence, he has not carried his burden as to any tweet.

Content does not help him either, for the most part.  Some tweets are plainly the unofficial acts of an office-seeker.  Such communications include: (1) his announcement that he would be running for re-election, Def.'s CounterStmt. at 1 ¶ 1; (2) his commentary on the election results and the belief that he prevailed despite vote counts, *id.* at 39 ¶ 30, 42–43 ¶ 32, 45–46 ¶¶ 34–35; (3) his describing steps that he and others would be taking to challenge the results, *id.* at 40–41 ¶ 31, 43–44 ¶ 33, 47–52 ¶¶ 36–39; and (4) his urging of state officials to take action that would help him win, *id.* at 141 ¶ 90 ("If [two state governors] were with us, we would have already won both Arizona and Georgia.").

President Trump's "contemporaneous" tweets on January 5 and 6, *see Trump*, 603 U.S. at 630, about what the Vice President needed to do during the Joint Session also were unofficial. "The presidency itself has no institutional interest in who will occupy the office next. . . . Rather, an incumbent President's interests in winning re-election have the same purely private character as those of his challenger—i.e., 'substantial personal interests as a candidate' to attain (or retain) the office." *Blassingame*, 87 F.4th at 17.  The January 5 and 6 tweets are those of a candidate trying to retain office: "The Vice President has the power to reject fraudulently chosen electors," Def.'s CounterStmt. at 59 ¶ 45; "All Mike Pence has to do is send them back to the States, AND

52

136

WE WIN," *id.* at 62 ¶ 47; and "If Vice President @Mike_Pence comes through for us, we will win the Presidency," *id.* at 62 ¶ 49. Those are the words of a candidate conveying a personal interest in re-election. That the Campaign issued a similar statement on January 5 confirms their unofficial nature. *See id.* at 60 ¶ 46 ("The Vice President and I are in total agreement that the Vice President has the power to act.").[23]

The same is true of other tweets sent on January 5. They, too, are those of a candidate who is seeking to reverse his election fortunes. *See, e.g.*, *id.* at 358 ¶ 243 ("Washington is being inundated with people who don't want to see an election victory stolen by emboldened Radical Left Democrats."); *id.* at 359 ¶ 244 ("I hope the Democrats, and even more importantly, the weak and ineffective RINO section of the Republican Party, are looking at the thousands of people pouring into D.C. They won't stand for a landslide election victory to be stolen."); *id.* at 361 ¶ 245 ("Get smart Republicans. FIGHT!").

Furthermore, given the court's earlier conclusion that the President has failed to show that the Ellipse Speech was official, his tweets promoting that event or touting the Speech likewise were not within the outer perimeter of his duties. *See, e.g.*, *id.* 322–27 ¶¶ 225–229, 354 ¶ 241, 453 ¶ 347.

Other tweets based on content alone are more difficult to classify. *See, e.g.*, *id.* at 28–30 ¶¶ 21–23 (pre-election commentary on election integrity); *id.* at 52 ¶ 40 (criticizing the Department of Justice for failing to act "despite overwhelming evidence" of voter fraud and concluding "Never give up. See everyone in D.C. on January 6th"). But having failed to produce any evidence of context in his favor, President Trump has not carried his burden as to such tweets.

---

[23] Plaintiffs also cite a post-presidency statement made by President Trump on March 13, 2023, regarding the Vice President's authority to return electoral votes to the States and the blame the Vice-President bears for the events of January 6. Def.'s CounterStmt. at 457 ¶ 352. Based on timing alone, this does not qualify as an official statement.

53

### D.    Tweets After the Riot at the U.S. Capitol Began

That leaves the two tweets sent from @realDonaldTrump after the riot at the Capitol began. *See id.* at 455 ¶ 349, 457 ¶ 351.  Neither side has offered specific facts to establish their circumstances.  The Select Committee's final report, which is in the record, helps fill the gaps.[24] *See* Def.'s SJ Obj., Ex. W, ECF No. 173-24.

According to the Select Committee, the President learned of the riot at the Capitol around 1:21 p.m. after he returned to the White House from the Ellipse.  *See id.* at 592.  He then went to the White House dining room and remained there until early evening, leaving only to film a video in the Rose Garden urging his supporters to disperse.  *See id.* at 593.  After rioters broke into the Capitol at 2:13 p.m., the President's advisors urged him to make a public statement.  *See id.* at 595–96.  The first tweet during the riot came at 2:24 p.m.  Def.'s CounterStmt. at 455 ¶ 349.  It said that "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify.  USA demands the truth!"  *Id.*  The second tweet came at 6:01 p.m.  *Id.* at 457 ¶ 351.  That tweet expressed solidarity with his supporters and told them, "Go home with love & in peace.  Remember this day forever!"  *Id.* Between these two tweets, President Trump made and publicly released the Rose Garden video, in which he expressed sympathy for his supporters and then signed off, saying, "But you have to go home now.  We have to have peace.  We have to have law and order.  . . .  So go home.  We love

---

[24] The court recognizes that the admissibility of the final report in full for its truth is uncertain.  *See, e.g.*, *Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers & Emps. of Outside Loc. Unions & Dist. Couns.'s (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 98 (D.D.C. 2006) (setting forth factors to consider in admitting a congressional report under Rule 803(8)).  Still, for present purposes, it is better to accept the truth of these facts—the court doubts Plaintiffs contest them—instead of allowing the immunity question as to these tweets to linger beyond the summary judgment stage.

you, you're very special. . . . I know how you feel. But go home, and go home in peace." *Id.* at 456 ¶ 350.

These communications, based on context alone, fall within the outer perimeter of President Trump's official responsibilities. The President was at the White House at the time; he was acting (or not) on the advice of White House advisors; and at least as to his Rose Garden remarks, he prepared them with the assistance of White House staff who presumably used a government-issued recording device. Plaintiffs may view President Trump's efforts to quell the violence at the Capitol as inadequate and even as a complete dereliction of duty. But they reasonably can be construed as the acts of an office-holder and therefore are cloaked in official-acts immunity. Plaintiffs cannot use these two tweets and the Rose Garden video to make their case.

### E.    Miscellaneous Activities

Beyond the Ellipse Speech, outreach to state and local officials, and tweets, Plaintiffs identify various other acts taken by President Trump that they assert were not official. Those activities, discussed below, include: (1) statements he made during campaign rallies or other political events, (2) a statement he made in the immediate aftermath of the election, (3) statements, tweets, and other social media postings from his Campaign, (4) court challenges to various States' election results, and (5) his role in the so-called false-elector scheme. President Trump offers no contextual evidence as to any of these. None are official.

*Statements Made During Campaign Rallies or Other Political Rallies*. Plaintiffs identify statements President Trump made during (1) a "Trump Campaign event" on August 17, 2020, *id.* at 31–32 ¶ 24; (2) the Republican National Convention on August 24, 2020, *id.* at 33 ¶ 25; and (3) "a political rally" in Dalton, Georgia, on January 4, 2021, *id.* at 55 ¶ 42. "Campaign or other political events are unofficial," *see Blassingame*, 87 F.4th at 32 (Katsas, J., concurring), and "a

55

speech at a political party's convention . . . is inherently given in the nominee's private capacity as officer-seeker," *id.* at 18 (majority opinion). Absent any other context, these statements were unofficial and not immune.

*Statement in the Immediate Aftermath of the Election.* President Trump made televised remarks at 2:30 a.m. on November 4, 2020, the day after the election, declaring the election results were "a fraud on the American public. [T]his is an embarrassment to our country. [W]e were getting ready to win this election. [F]rankly, we did win this election." Def.'s CounterStmt. at 34 ¶ 26. The timing of the statement—after midnight on election night—suggests that it was that of an office-seeker. Content confirms it.

*Campaign Tweets or Other Social Media Postings.* Plaintiffs offer several tweets or social media postings from the Campaign's social media accounts. *Id.* at 136 ¶ 86 (tweet); *id.* at 328 ¶ 230 (YouTube post); *id.* at 362–67 ¶¶ 246–250 (tweets and Instagram posts). Lacking any context to conclude otherwise, these are not official statements. *Cf. Blassingame*, 87 F.4th at 21 (identifying a campaign ad fully funded by the campaign as unofficial).

*Lawsuits.* President Trump or his Campaign mounted a host of lawsuits and other legal challenges contesting various States' election results. *See* Def.'s CounterStmt. at 162 ¶ 103 to 184 ¶ 114. These were filed either in his "personal capacity" or on his behalf as a candidate for office. *See, e.g.*, *id.* at 163 ¶ 104, 170–71 ¶ 107, 175 ¶ 109. These activities therefore enjoy no immunity. *See Blassingame*, 87 F.4th at 15–16.

*Fake-Elector Scheme.* Plaintiffs identify a variety of activities relating to the so-called fake-elector scheme. *See* Def.'s CounterStmt. at 71 ¶ 57 to 104 ¶ 72. Most do not directly involve President Trump, but rather members of his campaign. *But see id.* at 71 ¶ 57 (alleging his general involvement in the scheme); *id.* at 104 ¶ 72 (alleging that the White House Counsel's Office

advised him that the plan was unlawful).  Before the Supreme Court, President Trump suggested that these acts qualified as official conduct.  *See Trump*, 603 U.S. at 626–27.  But here he makes no such argument nor presents any evidence to support that view.  The court therefore treats this alleged conduct as unofficial.

One last category of conduct bears mention: President's Trump interactions with officials from the Department of Justice.  Plaintiffs allege that Attorney General William Barr advised President Trump that purported irregularities in the application of state law were "issues for his [Campaign] to raise with the State" and were "not the business of the Department of Justice." Def.'s CounterStmt. at 186 ¶ 116.  They also assert that the Department of Justice refused the President's demands "to pursue baseless allegations of election fraud."  *Id.* at 188 ¶ 117. The Supreme Court addressed such interactions with the Department of Justice in *Trump*.  *See* 603 U.S. at 621 (holding that President Trump was "absolutely immune from prosecution for the alleged conduct involving his discussions with Justice Department officials").  Here, as there, these "discussions with Justice Department officials" are official acts for which President Trump cannot be held liable.  *Id.*

\*    \*    \*

Before turning to the next motion, the court briefly summarizes its immunity determinations.  Based on the present record of facts not in dispute, with limited exceptions, President Trump has not carried his burden to demonstrate, through "objective, context-specific" evidence, that the acts alleged by Plaintiffs "can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Blassingame*, 87 F.4th at 30.  President Trump is not immune from suit for that conduct.  That includes the Ellipse Speech, most of his contacts with state and local officials, nearly all tweets from his @realDonaldTrump

57

141

Twitter account, and various other miscellaneous activities. The exceptions include: his Oval Office meeting with Michigan state legislators, the tweets from his @realDonaldTrump Twitter account at 2:24 p.m. and 6:01 p.m. on January 6, his Rose Garden remarks on January 6, and his interactions with officials from the Department of Justice. These are official acts for which President Trump cannot be held liable. Plaintiffs therefore cannot rely on them to prove their claims.

To be clear, the court's decision today is not a final pronouncement on immunity for any particular act. It is a ruling based on the record evidence and application of the summary judgment standard. President Trump remains free to reassert official-acts immunity as a defense at trial. But the burden will remain his and will be subject to a higher standard of proof. *See Blassingame*, 87 F.4th at 30 (stating that the party asserting immunity bears the burden "throughout"); *id.* at 31 (Katsas, J., concurring) (contemplating that Plaintiffs' allegations as it relates to immunity would need to be "tested on summary judgment or at trial").

## IV.    FIRST AMENDMENT DEFENSE

President Trump previously urged dismissal of these suits because his alleged conduct—consisting almost exclusively of speech—was protected political expression under the First Amendment. *See Thompson*, 590 F. Supp. 3d at 108. The parties focused on the Ellipse Speech, so the court did, too. *See id.* at 113. The issue presented boiled down to whether the President's remarks on January 6 plausibly constituted words of incitement that fell outside the First Amendment's broad protections for political speech. *Id.* Recognizing the "substantial constitutional question" presented, *id.* at 108, the court first discussed in detail the three key Supreme Court decisions on incitement: *Brandenburg v. Ohio*, *Hess v. State of Indiana*, and *NAACP v. Claiborne Hardware Co. See id.* at 110–13. It then reviewed at length the words spoken

58

142

by President Trump during the Ellipse Speech. *Id.* at 113–14. Finally, the court applied the key Supreme Court precedents to those remarks. *Id.* at 115–18. The court concluded:

> Having considered the President's January 6 Rally Speech in its entirety and in context, the court concludes that the President's statements that, "[W]e fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore," and "[W]e're going to try to and give [weak Republicans] the kind of pride and boldness that they need to take back our country," immediately before exhorting rally-goers to "walk down Pennsylvania Avenue," are plausibly words of incitement not protected by the First Amendment. It is plausible that those words were implicitly "directed to inciting or producing imminent lawless action and [were] likely to produce such action."

*Id.* at 115 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). President Trump now asks the court to reconsider that ruling.

The ostensible reason given for reconsideration is that, after this court's decision, the Supreme Court decided *Counterman v. Colorado*, 600 U.S. 66 (2023). *See* Def.'s Recons. Mem. at 5–7. According to President Trump, *Counterman* stands for the principle that a speaker's "intent can save facially unprotected speech from incitement liability, but it cannot be used the other way around, to hold a speaker liable for facially protected speech." *Id.* at 5–6. He claims that, contrary to *Counterman*, this court erroneously "view[ed] the words of the Speech through the prism of President Trump's supposed understanding and intent" and, as a result, "fail[ed] to properly analyze the language actually used by the President on January 6 in determining that he implicitly incited the crowd on that day." *Id.* at 22.

But the true reason President Trump asks for reconsideration is that he simply disagrees with the court's holding. As discussed below, *Counterman* is not about incitement, and it did not clarify the law about that category of unprotected speech. *Counterman* is merely the vehicle by which President Trump dissects the court's reasoning and makes arguments that he did not the first

time around.  *See Thompson*, 590 F. Supp. 3d at 116–17 ("In his motions, President Trump largely avoids any real scrutiny of the actual words he spoke or the context in which they were spoken."); *see also* Def.'s Mot. to Dismiss, ECF No. 10, Def.'s Mem. in Supp. of His Mot. to Dismiss, ECF No. 10-1, *Blassingame v. Trump*, No. 21-cv-858-APM (D.D.C.), at 25–26.

Be that as it may, the court proceeds to address the President's arguments.  It will view them through the "as justice requires" standard of Rule 54(b).  *See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011).  That standard affords the court more flexibility in revisiting a prior decision than if the same argument were made post-judgment. *See Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015).

## A.    *Counterman* and the Court's Alleged Legal Error

*Counterman* is not a case about incitement.  It addressed the requisite mental state, or mens rea, for a different category of unprotected speech, "true threats."  600 U.S. at 69.  The Court held that the government must prove recklessness—"that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence"—to secure a conviction in a "true threats case."  *Id.*  "The State need not prove any more demanding form of subjective intent to threaten another."  *Id.*

In reaching that conclusion, the Court discussed its incitement doctrine.  Inciting words are those "'directed [at] producing imminent lawless action,' and likely to do so."  *Id.* at 73 (alteration in original) (quoting *Brandenburg*, 395 U.S. at 447).  "Like threats, incitement inheres in particular words used in particular contexts:  Its harm can arise even when a clueless speaker fails to grasp his expression's nature and consequence.  But still, the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder."  *Id.* at 76. (quoting *Hess*, 414 U.S. at 109).  "That rule helps prevent a law

60

from deterring 'mere advocacy' of illegal acts—a kind of speech falling within the First Amendment's core." *Id.* (quoting *Brandenburg*, 395 U.S. at 449). The Court would go on to acknowledge that a recklessness mens rea for a true-threats prosecution was less than its "incitement decisions demand." *Id.* at 81. But that was appropriate because "the reason for that demand is not present here. When incitement is at issue, we have spoken in terms of specific intent, presumably equivalent to purpose or knowledge." *Id.* Such "potency" is required to "ensure that efforts to prosecute incitement would not bleed over, either directly or through a chilling effect, to dissenting political speech at the First Amendment's core." *Id.*[25] That is the totality of what *Counterman* says about incitement.

President Trump's reads *Counterman* as making clear that, for purposes of incitement, "intent is a one-way ratchet." Def.'s Recons. Mem. at 5. That is, "intent can save facially unprotected speech from incitement liability, but it cannot be used the other way around, to hold a speaker liable for facially protected speech." *Id.* at 5–6. It is in this respect, President Trump argues, this court erred. He contends that the court's analysis gave outsized importance to the "element[s]" of "intent" and "imminence" over the actual words spoken by President Trump. *Id.* at 6–7. The court ignored "the reality" that his words were far less incendiary than those deemed protected in the Supreme Court's incitement decisions, and it improperly viewed his words as plausibly inciting by "making impermissible use—*contra Counterman*—of intent to infuse words with meaning that they do not objectively hold." *Id.* at 23; *see also id.* at 28 (arguing that the court "leaned too heavily on . . . the intent the Court inferred President Trump may have had, given past

---

[25] That same "potency" was not needed as a buffer to prosecutions for "true threats" because "the speech on the other side of the true-threats boundary line—as compared with advocacy addressed in our incitement decisions—is neither so central to the theory of the First Amendment nor so vulnerable to government prosecutions." *Counterman*, 600 U.S. at 81. Proof of recklessness therefore struck the appropriate balance between protected expression and the benefits of enforcing laws against true threats. *See id.* at 81–82.

events . . . and . . . the fact of subsequent violence by some of his listeners[], to imbue the words he actually used on January 6 with implicit incitement").

### B.    The Ellipse Speech Plausibly Crossed the Line to Incitement

These criticisms both misstate the law of incitement and mischaracterize this court's reasoning.

Start with the law.   President Trump says that protected expression crosses over to unprotected incitement only if three elements are present: the words "specifically advocate imminent violence," the speaker intends to produce imminent disorder, and the words spoken are likely to have that result.  Def.'s Recons. Mem. at 6–7, 14, 20–21.  Those elements derive from Sixth Circuit caselaw, which this court acknowledged but did not expressly adopt.  *See Thompson*, 590 F. Supp. 3d at 112 (citing *Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc)).  President Trump takes the elements one step further.  He argues that there is a hierarchy among the elements and that they proceed in a kind of order of operations that *Counterman* "demands."  Def.'s Recons. Mem. at 25.  "[T]he inquiry must begin with the words used by the speaker (*Brandenburg's* element one).  Only if those words are facially unprotected under the first element of the *Brandenburg* test could a speaker *potentially* be penalized if there is *also* a showing of the requisite intent (element two) and imminence (element three)."  *Id.* at 6; *see also id.* at 20.

Neither *Counterman* nor any other Supreme Court case erects the rigid incitement framework that President Trump suggests.  No decision instructs courts to consider as a first step only the words spoken, unmoored from their context, to derive their "objective meaning."  *Id.* at 23.  To the contrary, *Counterman* clearly states that "incitement inheres in particular words used in *particular contexts*."  600 U.S. at 76 (emphasis added).  The importance of context has long been central to the Supreme Court's incitement jurisprudence.  *See Thompson*, 590 F. Supp. 3d at

112 (observing that "both the words spoken and the context in which they are spoken matter" (citing cases)); *see also id.* at 110–11 (describing in detail the contextual facts of *Brandenburg*, *Hess*, and *Claiborne Hardware*). And it was central to this court's holding. *See id.* at 115–17.

Now the court's reasoning. This court did not engage in an "intent-based interpretation" of the Ellipse Speech to create a veneer of incitement that it objectively does not have, *see* Def.'s Recons. Mem. at 25, or, as President Trump colorfully puts it, perform "analysis by psychoanalysis," *id.* The court first identified the words used, then described the relevant context, and finally evaluated those words within the context in which they were spoken. That is precisely what *Counterman* and the Supreme Court's incitement jurisprudence require. *See* 600 U.S. at 76.

More specifically, here is how the court proceeded. After setting forth the controlling legal principles, the court considered the entirety of the Ellipse Speech and summarized it in greater detail than contained in Plaintiffs' complaints. *See Thompson*, 590 F. Supp. 3d at 113–14. The court acknowledged that "[t]he President's words on January 6th did not explicitly encourage the imminent use of violence or lawless action," but it went on to consider whether they did so implicitly. *Id.* at 115. That required the court to recount the context for the Ellipse Speech, *id.* at 115–16, which had to be construed in the light most favorable to Plaintiffs. *See Steele v. United States*, 144 F.4th 316, 320 (D.C. Cir. 2025). The context considered was comprehensive. It encompassed the events leading up to January 6, during which the President "had created an air of distrust and anger among his supporters by creating the false narrative that the election literally was stolen from underneath their preferred candidate by fraud and corruption." *Thompson*, 590 F. Supp. 3d at 115. It also included that the President and his advisors "actively monitored" media coverage about him and would have known that some of his supporters had participated in violence at earlier election-related protests; others (including militia groups) had called for the use

63

violence on January 6, including against police officers (e.g., "Cops don't have 'standing' if they are laying on the ground in a pool of their own blood."); and a former aide to the President predicted in a widely publicized statement, "there will be violence on January 6th because the President himself encourages it." *Id.* at 65, 115–16.  These facts led the court to find plausible that, "when the President stepped to the podium on January 6th . . . he would have known that some in the audience were prepared for violence." *Id.*

Then, as cases from *Brandenburg* to *Counterman* require, the court considered the President's words within this context.  *Id.* at 116.  The court highlighted some of the more provocative words he used during the Ellipse Speech and then focused on his final exhortation: "We fight.  We fight like hell and if you don't fight like hell, you're not going to have a country anymore." *Id.*  He uttered these words immediately before telling his supporters to "march to the Capitol," the very location where he had moments earlier said that those responsible for stealing the election (e.g., "radical Left Democrats" and "weak Republicans") and those who could reverse those results to secure a victory (such as the Vice President) could be found.  *Id.* at 113, 116. "Importantly, it was the President and his campaign's idea to send thousands to the Capitol while the Certification was underway.  It was not a planned part of the rally.  In fact, the permit expressly stated that it did 'not authorize a march from the Ellipse.'"  *Id.* at 102; *see* Rally Permit at 3 ("[WAF] will not conduct an organized march from the Ellipse at the conclusion of the rally."). In the end, the court held that the President's words plausibly were "an implicit call for imminent violence or lawlessness.  He called for thousands 'to fight like hell' immediately before directing an unpermitted march to the Capitol, where the targets of their ire were at work, knowing that militia groups and others among the crowd were prone to violence." *Thompson*, 590 F. Supp. 3d at 117.  These facts also gave rise to the plausible inference that the President specifically intended

for his words to produce imminent violence, and they likely would do so. *See id.* at 116 (quoting

*Hess*, 414 U.S. at 108–09); *see also Counterman*, 600 U.S. at 73, 76.

Nowhere in this analysis did the court start with a presumption about President Trump's

intent and then apply it to the words he spoke. Just the opposite is true. Based on the "particular

words used in [the] particular context[]," the court considered whether it was plausible that the

President intended for his words to produce imminent lawlessness and the likelihood of it.

*Counterman*, 600 U.S. at 73, 76. His knowledge of what had come before and who would be in

the crowd was critical to that analysis and plainly relevant to the inquiry. *See id.* at 81 (equating

the "specific intent" in its incitement decisions with "purpose or knowledge"). President Trump

is wrong to suggest otherwise. *See* Def.'s Recons. Mem. at 21–22 (asserting that the court

"improperly filter[ed] the words used through what it took to be President Trump's understanding

of the crowd and its reaction[26] in order to vest them with implicit meaning that the Court

acknowledged they did not explicitly contain"); *id.* at 27–28 ("[T]his Court erred when it relied on

the 'broader context' to read into President Trump's words a meaning that simply was not there.").

The court quickly disposes of one additional critique of its reasoning. President Trump

argues that, even accepting the factual allegations outlined by the court, the most that they establish

is that he "was aware of a risk that some listeners might react violently and spoke anyway." Def.'s

Recons. Mem. at 22. The court agrees that merely ignoring a known substantial risk—acting

recklessly—is not enough to make out incitement, which requires a heightened mental state—the

specific intent to produce imminent disorder. *See id.* (citing *Counterman*, 600 U.S. at 78–79, 81).

---

[26] If by "reaction" President Trump means how the crowd perceived the Speech, the court did not take that into account. In fact, the court recognized that the subjective understandings and reactions of listeners was not a relevant consideration. *See Thompson*, 590 F. Supp. 3d at 116–17. For that reason, the court made clear that it had "assiduously avoided relying on any allegations that Plaintiffs made about any person's reaction to the President's January 6 Rally Speech. (And, Plaintiffs did make such allegations. . . .)." *Id.* at 117 (citations omitted).

65

But the argument about pleading sufficiency fails for the simple reason that, on a motion to dismiss, the well-pleaded facts must be "taken in the light most favorable to the plaintiff[s] and with all reasonable inferences drawn in [their] favor." *Steele*, 144 F.4th at 320 (alterations in original) (internal quotation marks omitted). For the reasons discussed, it is plausible that President Trump had the requisite intent to produce imminent disorder.

Since the court's decision, new allegations have surfaced that only confirm this conclusion. Cassidy Hutchinson, then-assistant to Chief of Staff Mark Meadows, testified before the Select Committee. *See* Pls.' Mot. to Strike, Ex. 2, ECF No. 183-3.[27] Hutchinson was with President Trump immediately before the Ellipse Speech. *See id.* at 11. She described him as angry that the rally space was not full of spectators, and she heard him complain about the Secret Service setting up magnetometers, or "mags," that were preventing people who possessed weapons from entering the rally. *See id.* Hutchinson "overheard the President say something to the effect of, 'You know, I don't F'ing care that they have weapons. They're not here to hurt me. Take the F'ing mags away. Let my people in. They can march to the Capitol from here. Let the people in. Take the F'ing mags away.'" *Id.* at 11–12. After he was told the magnetometers could not be removed, Hutchinson heard the President say "something to the effect of, you know, 'F the Secret Service. I'm the President. Take the F'ing mags away. They're not here to hurt me.'" *Id.* at 12.

Hutchinson's recollections of January 6 heighten the plausibility that President Trump's Ellipse Speech contained words of incitement. If assumed true—and the President disputes their veracity, Hr'g Tr. at 110:23-25—at a minimum, they establish that the President knew that some

---

[27] Hutchinson's testimony is outside the four corners of the complaints, but the court believes it is appropriate to consider it in the present posture where the question is whether "justice requires" reconsideration. *See Capitol Sprinkler*, 630 F.3d at 227. If the court were to grant reconsideration, it would allow Plaintiffs to amend their complaints to reflect Hutchinson's testimony and any additional relevant evidence that has come to light after the court's ruling. It therefore is more efficient to consider those allegations now.

66

150

supporters in the crowd had weapons and that those weapons might be used to cause harm, though not to him.  No longer is the President's knowledge about his supporters' willingness to engage in imminent violence based merely on complaint allegations about historical facts preceding January 6.  It is now corroborated by a first-hand account of his state of mind on the day itself, moments before addressing the crowd.  His statements to "Take the F'ing mags away" and that "They're not here to hurt me" may not amount to a confession.  But those words support the reasonable inference that he meant for his Ellipse Speech to be heard as "an implicit call for imminent violence or lawlessness."  *See Thompson*, 590 F. Supp. 3d at 117.  His remarks on January 6 therefore plausibly were inciting words that are not protected by the First Amendment.

### C.    The Rap Concert Analogy

As a final salvo, President Trump resuscitates an argument the court previously rejected but with a twist.  He again insists that an adverse ruling "will open floodgates for incitement decisions" and thereby constrain First Amendment protections.  *Compare* Def.'s Recons. Mem. at 29, *with Thompson*, 590 F. Supp. 3d at 117.  Before, his focus was on the impact such ruling would have on political speech.  *See Thompson*, 590 F. Supp. 3d at 117.  Now his concern is over the "ramifications for public citizen speech."  Def.'s Recons. Mem. at 30.  To illustrate the point, he poses the hypothetical of a popular rapper (bearing some resemblance to Eminem) whose concert performance leads to fan violence.  *See id.* at 30–31.

It goes something like this.  The rapper is known for his provocative and controversial lyrics, which "describe explicit violent acts, including gun violence, rape, and a description of the rapper drowning his wife."  *Id.* at 30.  It is widely reported in the news that his song lyrics are inspiring young people to "act emotionally and sometimes violently."  *Id.* at 30–31.  The rapper is aware of this phenomenon.  Yet, when he takes the stage in front of thousands of fans, he performs

67

his "most aggressive" songs and stokes his audience's passions saying, "Fight the Man! Fight the Establishment! Don't let them tell you what to do! Fight like hell!" *Id.* Chaos ensues. Inspired by these words, concert goers "storm[] the nearest establishments," stealing food from concession stands, attacking vendors, and "beating down security guards to access the backstage areas of the venue." *Id.* Presumably, this goes on for hours and the rapper does not unequivocally call for his fans to cease committing acts of violence.

President Trump fears that, under the court's ruling, "there is a compelling argument to be made that the rapper's speech—'in context' (which could include lyrics he published weeks, months, or years prior to the concert)—constitutes incitement to violence." *Id.* That result, he says, would represent a major break from First Amendment precedent, which otherwise protects the rapper's expression. *Id.*

But here is what is missing from the President's hypothetical. There is no contention that, for weeks before the concert, the rapper told his fans that the Establishment had taken something valuable from *them* through fraud and deceit. No assertion that the rapper knew his fans had prepared to act violently on that very day (including by bringing weapons to the show) to reclaim what was taken from them. No averment that during the performance the rapper specifically identified the members of the Establishment who took this thing of value. And no allegation that, at the show's crescendo, he implored his fans to "Fight the Establishment" and "Fight like hell" *and* then directed them, without warning local law enforcement, to descend thousands strong on the very place the Establishment was working to finally take away that thing of value. Only if those facts are included does the rap concert begin to resemble January 6, and only then do the artist's song lyrics and exhortation to "Fight like hell" mirror the Ellipse Speech. The court would

68

agree that, in this revised hypothetical, the rapper's expression plausibly are words of incitement. But not in the incomplete one posed by the President.

Accordingly, the court declines to reconsider its decision not to dismiss based on the First Amendment.

### D.    Certification for Interlocutory Review

Although the court declines to reconsider, it will certify its First Amendment rulings—the denials of the motion to dismiss and the motion for reconsideration—for interlocutory review. *See* 28 U.S.C. § 1292(b).   The certifiable question is: Have Plaintiffs plausibly alleged that President Trump's exhortations at the end of the Ellipse Speech—"We fight.  We fight like hell and if you don't fight like hell, you're not going to have a country anymore," and "[W]e're going to try to and give [weak Republicans] the kind of pride and boldness they need to take back our country"—moments before directing thousands of followers on an unpermitted march to the Capitol are inciting words that fall outside the protections of the First Amendment?

The court's rulings (1) "involve[] a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling[s] exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003).   The court further believes that "exceptional circumstances" exist to depart from the ordinary policy of not permitting immediate review of interlocutory orders. *Virtual Def. & Dev. Int'l Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001).  These lawsuits involve the sitting President of the United States, raise an important question about the line between protected political expression and unprotected incitement, and involve matters of considerable public interest.  Further, resolving the First Amendment issue in favor of President Trump may accelerate

69

these proceedings against him and result in the dismissal of the cases.[28]    The court therefore

certifies its First Amendment rulings for interlocutory review.

## V.    MOTION TO STRIKE WESTFALL ACT CERTIFICATION

The court finally arrives at the last of the three primary motions before it: Plaintiffs' motion

to strike the Department of Justice's Westfall Act Certification.    Recall, the Department of Justice

filed a Certification that the Attorney General had determined that President Trump's alleged

conduct fell within the scope of his employment as President of the United States.    Under the

Westfall Act, such certification mandates the United States' substitution as the defendant for the

tort claims brought against him.    Plaintiffs have moved to strike the Certification, arguing that the

record evidence does not support the Attorney General's scope-of-employment determination.

*See generally* Pls.' Mot. to Strike.

> Upon certification by the Attorney General that the defendant
> employee was acting within the scope of his office or employment
> at the time of the incident out of which the claim arose, any civil
> action or proceeding commenced upon such claim in a United States
> district court shall be deemed an action against the United States
> under the provisions of this title and all references thereto, and the
> United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).    A scope-of-employment certification by the Attorney General is not

"conclusive[]," but it does "constitute *prima facie* evidence that the employee was acting within

the scope of his employment." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C.

Cir. 2006) (internal quotation marks omitted).

A plaintiff can challenge a certification.    To do so, the plaintiff "must submit persuasive

evidence—specific evidence or a forecast of specific evidence—that contradicts the certification."

---

[28] The court expresses no opinion as to whether Plaintiffs' claims would be subject to dismissal for failure to state a claim if allegations relating to the Ellipse Speech were to drop out of these suits.

70

*Steele v. Meyer*, 964 F. Supp. 2d 9, 17 (D.D.C. 2013) (internal quotation marks omitted); *see also Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (noting that "[m]ere conclusory statements" are not enough to rebut a Westfall certification (internal quotation marks omitted)).   Plaintiffs believe that the discovery taken and developed on official-acts immunity is sufficient to overcome the Certification. *See* Joint Status Report, ECF No. 170, at 3 (declining to seek additional Westfall Act discovery).[29]

"To determine whether an employee was acting within the scope of his employment under the Westfall Act, courts apply the *respondeat superior* law of the state in which the alleged tort occurred." *Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009).   Both Plaintiffs and the United States evaluate the Certification's merits under District of Columbia law, so the court does the same. *See* Pls.' Mot. to Strike at 12–13; U.S. Opp'n to Pls.' Mot. to Strike at 5–6.   The District of Columbia "generally adheres to" the Second Restatement of Agency in delineating the scope of employment. *Trump v. Carroll*, 292 A.3d 220, 228 (D.C. 2023).   This means, in relevant part, that conduct falls within the scope of employment if "(a) it is of the kind [the person] is employed to perform; (b) it occurs substantially within the authorized time and space limits;" and "(c) it is actuated, at least in part, by a purpose to serve the master." *Id.* (quoting Restatement (Second) of Agency § 228(1) (A.L.I. 1958)).

The parties scrupulously address each of these factors.   Pls.' Mot. to Strike at 14–28; U.S. Opp'n to Pls.' Mot. to Strike at 9–38.   The court need not do the same.   It grants Plaintiffs'

---

[29] It remains unclear to the court which party bears the ultimate burden of proof when a Westfall Act Certification is challenged.   The plaintiff bears an initial *pleading* burden to show that the defendant's actions exceeded the scope of his employment. *See Wuterich v. Murtha*, 562 F.3d 375, 382–83 (D.C. Cir. 2009).   Success entitles the plaintiff to discovery. *See id.*   Thereafter, the plaintiff bears a burden of *production* to come forward "with evidence supporting his allegations both as to scope and as to the merits." *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994).   If there is a dispute of material fact as to scope at that point, the trial court must hold a hearing. *See id.*   In *Kimbro*, the court did not say which party bears the ultimate burden of proof—the plaintiff to disprove scope or the United States to prove it.   And the D.C. Circuit has not done so since.   In any event, the court need not belabor the issue any further, as it decides in Plaintiffs' favor regardless of which side bears the ultimate burden of proof.

71

motion largely for the reasons already discussed: the same activities found to be beyond the outer perimeter of President Trump's official responsibilities also fall outside the scope of his employment as President of the United States. The similarities between the two inquiries explain why.

Start with official-acts immunity. Protected conduct must be of the kind tied to the "function" of the office. *See Clinton v. Jones*, 520 U.S. 681, 694 (1997) (describing the "functional approach" applied to official-acts immunity). Conduct within the "outer perimeter" thus encompasses not only those Presidential duties enumerated by the Constitution or statute, but also "'discretionary acts' within the 'concept of duty.'" *Blassingame*, 87 F.4th at 13 (citation omitted). This functional approach is reflected in the now-familiar outer-perimeter formulation from *Blassingame*: "an act lies within the outer perimeter of an official's duties if it is 'the kind of act not manifestly or palpably beyond [the official's] authority, but rather having more or less connection with the general matters committed by law to his control or supervision.'" *Id.* (alteration in original) (citation omitted). Conversely, conduct that has no connection to the official's functions does not enjoy immunity.

The D.C. Court of Appeals has taken a similar "functional approach" in describing the first element of the scope-of-employment test—whether the conduct "is of the kind the person is employed to perform." *Carroll*, 292 A.3d at 230. "This language plainly encompasses an employee's performance of their stated job duties." *Id.* That includes not only expressly authorized "job functions" but also "informal responsibilities that are as integral to their employment as their formal responsibilities." *Id.* Or, to quote the Restatement formulation used by the D.C. Court of Appeals, conduct is of the kind a person is employed to perform if it is "either 'of the same general nature as' *or* 'incidental to' the conduct authorized so as to be within the scope

72

of employment." *Id.* (quoting Restatement (Second) of Agency § 229(1)).  The former "reflect[s] an inquiry into the similarity between the tortious conduct and an individual employee's job functions akin to a plain language reading of § 228(1)(a)."  The latter "reflects a broadening of the permissible nexus between an employee's conduct and their job responsibilities" and asks whether the tortious conduct was the "outgrowth of a job-related controversy."  *Id.* at 231–32 (internal quotation marks omitted).  It is not enough that the employment created the mere opportunity to commit the tort; there must be "some relationship or nexus between the tortious conduct and the employee's responsibilities for it to be an outgrowth of a job-related controversy."  *Id.* at 232.

These scope-of-employment principles map neatly onto the framework for assessing official-acts immunity for Presidential conduct.  Both cover conduct that is "*expressly* authorized."  *Id.* at 230.  For the President, those are the core functions delineated by Article II and by statute.  But they also go further, reaching conduct having "some relationship or nexus between the tortious conduct and the employee's responsibilities."  *Id.* at 232.  For the President, that would extend to "'discretionary acts' within the 'concept of duty' associated with the office."  *Blassingame*, 87 F.4th at 13.  On the other hand, activities that have no such nexus fall outside the President's scope of employment, just as conduct with no connection to "the general matters committed [to him] by law" falls beyond the outer perimeter and is not immune from civil liability.  *Id.*

The court need not decide whether the scope and outer-perimeter inquiries are always co-extensive when it comes to the acts of the President.  It is enough to say that, in this case, it is hard to discern any daylight between the two.  This follows from the fact that "[t]he presidency itself has no institutional interest in who will occupy the office next."  *Id.* at 17.  "Campaigning to *attain* that office thus is not an official function *of* the office."  *Id.*  And importantly, "an incumbent President's interests in winning re-election have the same purely private character as those of his

73

challengers." *Id.* If conduct in pursuit of retaining office is not an "official function" and is of a "purely private character," then such conduct likewise is neither the kind of act an incumbent President is employed to perform nor one that bears any relationship or nexus with his responsibilities. Put more simply, winning re-election is not a function or outgrowth of the job of an incumbent officeholder; therefore, acts in furtherance of that end fall outside the scope of employment under District of Columbia law.

The United States resists applying *Blassingame*'s logic to resolve the scope issue for purposes of the Westfall Act Certification. U.S. Opp'n to Pls.' Mot. to Strike at 7–8. The court is not persuaded by these arguments.

First, the United States contends that *Blassingame* is inapt because the District of Columbia's "law of *respondeat superior*, which—in contrast to federal common law on 'official-act immunity'—serves a different purpose and is applied 'very expansively' to achieve the specific policy objectives of D.C. tort law." *Id.* at 7–8. But the United States does not explain how the District's *respondeat superior* law is broader than the law on official-acts immunity or why its underlying policy demands a more expansive reading. One would think the opposite would be true. "The principal rationale for official immunity—providing an official the maximum ability to deal fearlessly and impartially with the duties of his office— . . . applies to the President with pronounced force." *Blassingame*, 87 F.4th at 12 (internal quotation marks omitted). That purpose would seem to warrant a more capacious application of official-acts immunity than when assessing an employer's liability for the tortious acts of its employee in a private action.

Second, the United States argues that "graft[ing]" *Blassingame*'s officer-seeker/office-holder distinction onto the scope issue would be improper because the D.C. Court of Appeals in *Carroll* stated that it has "never adopted a rule that has determined that a certain type of conduct

74

is per se within (or outside of) the scope of employment." U.S. Opp'n to Pls.' Mot. to Strike at 8 (quoting *Carroll*, 292 A.3d at 240). That is true. But the *Carroll* court also said that "the District of Columbia's precedents have consistently adhered to a fact-bound inquiry to determine whether the conduct of an employee is within the scope of employment." *Carroll*, 292 A.3d at 240. The official-acts immunity inquiry described in *Blassingame* requires precisely the same fact-specific assessment. *See Blassingame*, 87 F.4th at 21–22.

Third, the United States asserts that "*Westfall* Act immunity is particularly broad and especially so when applied to the President, whose duties and responsibilities are unmatched, resulting in a wide range of activity falling within scope." U.S. Opp'n to Pls.' Mot. to Strike at 8. But again, it does not explain why that statutory immunity should be construed more broadly than official-acts immunity when it comes to the President. The government quotes a footnote from the Second Circuit's decision in *Carroll v. Trump*, 49 F.4th 759, 765 n.3 (2d Cir. 2022), which states, "Our holding today is that the Westfall Act extended absolute immunity to the President for non-official acts as long as they are within the scope of employment." It is hard to know what to make of this statement. The Second Circuit in that case was not asked to opine on the intersection between official-acts immunity and the Westfall Act—official-acts immunity was not even raised as an issue.[30] And ordinarily appellate courts do not put a "holding" in a footnote. The statement's meaning becomes even murkier given that the Second Circuit did not ultimately "hold" anything but instead certified the scope-of-employment question to the D.C. Court of Appeals. *See id.* at 781. The ambiguous footnote from *Carroll v. Trump* thus does not alter the court's thinking.

---

[30] In the *Carroll* litigation, President Trump failed to move to dismiss on the ground of official-acts immunity or assert the defense in his answer, and the Second Circuit ruled that he had waived it as a result. *See Carroll v. Trump*, 88 F.4th 418, 429 (2d Cir. 2023), *adhered to*, 151 F.4th 50, 65–67 (2d Cir. 2025).

Finally, the United States argues that, even if *Blassingame*'s analysis of official-acts immunity were relevant to the scope question, "*Blassingame* is not the last word on presidential immunity." U.S. Opp'n to Pls.' Mot. to Strike at 8. It asserts that the Supreme Court "declined to adopt the D.C. Circuit's blanket 'office seeker' vs. 'office holder' test to a President's actions," noting that the Court viewed as "official" some acts characterized as "campaign conduct," such as President Trump's interactions with the Vice President and with the Department of Justice. *See id.* But as already described, the Supreme Court did not reject the distinction made by *Blassingame*. *See supra* Section II.C.1. Rather, like the D.C. Circuit, it refused to accept a party's characterization of President Trump's various activities and instead called for judicial review to "differentiate between a President's official and unofficial actions." *Trump*, 603 U.S. at 617. That is precisely what the court has done here. It has distinguished official from unofficial acts. President Trump cannot be held liable for the former. Because those acts have fallen away on immunity grounds, they are no longer a basis for substitution under the Westfall Act. All that remains is conduct that lies beyond the outer perimeter of his official responsibilities and, concomitantly, outside the scope of his employment.

The court therefore strikes the United States' Westfall Act Certification.

## VI.    CONCLUSION AND ORDER

For the foregoing reasons, the court rules as follows:

1.    President Donald J. Trump's Motion for Summary Judgment, ECF No. 144, is denied except as to the conduct that the court has determined were official acts;

2.    President Donald J. Trump's Motion to Reconsider Denial of His Motion to Dismiss on First Amendment Grounds, ECF No. 145, is denied, but the court grants the President's request to certify both the present ruling and the original denial for interlocutory review;

76

3.    Plaintiffs' Motion to Strike the Government's Westfall Act Certification, ECF No. 183, is granted;

4.    Plaintiffs' Request for Judicial Notice in Support of Opposition to Defendant's Motion for Summary Judgment, ECF No. 153, is granted insofar as the court has relied on any facts Plaintiffs have requested be judicially noticed; and

5.    President Donald J. Trump's Objection to Admission of Select Committee Final Report, ECF No. 173, is denied to the extent the court has cited to the Report to establish facts that the court believes can be converted into admissible evidence.

Dated:  March 31, 2026

_____
Amit P. Mehta
United States District Judge

77

161

## APPENDIX

The filings relevant to Defendant's Motion for Summary Judgment on Absolute Presidential Immunity Grounds are: (1) Def.'s Mot. for Summ. J., ECF No. 144 [Def.'s SJ Mot.], Def.'s Mem. of P. & A. in Supp. of Def.'s SJ Mot. on Absolute Presidential Immunity Grounds, ECF No. 144-1 [Def.'s SJ Mem.]; (2) Under Seal - Pls.' Opp'n to Def.'s SJ Mot., ECF No. 155-1 [Pls.' SJ Opp'n];[31] and (3) Def.'s Reply Mem. in Supp. of Def.'s SJ Mot. on Presidential Immunity Grounds, ECF No. 174 [Def.'s SJ Reply].

When referencing the parties' fact statements, the court refers to two filings: (1) Def.'s Resp. to Pls.' Counterstatement to Def.'s Stmt. of Undisputed Facts, ECF No. 175-1 [Def.'s Stmt.], and (2) Def.'s Counterstatement to Pls.' Stmt. of Add'l Undisputed Facts, ECF No. 175-2 [Def.'s CounterStmt.].  Together, these filings set forth each parties' respective statements and responses.

The filings relevant to Def.'s Motion for Reconsideration are: (1) Def.'s Mot. to Recons. Denial of his Mot. to Dismiss on First Am. Grounds, ECF No. 145 [Def.'s Recons. Mot.], Def.'s Mem. of P. & A. in Supp. of Def.'s Recons. Mot., ECF No. 145-1 [Def.'s Recons. Mem.]; (2) Pls.' Opp'n to Def.'s Recons. Mot., ECF No. 154 [Pls.' Recons. Opp'n]; and (3) Def.'s Reply Mem. of P. & A. in Supp. of Def.'s Recons. Mot., ECF No. 171 [Def.'s Recons. Reply].

The relevant filings relating to Plaintiffs' Motion to Strike the Government's Westfall Act Certification are: (1) Pls.' Mot. to Strike the Gov't's Westfall Act Cert., ECF No. 183 [Pls.' Mot. to Strike]; (2) U.S.'s Opp'n to Pls.' Mot. to Strike, ECF No. 188 [U.S. Opp'n to Pls.' Mot. to Strike]; and (3) Pls.' Reply in Supp. of Pls.' Mot. to Strike, ECF No. 190 [Pls.' Mot. to Strike Reply].

---

[31] When the court cites to exhibits filed with Plaintiffs' Summary Judgment Opposition, ECF No. 155-1, the court sometimes cites to exhibits filed with ECF No. 152, Redacted - Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

78

The relevant evidentiary filings are: (1) Pls.' Request for Jud. Notice in Supp. of Pls.' SJ Opp'n, ECF No. 153 [Pls.' Mot. for Jud. Notice]; (2) Def.'s Mem. of P. & A. in Partial Opp'n to Pls.' Mot. for Jud. Notice, ECF No. 172 [Def.'s Opp'n to Pls.' Mot for Jud. Notice]; and (3) Pls.' Reply in Supp. of Pls.' Mot. for Jud. Notice, ECF No. 181 [Pls.' Jud. Notice Reply]; (4) Def.'s Obj. to Admis. of Select Comm. Final Rep., ECF No. 173 [Def.'s SJ Obj.]; (5) Pls.' Resp. to Def.'s SJ Obj., ECF No. 182 [Pls.' SJ Obj. Opp'n]; and (6) Def.'s Reply in Supp. of Def.'s SJ Obj., ECF No. 187 [Def.'s SJ Obj. Reply].